## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Secretary of Labor, Mine Safety
and Health Administration,

Petitioner

*v.*

Knight Hawk Coal, LLC

and

Federal Mine Safety and Health
Review Commission,

Respondents

No. 24-1293

**Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission**

The Secretary of Labor[1] petitions this Court for review of the Federal Mine

Safety and Health Review Commission's order in *Knight Hawk Coal, LLC*,

FMSHRC No. LAKE 2021-0160, issued on August 30, 2024. See 30

U.S.C. 816(b); Fed. R. App. P. 15(a).

---

[1] As of this date, Julie Su is the Acting Secretary of Labor. This petition for review uses "Secretary" to refer to the position of the Secretary in general, not to Ms. Su in particular.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

APRIL E. NELSON
Associate Solicitor

s/ EMILY TOLER SCOTT
Counsel for Appellate Litigation
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(202) 693-9333

Attorneys for the Secretary of Labor

**Certificate of Service**

I certify that on September 10, 2024, the foregoing petition for review was served on all parties by email. I also certify that on September 10, 2024, a copy of this petition for review was sent to all parties by U.S. mail.

Mark E. Heath
Spilman, Thomas & Battle PLLC
PO Box 273
Charleston, WV 25321-0273
mheath@spilmanlaw.com

Jason Riley
Office of General Counsel
Federal Mine Safety and Health Review Commission
1331 Pennsylvania Ave., NW Suite 520N
Washington, D.C. 20004
jriley@fmshrc.gov

s/ Emily Toler Scott

**August 30, 2024**

| | | |
|---|---|---|
| SECRETARY OF LABOR, | : | |
|   MINE SAFETY AND HEALTH | : | |
|   ADMINISTRATION (MSHA) | : | |
| | : | |
|         v. | : | Docket No. LAKE 2021-0160 |
| | : | |
| | : | |
| KNIGHT HAWK COAL, LLC | : | |

BEFORE: Jordan, Chair; Althen, Rajkovich, Baker, and Marvit, Commissioners

## <u>DECISION</u>

BY: Jordan, Chair; Rajkovich, Baker, and Marvit, Commissioners

     This proceeding, arising under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq. (2018) ("Mine Act" or "Act"), involves the interlocutory review of a Commission Administrative Law Judge's denial of a proposed settlement between the Secretary of Labor and Knight Hawk Coal, LLC ("Knight Hawk"). 44 FMSHRC 23 (Jan. 2022) (ALJ).

     At issue is whether the Secretary has unreviewable discretion to remove a significant and substantial ("S&S") designation[1] from a contested citation without the Commission's approval under section 110(k) of the Mine Act, 30 U.S.C. § 820(k).[2] For the reasons that follow, we answer that question in the negative, affirm the Judge's denial of the settlement motion, and remand the case to the Judge.

---

    [1] The S&S terminology is taken from section 104(d)(1) of the Mine Act, 30 U.S.C. § 814(d)(1), which distinguishes as more serious in nature any violation that "could significantly and substantially contribute to the cause and effect of a . . . mine safety or health hazard . . . ."

    [2] Section 110(k) provides in relevant part:

> No proposed penalty which has been contested before the Commission under section 105(a) shall be compromised, mitigated, or settled except with the approval of the Commission.

30 U.S.C. § 820(k).

# I.

## Factual and Procedural Background

This case originally involved three citations, Citation Nos. 9198030, 9198038, and 9198165, issued to Knight Hawk at its Prairie Eagle-Underground mine by the Department of Labor's Mine Safety and Health Administration ("MSHA"). The Secretary submitted to the Judge a motion to approve a settlement pursuant to Section 110(k). In that motion, the Secretary proposed removing S&S designations from two citations: Citation Nos. 9198165 and 9198038. The third citation remained unaltered. Additionally, the motion requested a penalty reduction from $7,960.00 to $4,590.00.

The Judge denied this settlement motion. In doing so, he requested clarification regarding why the parties believed that the circumstances surrounding Citation Nos. 9198165 and 9198038 were not reasonably likely to contribute to an event with the potential to cause significant injuries for S&S purposes.

The Secretary subsequently submitted three amendments to the motion to approve settlement. Although the Judge determined that the amended explanation for the removal of the S&S designation from Citation No. 9198165 was satisfactory, he remained unsatisfied with the parties' justification for removing the S&S designation from the remaining citation, Citation No. 9198038. He noted that Citation No. 9198038 "arises from an alleged violation of the operator's roof control plan, which appears to have been discovered after a roof fall occurred." 44 FMSHRC at 33.

The Judge held that given the lack of an adequate justification for removing the S&S designation from Citation No. 9198038, approval would unfairly compromise the public interest. Therefore, pursuant to the Commission's longstanding authority to approve settlements under section 110(k) of the Act, he issued an order denying the motion to approve settlement.

The Judge subsequently granted the Secretary's motion to certify this case for interlocutory review. The Commission granted interlocutory review on the issue of "whether the Secretary has unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Mine Act."[3]

---

[3] Our dissenting colleague has opted to issue a consolidated dissent for both *Knight Hawk* and *Crimson Oak*, which the Commission is issuing on the same date. 46 FMSHRC ___, slip op. at 13, No. SE 2021-0112, et. al. (August 30, 2024). However, as we have not consolidated the instant proceedings with *Crimson Oak*, the issues raised in *Crimson Oak* exceed the scope of our interlocutory review in this matter, and we do not address them here. *See* 29 C.F.R. § 2700.76(d).

## II.

## The Parties' Arguments

The Secretary argues that the Judge abused his discretion by denying the settlement motion, based on an "improper understanding of the law." S. Op. Br. at 10; *see Shemwell v. Armstrong Coal Co.*, 36 FMSHRC 1097, 1101 (May 2014); *see also Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003) (citations omitted) (articulating *de novo* standard of review). The Secretary asserts that she has unreviewable prosecutorial discretion to remove an S&S designation because S&S designations are "enforcement decisions," not "penalties," under the language of section 110(k). S. Op. Br. at 10-18.

The Secretary grounds her claim to this authority in the Administrative Procedure Act ("APA"), arguing that enforcement agencies are generally presumed to have unreviewable discretion to settle enforcement actions. She submits that such a presumption can be overcome only when the controlling statute both (1) indicates an intent to circumscribe agency enforcement discretion; and (2) provides meaningful standards for defining the limits of that discretion (citing as support the "*Heckler* Test" established in *Heckler v. Chaney*, 470 U.S. 821, 834 (1985)). The Secretary asserts that the presumption of unreviewability cannot be overcome for the removal of S&S designations because section 110(k) fails to meet the second prong of the *Heckler* test; that is, it does not provide any meaningful standards for judicial review of the Secretary's S&S decisions, but only for penalty amounts.

The Secretary cites to the Commission's decisions in *Mechanicsville Concrete, Inc.* and *American Aggregates of Michigan, Inc.* to support her position that she need only depend on her discretion when vacating S&S designations in settlements. S. Mot. ¶ 6(C)(2); *Am. Aggregates of Mich., Inc.*, 42 FMSHRC 570, 576–79 (Aug. 2020) (citing *Mechanicsville Concrete, Inc.*, 18 FMSHRC 877, 879–89 (June 1996)).

The Secretary further relies on the Act's split-enforcement scheme to argue that the Mine Act precludes Commission review of the Secretary's decision to remove an S&S designation. According to the Secretary, the role of the Commission is limited to adjudicating disputes and not to "second-guess the Secretary's enforcement choices or to make its own." S. Op. Br. at 18-19.

Finally, the Secretary argues that other considerations support the Secretary's unreviewable discretion to remove S&S designations, such as fairness to operators, public confidence in enforcement of the Mine Act, and the Equal Access to Justice Act ("EAJA").

The operator filed a response brief reiterating many of the same arguments made by the Secretary.

## III.

### Disposition

For the reasons set forth below, we hold that the Secretary does not have unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Act. We further hold that the parties must provide sufficient reasoning and justification to support the removal of an S&S designation in a settlement motion.[4] Accordingly, we conclude that the Judge did not abuse his discretion by denying the settlement motion.

### A. Sections 110(k) and 110(i) of the Mine Act Demonstrate an Intent to Circumscribe the Secretary's Enforcement Discretion and Supply a Meaningful Standard of Review to Evaluate the Secretary's Removal of S&S Designations in Settlement Proceedings.

Agency decisions not to enforce, including an agency's decision to settle, are generally committed to the agency's discretion and are therefore presumptively unreviewable. *Heckler v. Chaney*, 470 U.S. at 831; *see, e.g.*, *Baltimore Gas & Elec. Co. v. FERC*, 252 F.3d 456, 459-60 (D.C. Cir. 2001). However, this presumption of unreviewability may be overcome if the relevant statute "has indicated an *intent to circumscribe* agency enforcement discretion, and has provided *meaningful standards* for defining the limits of that discretion." 470 U.S. at 834 (emphasis added).

For the reasons below, we hold that the Mine Act meets both requirements of the *Heckler* test, therefore the Secretary does not have unreviewable authority to settle proceedings under the Mine Act.

#### 1. Section 110(k) of the Act demonstrates an intent to circumscribe the Secretary's enforcement discretion to remove S&S designations in the context of settlement proceedings.

The Commission has held that, in the settlement context, section 110(k) rebuts the general rule of unreviewability. Section 110(k) expressly curtails the Secretary's authority to exercise a basic power of prosecutorial discretion: the power to settle a case. As stated in

---

[4] Our dissenting colleague states the issue in this case as "whether an ALJ may disapprove a settlement based upon disagreement with the Secretary of Labor's discretionary decision to vacate a special finding of a Significant and Substantial ("S&S") violation." Slip op. at 15. This is not an accurate characterization of the issue before us. The question before us is not whether a Judge may subjectively "disagree" with the Secretary, but whether a Judge may review a proposed settlement to determine whether the Secretary has provided sufficient justification for her decision to remove an S&S designation. Under Commission Rule 76(d), "review shall be confined to the issues raised in the Judge's certification," and the dissent's attempt to answer a different question than the one certified violates the Commission's procedural rules. 29 C.F.R. 2700.76(d).

4

*American Coal Co.*, 38 FMSHRC 1972, 1980 (Aug. 2016) ("*AmCoal I*"), "section 110(k) is an explicit expression of Congressional authorization that rebuts any presumption of unreviewability" under *Heckler*. As a result, the remaining question before us is the scope of the intended circumscription.

A review of the language, the legislative history, comparisons to other health and safety statutes, and practical considerations all signal an expansive role for the Commission. This includes the authority to review S&S removals in citations within settlements as a necessary component of its settlement review authority. In reaching this holding, we do not grant the Commission any new settlement review authority beyond that of *AmCoal I*, 38 FMSHRC at 1972 and *American Coal Co.*, 40 FMSHRC 983 (Aug. 2018) ("*AmCoal II*").

With respect to the language of section 110(k), it is highly significant that Congress included the terms "compromised" and "mitigated" in addition to "settled" in section 110(k), 30 U.S.C. § 820(k). *See AmCoal I*, 38 FMSHRC at 1975-76. In order to grasp that significance, it is important first to understand what the words in section 110(k) mean in context. "Compromise" and "mitigate" are not defined in the Act. In the absence of a statutory definition, courts typically "construe statutory term[s] in accordance with [their] ordinary or natural meaning[s]." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).[5] Furthermore, when Congress uses multiple terms, such as here, the courts construe each term to have a particular, non-superfluous meaning. *See, e.g.*, *Bailey v. U.S.*, 516 U.S. 137, 145-46 (1995) (rejecting interpretation that would have made "uses" and "carries" redundant in a statute penalizing using or carrying a firearm in commission of offense), *superseded by statute*, Criminal Use of Guns 1998, Pub.L. 105–386, § 1(a)(1), 112 Stat. 3469, *as recognized in U.S. v. O'Brien*, 560 U.S. 218, 232–233 (2010) (discussing statutory amendment known as the "Bailey fix").

Therefore, the inclusion of the terms "compromised," "mitigated," and "settled" in section 110(k) indicates a Congressional intent for Judges to apply a holistic approach to reviewing settlements. The fact that Congress chose these words instead of using narrower language specifying that a penalty amount may not be lowered without Commission approval demonstrates that Judges must be able to review more than the mere settlement of civil penalty dollar figures. Congress did not simply state that the Commission could review penalty settlements, instead it used additional, broad terms like "compromise" and "mitigate" to ensure that the Commission's review authority was broad and encompassing. Congress' choice of broad language further demonstrates that penalties are closely intertwined with the allegations set forth in citations in settlement proceedings.

---

[5] The term "compromise," has been defined as the "settlement of differences or by consent reached by mutual concessions." *Compromise*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/compromise (last visited Aug. 27, 2024). The term "mitigates" has been defined as "to cause to become less harsh" or "to make less severe or painful" (i.e., or ameliorate, lessen, or balance out something). *Mitigate*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/mitigate (last visited Aug. 27, 2024).

Our reading of section 110(k) is consistent with previously announced interpretations of the Mine Act. For instance, the Commission has recognized that Judges must "accord due consideration to the *entirety* of the proposed settlement package, including *both its monetary and nonmonetary aspects*." *AmCoal II*, 40 FMSHRC at 989 (emphases added). During settlement review, a Judge cannot be limited to looking solely at discrete penalty dollar amounts, but rather must be able to take a holistic approach to analyzing settlements. Judges may look at compromises of the citation's allegations, and those compromises may impact the penalty amount or have other legal consequences.

The legislative history and policy considerations of section 110(k) reinforce the need for Commission review of the Secretary's removal of S&S designations in settlement proceedings. As we have previously recognized, Congress unquestionably delegated to the Commission the power to administer section 110(k) by granting the Commission the authority to review *all* settlements of citations under the Act. *See AmCoal I*, 38 FMSHRC at 1975. Congress explained that section 110(k) was intended to assure that prior abuses involved in the unwarranted lowering of penalties, because of off-the-record negotiations, would be avoided by providing for independent Commission settlement review. S. Rep. No. 95-181, at 44-45 (1977), *reprinted in* Senate Subcomm. on Labor, Comm. on Human Res., *Legislative History of the Federal Mine Safety and Health Act of 1977*, at 632–33 (1978) (*Leg. Hist.*).

Congress knew that having such authority is a necessary component of the Commission's ability to meaningfully review the "compromise," "mitigation," and "settlement" of penalties as a whole and to effectively deter future violations. 30 U.S.C. § 820(k). Section 110(k) serves to maintain the deterrent effect of violations and penalties, in part by preventing the Secretary from abusing her authority to settle such violations without appropriate justification. *See AmCoal I*, 38 FMSHRC at 1975-76 (citing S. Rep. No. 95-181, at 44-45, *reprinted in Leg. Hist.* at 632-33). The Commission cannot effectively review the Secretary's reduction of a penalty without examining the factors that go into it. This underscores the importance of a meaningful, all-encompassing review by the Commission that goes beyond mere dollar amounts.

Congress' intent is further reinforced by a comparison of the Mine Act to the Occupational Safety and Health Act ("OSH Act"). The OSH Act contains similar language to section 110(k), but with an important distinction. Section 655(e) of the OSH Act states that "[w]henever the Secretary [of the Occupational Safety and Health Administration] promulgates any standard, makes any rule, order, or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this chapter, he shall include a statement of the reasons for such action, which shall be published in the Federal Register." 29 U.S.C. § 655(e). Although the caselaw and legislative history of the OSH Act do not specify what the terms "compromises" or "mitigates" a penalty means, the legislative history makes it clear that these actions are within the purview of the Secretary. *See generally* S. Rep. 91-1282 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 5177.

It is important to distinguish that in the OSH Act, the Secretary is *authorized* to take such actions *without approval* by the Occupational Safety and Health Review Commission ("OSHRC"), while in the Mine Act – which was passed seven years later – Commission

approval is required. *See* 30 U.S.C. § 820(k). As with the Mine Act's legislative history, this comparison between the language of the statutes elucidates Congress' intent, in drafting the Mine Act, to avoid the abuses arising from off-the-record negotiations by the Secretary, by envisioning a greater role for the Commission under the Act.

Finally, practical and common-sense considerations support an interpretation of the statute that grants broad authority to the Commission to approve or deny settlement motions. In fact, it is hard to fathom any meaningful review under section 110(k) if all relevant factors are not considered.

That is evident in this case. Specifically, here, the Secretary's removal of an S&S designation in a citation during a settlement proceeding resulted in a reduced penalty amount. Whether the penalty amount is appropriate cannot be properly determined without consideration of how other changes to the citation impact the penalty. Further, this case demonstrates that non-monetary considerations in one citation may have monetary consequences later. For example, an operator might be willing to pay the full amount of a proposed penalty in exchange for the Secretary's removal of an S&S designation in order to avoid a Pattern of Violations ("POV") notice in the future thereby "mitigat[ing]" the harshness of the proposed penalty. All factors, rather than simply the penalty amount, are part of the bargained-for exchange, i.e., the "compromise" that occurs in Mine Act settlements.

The Secretary would interpret section 110(k) narrowly, as applying only to monetary "penalties." Specifically, the Secretary argues that she has the unreviewable authority to remove S&S designations in a settlement proceeding without the Commission's approval because "[t]he 'particular language' of section 110(k) . . . grants the Commission only the authority to approve the settlement of 'penalties,'" S. Op. Br. at 17. The Secretary further argues that S&S removals are not "penalties." *Id.* She also relies on the language of section 104(h), which provides for the Secretary's authority to "modif[y], terminat[e], or vacat[e]" citations or orders. 30 U.S.C. § 814(h). The Secretary asserts that removing an S&S designation in a settlement is analogous to modifying a citation, and that "Congress would not have given the Secretary the independent authority to modify violations if Congress did not mean for the Secretary to exercise that authority independently." S. Op. Br. at 17. According to the Secretary, the language and overall structure of the Act and the "nature of the administrative action at issue" confirm that the Secretary's decisions to remove S&S designations in citations are unreviewable decisions in a settlement, as distinct from her decisions to settle "penalties." *Id.* at 17-18.

In essence, the Secretary's argument boils down to an assertion that Congress must have meant something different from what the language obviously says, which is *the Commission must approve settlements*. However, other language in the Mine Act, relevant for other purposes, does not negate this clear Congressional intent. Further, the Secretary's interpretation would effectively undermine Congressional intent, by allowing for unfettered discretion to modify any settlement if the penalty amount remains the same. Taken to its logical conclusion, this would enable the Secretary to take an end run around Commission review of settlements, rendering such review a nullity. Accordingly, we necessarily read section 110(k) as circumscribing the Secretary's discretion for her removal of S&S

designations in settlement proceedings.

> 2. Sections 110(i) and 110(k) supply a meaningful standard of review to evaluate the Secretary's removal of S&S designations in settlement proceedings.

Having determined that Congress clearly intended to circumscribe the Secretary's enforcement authority in Section 110(k), we now turn to the question of whether the statute in question provides "*meaningful standards* for defining the limits of that discretion." *Heckler*, 470 U.S. at 822. (emphasis added). Whether a statute provides a "meaningful standard" depends on "the particular language and overall structure of the statute in question, . . . as well as 'the nature of the administrative action at issue.'" *Speed Mining, Inc. v. FMSHRC*, 528 F.3d 310, 317 (4th Cir. 2008) (citing *Webster v. Doe*, 486 U.S. 592, 600-01 (1988) and quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)). If there are "no judicially manageable standards . . . for judging how and when an agency should exercise its discretion," then those discretionary decisions are unreviewable. *Heckler*, 470 U.S. at 830.

We hold that section 110(i), 30 U.S.C. § 820(i), of the Mine Act provides a judicially manageable standard that constrains the Secretary's discretion and allows Commission Judges to evaluate how and when the Secretary should exercise her decision-making when removing S&S designations in settlement proceedings. *See Speed Mining*, 528 F.3d at 317. This standard is set forth in the six penalty factors that the Commission must consider in assessing a penalty.

Although section 110(i) does not explicitly reference S&S, it does require consideration of evidence of the "gravity" of the violation. 30 U.S.C. § 820(i). The Commission has held that gravity and S&S, although not identical, are "based frequently upon the same or similar factual circumstances." *Quinland Coals, Inc.*, 9 FMSHRC 1614, 1622 n. 11 (Sept. 1987), *citing* 30 U.S.C. §§ 820(i), 814(d). S&S is essentially the interplay between the "likelihood" and "severity" components of "gravity" in the Mine Act and its related regulations.[6] *See e.g.* 30 C.F.R. § 100.3, Tables XI, XII. In short, the Commission's review of the Secretary's decision to remove an S&S designation is not arbitrary but is instead guided by the statutory language in section 110(i) regarding gravity.

---

[6] MSHA has effectively conceded the interrelatedness of S&S and gravity. For example, when evaluating the penalty points for gravity, MSHA is required to assign additional points for any violation where the "event against which a standard is directed" is "reasonably likely" to occur, which is similar to the language used in the *Mathies* test for S&S. *See* 30 C.F.R. § 100.3, Table XI; *compare Mathies Coal Co*., 6 FMSHRC 1, 3 (Jan. 1984). Similarly, the MSHA Inspector Citation Handbook and MSHA Handbook both structure their guidance on S&S within the gravity context. *See generally* MSHA Handbook Series U.S. Dep't of Labor, Mine Safety and Health Administration, Dec. 2020 Handbook Number PH20-I-3, *Citation and Order Writing Handbook*, *available at:* https://arlweb.msha.gov/READROOM/HANDBOOK/ PH20-I-13.pdf (listing "S&S" as subsection 10(c) of section 10 which is entitled "gravity").

In addition to section 110(i), the Commission has interpreted section 110(k) to require settlements to be "fair, reasonable, appropriate under the facts, and protects the public interest." *AmCoal I*, 38 FMSHRC at 1976. This standard also applies with respect to the Secretary's decision to remove an S&S designation.

Thus, sections 110(i) and 110(k) provide a "judicially manageable standard[] . . . for judging how and when [the Secretary] should exercise [her] discretion" in removing S&S designations in settlement proceedings. *Speed Mining*, 528 F.3d at 317. Accordingly, we hold that the *Heckler* presumption of unreviewability for the Secretary has been overcome. *Heckler*, 470 U.S. at 834.

### B. The Secretary's Broad Reliance on *Mechanicsville* and *American Aggregates* is Misplaced and Overlooks Contrary Commission Caselaw.

As noted above, the Secretary argued that the Commission decisions in *Mechanicsville* and *American Aggregates* render her decision to remove an S&S designation unreviewable. However, those cases are inapposite.

*Mechanicsville* is distinguishable in two respects. First, as the Judge noted below, *Mechanicsville* involved a *Judge's* attempt to *add* an S&S designation while the current case involves a proposal by the *Secretary* to *eliminate* an S&S designation. 18 FMSHRC 877, 879-80 (June 1996) (holding that, where MSHA has not charged an S&S violation, a Judge may not make an S&S finding on his or her own initiative).[7] Second, *Mechanicsville* relies on a line of precedent stemming from a case brought under the OSH Act. *See RBK Constr., Inc.*, 15 FMSHRC 2099, 2101 (Oct. 1993), *citing Cuyahoga Valley Ry. Co v. United Transp. Union*, 474 U.S. 3, 6-7 (1985). As noted above, the OSH Act and the Mine Act diverge regarding the Secretary's authority over settlements. Therefore, precedent developed under the OSH Act does not inherently apply to the Mine Act in the settlement context.

We also agree with the Judge's determination that the Secretary's reliance on *American Aggregates* is also "misplaced." 44 FMSHRC at 25 In *American Aggregates*, 42 FMSHRC at 576-81, "the Commission vacated a Judge's decision to deny a settlement motion because the Judge ignored information that was relevant to the reasonableness of the settlement under the *AmCoal* criteria." 44 FMSHRC at 25; see *AmCoal I*, 38 FMSHRC at 1979-81; *AmCoal II*, 40 FMSHRC at 991. That information had "included several facts that were relevant to, and plausibly supported, a decrease in gravity and negligence, and the removal of the S&S designation." 44 FMSHRC at 25. As the Judge stated, the Commission reversed the Judge's denial of the settlement, including the removal of the S&S designation, solely because the Judge had failed to consider the relevant factual support provided. *Id*. Nothing in that case

---

[7] Our dissenting colleague states "[n]o one would suggest that, before or after a hearing, an ALJ could add a special S&S finding even though the violation was not cited as S&S." Slip op. at 18. We agree. That issue is well-settled and not before us at this time. For the reasons outlined above, the question of whether the Secretary has unfettered discretion to eliminate an S&S designation is a legally distinct issue.

supports the parties' broad, sweeping position that the Secretary's decision to remove an S&S designation in a settlement constitutes unreviewable prosecutorial discretion.

Thus, neither *Mechanicsville* nor *American Aggregates* supports the parties' positions in this case that S&S determinations made in the context of a settlement are presumptively unreviewable "enforcement decisions."

In fact, long-standing Commission caselaw holds that Commission Judges must review *all* settlements of citations, as the Commission has consistently required its Judges to consider reasoning and justifications that are both substantive and relevant to proposed modifications before a motion to approve *any* settlement may be granted. *See, e.g., Solar Sources Mining, LLC*, 41 FMSHRC 594, 601, 605-06 (Sept. 2019) (reversing Judge's determination that the parties presented no justification to support settlement, when the parties "actually presented relevant facts," including the non-applicability of the standard); *Hopedale Mining, LLC*, 42 FMSHRC 589, 597-602 (Aug. 2020) (reversing the Judge's settlement denial because the Secretary had provided relevant justification in part to support the lowering of negligence and gravity).

Here, the Secretary failed to submit sufficient support showing why the citation involving a roof control plan violation was not S&S although a roof fall had occurred. The Secretary merely stated that the area in question at the mine had never been deemed to be wider than the roof control plan allowed, so that additional bolts had not been installed, and that the condition was not obvious, had not been noted on prior inspections, and did not present visible signs that a roof fall was imminent. While the Judge found that "these facts would support a reduction in negligence, they would not support a reduction of the likelihood of injury in an area where a roof fall occurred." 44 FMSHRC at 33.[8]

Although Judges need not engage in fact-finding, weighing conflicting evidence, or making credibility determinations, they must still "probe gaps or inconsistencies in the explanation offered in support of a settlement motion." *Cf. Hopedale Mining*, 42 FMSHRC at 595 (offered in response to the dissent); *see also Black Beauty Coal Co.*, 34 FMSHRC 1856, 1863, n.6 (Aug. 2012) (holding that the Judge did not abuse her discretion in noting gaps and inconsistencies in settlement motion); *Solar Sources Mining LLC*, 41 FMSHRC at 602 (stating that Judges are "expected to . . . determine whether the facts support the penalty agreed to by the parties").[9] Here, the parties failed to provide the Judge with sufficient justifications to

---

[8] Our dissenting colleague notes that the parties can only settle "if they can explain to the Commission how the compromise penalty comports with the penalty criteria expressly established in section 110(i)." Slip op. at 21. However, that is exactly what the parties failed to do here: they failed to explain how the facts they assert comport with the penalty they agreed to assess. Specifically, the parties failed to explain how the facts asserted could reasonably be cited for the compromised gravity determination they agreed upon. The ALJ gave the parties opportunities to provide that explanation for this compromise, but they failed to provide one.

[9] Our dissenting colleague characterizes this analysis as a "mini hearing" on the merits of the case. Slip op. at 22. That is not an accurate characterization of what has occurred here. The

10

serve as the basis for an evaluation for why the citation for an alleged roof control plan violation issued after a roof fall was not S&S under *AmCoal I*.

## C. The Secretary's Policy Arguments Relying on the Mine Act's Split-Enforcement Scheme Are Unpersuasive in the Context of Settlements.

The Secretary also claims that the Act's split-enforcement scheme precludes Commission review of the Secretary's S&S decisions during settlement proceedings. According to the Secretary, the role of the Commission is limited to adjudicating disputes and not to "second-guess the Secretary's enforcement choices or to make its own." S. Op. Br. at 18-19. Applying this principle, the Secretary describes the Commission's assertion of settlement authority here as a "pernicious" intrusion into the Secretary's enforcement decisions, which would "invite [the Commission] to substitute its views of enforcement policy for those of the Secretary, a power that . . . the Commission does not possess." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 158 (D.C. Cir. 2006)[10]; *Speed Mining*, 528 F.3d at 319. The Secretary speculates that, as a result of this "intrusion," a Commission Judge could presumably reject the Secretary's S&S removals, forcing her to pursue elevated enforcement actions that she does not believe to be warranted, thus violating Commission Procedural Rule 6(b)(2), 29 C.F.R. § 2700.6(b)(2) (stating that the signer of a document certifies that the document "is well grounded in fact and is warranted by existing law . . . ."). S. Op. Br. at 19.

We reject the Secretary's argument. If any relevant circumstances exist to plausibly suggest that an S&S enforcement action is unwarranted, all the Secretary needs to do is provide justification for removing the S&S designation to the Judge in her settlement motion – and her motion must be granted. *AmCoal I*, 38 FMSHRC at 1982; *Hopedale*, 42 FMSHRC at 601. If a Judge were to still reject the motion, the Secretary could employ various procedural safeguards to protect herself from having to pursue an unwarranted S&S enforcement action. She could, for example, seek interlocutory review, as she did in this case. Even if a Judge were to deny or

---

ALJ did not convene a hearing, he did not question witnesses or make credibility determinations. Instead, he simply read the submissions provided by the parties, noticed inconsistencies between the facts asserted and the penalty assessed, and requested clarification. The parties failed to provide sufficient clarification and the ALJ denied the settlement.

[10] Our dissenting colleague cites *Twentymile Coal Co.*, for the proposition that "the Secretary's charging discretion is as uncabined as that of a United States Attorney under the Criminal Code." Slip op. at 22, *quoting Twentymile Coal Co.* 456 F.3d at 157. In *Twentymile*, the D.C. Circuit reversed a Commission decision which overturned a decision by the Secretary of Labor to cite both the owner-operator of a mine, as well as its independent contractor, for safety violations committed by the contractor. *Id*. at 152. The court determined that because the Mine Act provided no meaningful standards against which to judge the Secretary's decisions regarding which parties to cite, the Commission is generally without authority to review such decisions. *Id*. That is distinguishable from the situation here. As discussed at length above, sections 110(i) and 110(k) evince Congress' desire to limit the Secretary's discretion during settlement and provide a standard of review for the Commission to analyze the Secretary's actions.

disregard the Secretary's motion for interlocutory review, the parties could seek review of that denial or disregard of the motion before the Commission and the Courts of Appeals.[11]

> ### D. The Secretary's Remaining Policy Arguments Relying on Fairness to Operators, Public Confidence in Mine Act Enforcement, and EAJA Considerations are not Sufficiently Compelling Reasons to Withhold Commission Review of S&S Removals in Settlements.

The Secretary contends that being able to prevent her from removing an S&S designation would improperly place the Commission in the role of the prosecutor, as well as risk serious unfairness to operators. According to the Secretary, an operator who receives a safety and health conference and presents facts warranting removal of an S&S designation will have it removed, but if the operator contests the citation *before* presenting identical facts, there would be no guarantee that the Commission would agree to the Secretary's decision to remove the special finding. The Secretary argues that an operator's ability to present information to the Secretary, and to have special findings removed when warranted, should not depend on *when* a citation negotiation happens to occur in the contest process.

We conclude that these procedural fairness concerns are outweighed here by the safety policies of the Act. As declared by section 2 of the Act, "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource--the miner." 30 U.S.C. § 801(a). Here, the Commission's interpretation of section 110(k) and 110(i) furthers this purpose by maintaining the deterrent effect of violations and penalties, in part by preventing the Secretary from abusing her authority to settle such violations without appropriate justification. *See AmCoal I*, 38 FMSHRC at 1975-76 (citing S. Rep. No. 95-181, at 44).

"Statutes are hardly, if ever, singular in purpose," but rather, "most laws seek to achieve a variety of ends in a way that reflects the give-and-take of the legislative process." *Van Hollen, Jr. v. Fed. Election Comm'n*, 811 F.3d 486, 494 (D.C. Cir. 2016). Here, the Commission's interpretation of section 110(k) reflects a reasonable accommodation of the safety goals and other policies of the Act.

Furthermore, the Secretary's EAJA arguments lack merit. The Secretary claims that being able to prevent her from removing an S&S designation in a settlement could inappropriately force her to assume EAJA risk when she has decided not to. The Secretary again paints a hypothetical scenario where an operator contests a citation and, during settlement negotiations, it presents facts that warrant removal of an S&S designation. In this scenario, the

---

[11] *See, e.g.*, *Hopedale*, 42 FMSHRC at 592-94 (holding that a Judge erred in convening a hearing rather than ruling on a motion seeking interlocutory review); *see also Shamokin Filler Co.*, 33 FMSHRC 1753 (Aug. 2011). The Commission has repeatedly granted interlocutory review of orders denying approval of settlement motions. *See, e.g.*, *Solar Sources, LLC*, 41 FMSHRC 594 (Sept. 2019); *Am. Aggregates of Michigan, Inc.*, 41 FMSHRC 270 (Jun. 2019); *Rockwell Mining, LLC*, 40 FMSHRC 994 (Aug. 2018); *AmCoal II*, 40 FMSHRC at 983; *Amax Lead Co. of MO*, 4 FMSHRC 975 (Jun. 1982).

Secretary agrees to modify the citation and informs a Judge of that decision but refuses to inform the Judge of the exculpatory justifications presented by the operator. As a result, the Judge refuses to permit the settlement modification. The operator, unwilling to accept a citation with a special finding the Secretary has already agreed to remove, goes to hearing. Subsequently, the Judge, Commission, or court of appeals vacates the citation, and the operator seeks EAJA fees.

In such a scenario, according to the Secretary, it could be difficult for her to prove that her position (litigating the citation that includes the S&S designation) was "substantially justified"[12] because of her earlier agreement to remove the designation – which could effectively be used against her. The Secretary claims that this risky and undesirable litigating position would flow from the Commission's refusal to grant the Secretary unfettered discretion to remove S&S designations in settlements.

We reject this argument. As discussed above, if any relevant facts exist to plausibly suggest that an S&S enforcement action is unwarranted, all the Secretary needs to do is provide the reasoning and justification for removing the S&S designation to the Judge – and the settlement motion must be granted. *AmCoal I*, 38 FMSHRC at 1973-74; *Black Beauty*, 34 FMSHRC at 1863; *Cf. Hopedale*, 42 FMSHRC at 589. Furthermore, if a Judge were to still reject the settlement motion, as stated above, the Secretary would still have the benefit of various procedural safeguards, such as being able to petition for interlocutory review, to protect herself from having to pursue an unwarranted S&S enforcement action. *See, e.g.*, *Hopedale*, 42 FMSHRC at 592-94 (holding that a Judge erred in convening a hearing rather than ruling on a motion seeking interlocutory review); *Shamokin Filler Co.*, 33 FMSHRC at 175. Further, it is a bedrock principle of American jurisprudence that a party's settlement positions and offers cannot be used against a party in litigation to show inconsistency or contradiction. *See e.g.* Federal Rule of Evidence 408.

In sum, we conclude that sections 110(k) and 110(i) of the Mine Act demonstrate an intent to circumscribe the Secretary's enforcement discretion and supply a meaningful standard of review to evaluate the Secretary's removal of S&S designations in settlement proceedings. We find unpersuasive the Secretary's arguments to the contrary.

---

[12] 5 U.S.C. § 504 authorizes the payment of attorney's fees to a prevailing party in an action against the United States unless the government can show that its position in the underlying litigation "was substantially justified."

# IV.

## **Conclusion**

For the reasons stated above, we hold that the Secretary does not possess unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Act. Further, we hold that the parties must provide sufficient factual support to remove an S&S designation under such circumstances. We therefore conclude that the Judge did not abuse his discretion by denying the settlement motion. Accordingly, we affirm the Judge's denial of the motion and remand the case to the Judge.

Mary L. Jordan, Chair

Marco M. Rajkovich, Jr., Commissioner

Timothy J. Baker, Commissioner

Moshe Z. Marvit, Commissioner

Commissioner Althen, dissenting:

This opinion addresses two cases presently being acted upon by the Commission. These cases involve a total of six settlement dockets now pending before the Commission concerning whether a Commission Administrative Law Judge ("ALJ") may interfere with the Secretary's exercise of prosecutorial discretion. In each case, I respectfully dissent.

In *Crimson Oak Grove Resources, LLC*, Docket No. SE 2021-0112 et al., the Commission considers whether an ALJ may disapprove a settlement based upon disagreement with the Secretary's discretionary decision to vacate a citation.[1] In *Knight Hawk Coal, LLC*, Docket No. LAKE 2021-0160, the Commission considers whether an ALJ may disapprove a settlement based upon disagreement with the Secretary of Labor's discretionary decision to vacate a special finding of a Significant and Substantial ("S&S") violation.[2] In each case, the Commission majority seeks to wrest discretionary policy and enforcement decisions from the Secretary. The majority does so by misconstruing the wording, purpose, and limit of section 110(k) of the Mine Act, 30 U.S.C. § 820(k) and refusing to accept the Secretary's policymaking and enforcement authority.[3]

Common threads join the cases—the Secretary's exclusive executive authority to make enforcement decisions and the Commission's failure to have any policy-making authority. Rather than writing separate opinions, I consolidate my dissenting opinion into one opinion to be issued in each case, respectively.

The express terms of the Mine Act and the established enforcement authority of the Secretary undercut the ALJ's and Commission's desire to become an enforcement agency through its review of penalty settlements rather than properly tending to its adjudicative function and the review of penalties. The Commission's decisions in these cases would allow ALJs to second-guess discretionary enforcement decisions ranging from vacating citations to designations of S&S violations finding unwarrantable failures, finding flagrant violations, and beyond. Interference by ALJs with the Secretary's substantive authority is a legal error and a

---

[1] In *Crimson Oak* the question for review is, "whether section 110(k) of the Mine Act authorizes review of the Secretary's decision to vacate a citation in the context of a settlement, when the vacatur is contingent upon the resolution of other citations." 46 FMSHRC ___, slip op. at 2, No. SE 2021-0112, et. al. (August 30, 2024).

[2] The Commission's Order for Interlocutory review in *Knight Hawk* is "whether the Secretary has unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Mine Act." Unaccountably, the majority misstates the issues before us in both of their opinions.

[3] The other dockets included in the cases identified above are: *Greenbrier Minerals, LLC*, Docket No. WEVA 2022-0403, *Crimson Oak Grove Res., LLC,* Docket No. SE 2021-0134, *River City Stone-Div/Mathy Construction Co.*, Docket No. LAKE 2021-0145, and *Holcim (US) Inc.*, Docket No. YORK 2021-0023.

very large step backward for the efficient and lawful administration of the Mine Act.[4]

## I.

## <u>BACKGROUND</u>

In 1966, Congress enacted the Federal Metal and Nonmetallic Mine Safety Act, 30 U.S.C. § 721 et seq. (1976). Congress placed standard-setting and enforcement authority in the Department of the Interior. It further created a Federal Metal and Nonmetallic Mine Safety Board of Review possessing authority to review citations contested by operators. The President appointed five members to the Board with the advice and consent of the Senate.

Building upon this effort to increase mine safety for metal/nonmetal mines, Congress turned its attention to the coal industry in 1969. It enacted the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 et seq. (1976) (amended 1977). Again, Congress granted regulatory authority to the Department of Interior. That Department created the Mining Enforcement and Safety Administration to conduct mine safety enforcement activities.

Notwithstanding improvements, a frightening number of injuries and accidents continued to occur. An incomplete summary includes the death of 91 miners from carbon monoxide asphyxiation at the Sunshine Silver Mine in 1972, the death of 125 persons due to the bursting of an impoundment at the Buffalo Creek Mine in 1972, and the 1976 Scotia disaster in which twenty-three miners and three federal inspectors died in two explosions of accumulated methane gas with some blaming MESA for the failure to detect or address ongoing inadequate ventilation deficiencies. *See* Tim Talbott, Kentucky Historical Society*, Scotia Mine Disaster,* https://explorekyhistory.ky.gov/items/show/238 (last visited Aug. 28, 2024); MSHA, *Sunshine Mine Disaster*, https://www.msha.gov/sunshine-mine-disaster (last visited Aug. 28, 2024); MSHA, *Buffalo Creek Mine Disaster 50th Anniversary*, https://www.msha.gov/buffalo-creek-mine-disaster-50th-anniversary (last visited Aug. 28, 2024).

In response to these tragedies, Congress undertook a comprehensive review of mine safety in the mid-1970s. This review led to the passage of the Federal Mine Safety & Health Act of 1977, 30 U.S.C. § 801 et seq. (2018) ("Mine Act" or the "Act").

Dissatisfied with the performance of the Department of Interior generally and especially its assessment and collection of penalties, Congress shifted the authority to regulate and inspect mines from the Department of Interior to the Department of Labor ("DOL"). DOL established the Mine Safety and Health Administration ("MSHA"). Under its authority from the Mine Act,

---

[4] MSHA data reveals that in calendar year 2022, MSHA issued 87,474 citations. MSHA, Dept. of Labor, *MSHA Enforcement Data, MSHA Violations*, https://enforcedata.dol.gov/views/data_catalogs.php (last visited Aug. 28, 2024). Internal Commission records show that challenges to citations resulted in creation of 1,751 Commission dockets. The Commission resolved 1411 of those dockets by settlement, 314 for miscellaneous reasons, and only 13 by a decision after a hearing. In sum, the Commission processed more than 100 times more settlements than decisions after hearings.

MSHA exercises broad regulatory powers over the mining industries including promulgating mandatory standards and regulations. Additionally, by statute, MSHA conducts frequent and comprehensive inspections of all mines. During inspections, MSHA issues citations for violations of standards and regulations. Subsequently, it proposes penalties for the cited violations. Generally, those proposals result from the application of a penalty point system at 30 C.F.R § 100.3 that accounts for all elements prescribed by Congress for penalty proposals in Section 110(i) of the Mine Act, 30 U.S.C. § 820(i). Occasionally, MSHA will propose a special assessment.

The Mine Act also created a smaller but constitutionally important federal agency—the Federal Mine Safety and Health Review Commission ("FMSHRC"). Congress assigned important functions to the Commission. These are (1) due process adjudication of alleged violations of standards and regulations promulgated by MSHA and of discrimination complaints; and (2) the assessment of penalties for established violations. The Mine Act grants the Commission authority to assess all civil penalties and identifies six specific factors for the Commission to consider when setting penalties.

The Secretary and Commission perform important but distinctly different functions within their separate jurisdictions. MSHA is the sole agency authorized to set policies and regulations for the regulation and enforcement of the Mine Act. The Secretary, through MSHA, also performs frequent and thorough inspections of mines and other investigations to enforce the Act and the Secretary's regulations. Only MSHA may issue and enforce a citation. MSHA is the sole enforcement authority for the Act and exercises plenary jurisdiction in enforcement.

The Commission is an adjudicative agency and does not have any policymaking or enforcement responsibilities. *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 171 (D.C. Cir. 2006) ("[T]he Commission has no 'policymaking role,'" *id.* at 154, 111 S.Ct. 1171. Instead . . .'the Commission is authorized to review the Secretary's interpretations only for consistency with the regulatory language and for reasonableness.' *Id.* at 154–55, 111 S. Ct. 1171. And, like a court, the Commission is not as a general matter authorized to review the Secretary's exercise of prosecutorial discretion."), *citing Martin v. OSHRC*, 299 U.S. 144 (1991); *Energy West Mining Co. v. FMSHRC,* 40 F.3d 457, 463 (D.C. Cir. 1994); *Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 114 (4th Cir. 1996).

In the cases under review, the majority interjects the Commission into discretionary Secretarial enforcement decisions—decisions to vacate a previously issued citation and, separately, to vacate a special finding that a violation was S&S. The majority's assertion of a right to second-guess discretionary enforcement decisions by the Secretary is contrary to the Congressionally intended split of authority between the Secretary and the Commission. The designation of a violation as S&S and many other prosecutorial enforcement functions are wholly reserved for the Secretary. The Secretary, acting through MSHA, has the discretionary and only authority to issue or vacate a citation or S&S designation.

Policy-making and discretionary enforcement decisions are left wholly to the Secretary. *Knox Creek Coal Corp. v. Sec'y of Labor*, 811 F.3d 148, 159 (4th Cir. 2016) ("[W]e have previously recognized that the Secretary is the authoritative policymaking entity under the Mine

Act's scheme."); *Energy West Mining Co. v. FMSHRC,* 40 F.3d at 463. The Commission does not exercise any enforcement role other than setting penalties and must remain neutral and impartial concerning enforcement. *Sec'y of Labor on behalf of Wamsley v. Mutual Mining, Inc.*, 80 F.3d 110, 114 (4th Cir. 1996) ("As the Supreme Court concluded for an analogous adjudicatory body, the Commission operates as a 'neutral arbiter' . . . that possesses 'nonpolicy-making adjudicatory powers.'").

To put this case in perspective, if an ALJ may use a settlement to make decisions regarding maintaining a citation or finding a special S&S violation, it would open a host of other discretionary enforcement areas to ALJ interference—flagrant violations, unwarrantable failures, etc. No one would suggest that, before or after a hearing, an ALJ could find the Secretary showed more violations than had been cited or add to the number of violations. No one would suggest that, before or after a hearing, an ALJ could add a special S&S finding even though the violation was not cited as S&S. An ALJ may not use consideration of a settlement to second-guess the Secretary's enforcement decisions.

## II.

### SECTION 110(K) ADDRESSES THE COMPROMISE OF PENALTIES; IT DOES NOT PERMIT COMMISSION REVIEW OF POLICY DECISIONS BY THE SECRETARY.

The majority incorrectly seeks to justify incursion into areas of prosecutorial discretion by turning to the penalty section of the Mine Act. The penalty section, its history, and its implementation by the Commission demonstrate conclusively that the Commission does not have the authority to encroach upon the Secretary's enforcement authority.

Section 110 of the Mine Act sets out a comprehensive roadmap for penalty assessments. Section 110(i) grants the Commission authority over all civil penalties by providing,

> The Commission shall have authority to assess all civil penalties provided in this Act. In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation. In proposing civil penalties under this Act, the Secretary may rely upon a summary review of the information available to [her] and shall not be required to make findings of fact concerning the above factors.

30 U.S.C. § 820(i).

The section accomplishes three goals. First, it grants the Commission the authority to assess "all" civil penalties. Second, it sets forth the specific factors the Commission must

18

consider in setting penalties. Third, consistent with the Commission's ultimate authority, the Secretary may propose a penalty for review by the Commission without making findings of fact related to its proposal of penalties.

Two other sections of the Act confirm the Commission's authority over penalties. First, Section 105 provides that if an operator does not contest a proposed assessment within 30 days, "the proposed assessment of penalty shall be deemed a final order of the Commission and not subject to review by any court or agency." 30 U.S.C. § 815(a). So, even when the Commission is not directly involved in setting a penalty, the penalty is deemed an order of the Commission.

Second, and most importantly here, Congress recognized a potential hole in the Commission's authority. If the Secretary compromised a penalty proposal and the operator did not contest it, the compromised penalty would be deemed an order of the Commission under section 105 cited above. Congress closed that loophole in the Commission's penalty authority in the penalty section relevant to this case.

Section 110(k) closes the loophole thereby confirming the Commission's authority providing that "[n]o proposed penalty which has been contested before the Commission under section 105(a) of this Act shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k) (emphasis added).

This section fits neatly into the Congressional direction for penalties by assuring the Commission's ultimate authority over penalties notwithstanding an MSHA proposal to settle a penalty. It explicitly and only applies to a "proposed penalty."

Congress could have granted the Commission oversight generally of all compromises or settlements by writing "no case brought before the Commission under section 105(a) of this Act." It did not do so. It wrote, "[n]o proposed penalty which has been contested before the Commission under section 105(a) of this Act." Congress could have applied the language to "citations," or "violations." It did not do so. Congress could have given the Commission broader authority in the section of the Mine Act that created the Commission and its adjudicative authority—Section 113, 30 U.S.C. § 823. It did not do so. Section 110(k) affirmed the Commission's authority over penalties.

Congress granted the Commission oversight for penalty settlements, and it did so only in the penalty section of the Act. Previously, the Commission recognized the specificity of section 110(k). In *The American Coal Company*, the Commission wrote, "[i]n exercising its discretion, the Commission evaluates whether a proposed reduction in a penalty or penalties 'is fair, reasonable, appropriate under the facts and protects the public interest.'" 40 FMSHRC 330, 332 (Mar. 2018), *citing The American Coal Co.*, 38 FMSHRC 1972, 1982 (Aug. 2016) ("*AmCoal I*").

Section 110 is headed "Penalties." The section only addresses penalties. In the words of a prior Commission decision, the Commission "does not review the Secretary's decision to settle. Rather the Commission reviews the proposed reduction of civil penalties in settlements." *AmCoal I*, 38 FMSHRC at 1982 (emphasis in original).

In *American Coal*, the Commission expressly recognized that the Commission's review of penalties in settlements is limited by boundaries. "Such boundaries are provided by section 110(i) of the Mine Act, the Act's legislative history, and the Commission's Procedural Rules." *Id.* Section 110 does not provide for assessing a penalty based upon an S&S violation, unwarrantable failure, or other substantive requirements of the Mine Act.[5]

The legislative history of the Mine Act confirms this interpretation. Congress repeatedly and expressly emphasized its dissatisfaction with penalties assessed under the Coal Act. Early in the Senate Report, the Senate said:

> The assessment and collection of civil penalties under the Coal Act has also been a great disappointment to the Committee. The Committee firmly believes that the civil penalty is one of the most effective mechanisms for insuring lasting and meaningful compliance with the law.

S. Rep. No. 95-181, at 15 (1977), as *reprinted in* 1977 U.S.C.C.A.N. 3401, 3415.

Later in its report, the Senate focused upon its desire for public awareness of penalty compromises, writing:

> In addition to the delay in assessing and collecting penalties, another factor which reduces the effectiveness of the civil penalty as an enforcement tool under the Coal Act is the *compromising of the amounts of penalties* actually paid. In its investigation of the penalty collection system under the Coal Act, the Committee learned that to a great extent *the compromising of assessed penalties does not come under public scrutiny*. . . .
>
> . . . The Committee strongly feels that the *purpose of civil penalties*, convincing operators to comply with the Act's requirements, is best served when the process by which these penalties are assessed and collected is carried out in public, where miners and their representatives, as well as the Congress and other interested parties, can fully observe the process.

---

[5] An S&S violation has occurred if (1) there is an underlying violation of a mandatory safety standard; (2) the violation was reasonably likely to cause the occurrence of the discrete safety hazard against which the standard is directed; (3) the occurrence of that hazard would be reasonably likely to cause an injury; and (4) there would be a reasonable likelihood that the injury in question would be of a reasonably serious nature. *Peabody Midwest Mining, LLC*, 42 FMSHRC 379, 383 (June 2020). Although S&S violations contain a gravity element, an S&S finding is not the same as a finding on gravity, and gravity is treated as a distinct and separate element in the assessment of penalties.

> To remedy this situation, Section 111(1) [section 110(k) in the final Act] provides that *a penalty once proposed and contested* before the Commission may not be compromised except with the approval of the Commission.

S. Rep. No. 95-181 at 44–45 (emphasis added).

The legislative history of section 110(k) demonstrates that the reduction of penalties through settlements was the target of section 110(k).  Low penalties were the motivating concern for sections 110(i) and 110(k) expressly articulated by Congress.  Previously, the Department of Interior could settle a case by reducing the penalty.  An operator could bargain for a reduction in penalty to avoid litigation over a citation.  Thus, a deal could be reached without any consideration of the penalty factors.

MSHA and the operator may still undertake such compromises.  However, they may only do so if they can explain to the Commission how the compromise penalty comports with the penalty criteria expressly established in section 110(i).  There is no evidence, hint, or insinuation in any of this to suggest the Commission may interfere in enforcement policy decisions such as whether to issue or enforce a citation, charge an S&S violation, charge a flagrant violation, charge an unwarrantable failure or any other substantive aspect of the Mine Act with exclusive expertise and authority of the Secretary.

Commission authority over the settlement of penalties does not appear in section 105 setting out the procedures for enforcement and for operators' right to challenge citations (30 U.S.C. § 815) or section 113 establishing and providing rules for the governance of the Commission (30 U.S.C.§ 823).  The express words of section 110(k) and legislative history show the only concern of section 110(k) is the reduction of penalties.

The third bounding element also demonstrates the Commission's formal acceptance that its settlement authority applies to penalties.  The Commission's relevant procedural rules, identified in *American Coal*, *supra*, as a third boundary upon the review of settlements, is expressly limited to penalties.  The settlement rule, Procedural Rule 31, is limited to a "Penalty Settlement" and provides, *inter alia*, that "[a] motion to approve a penalty settlement shall include for each violation the amount of the penalty proposed by the Secretary . . . ."  29 C.F.R. § 2700.31(b)(1) (emphasis added).  Further, Rule 31(c)(1) states:

> Factual support.  A proposed order approving a penalty settlement shall include for each violation the amount of the penalty proposed by the Secretary, the amount of the penalty agreed to in settlement, and facts in support of the penalty agreed to by the parties.

29 C.F.R. § 2700.31(c)(1).

Consequently, the factors expressly held by the Commission as boundaries of Commission authority—the express words of the statute, the legislative history, and the

Commission's rules—demonstrate that an ALJ's settlement authority consists of reviewing the penalty proposed in the settlement. In doing so, the ALJ may consider the application of the six penalty factors but that does not mean the ALJ may conduct mini hearings.

In *Hopedale Mining, LLC*, the Commission properly explained that a settlement does not present an opportunity or a right for ALJs to engage in a fact-finding proceeding.

> During the review of a proposed settlement, the Judge is not expected to engage in fact finding as she would post-hearing. *See Solar Sources*, 41 FMSHRC at 602 ("At the pre-hearing settlement stage of a Commission proceeding, no evidence has been adduced into the record and the Judge is not required to engage in fact finding."). Judges are "expected to consider the facts as alleged by the parties in their settlement, evaluate such information under the applicable Commission standard for review, and determine whether the facts support the penalty agreed to by the parties. *Id*.

42 FMSRHC 589, 595 (Aug. 2020). The ALJ is not permitted to demand evidence or make findings concerning discretionary enforcement decisions by the Secretary.

As we see below, not only do the words of the Act, its legislative history, and Commission rules limit the Commission's authority to review penalties, but also strong and prevailing case law reserves discretionary enforcement authority to the Secretary at every stage of a proceeding.

### III.

### PROSECUTORIAL DECISIONS SUCH AS WHETHER TO VACATE A CITATION OR CHARGE A VIOLATION AS SIGNIFICANT AND SUBSTANTIAL ARE EXERCISES OF PROSECUTORIAL DISCRETION RESERVED FOR THE SECRETARY.

Policy-making and discretionary enforcement decisions are left wholly to the Secretary. *Mutual Mining, Inc.*, 80 F.3d at 114 ("As the Supreme Court concluded with respect to an analogous adjudicatory body, the Commission operates as a 'neutral arbiter.'"); *Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 7 (1985); *Knox Creek Coal Corp.*, 811 F.3d at 159 ("[W]e have previously recognized that the Secretary is the authoritative policymaking entity under the Mine Act's scheme."); *Twentymile Coal Co.*, 456 F.3d at 158; *Energy West Mining Co.,* 40 F.3d at 463. The Commission must be neutral and does not have jurisdiction over enforcement decisions. Certainly, it does not have jurisdiction to find a violation the Secretary has not cited or to contradict a Secretarial decision to vacate a citation, special S&S finding, flagrant violation, or a host of other enforcement decisions.

The D.C. Circuit authoritatively holds only MSHA has the authority to make enforcement decisions under the Mine Act and that authority is not bounded by the Commission. In short, "the Secretary's charging discretion is as uncabined as that of a United States Attorney under the

Criminal Code." *Twentymile Coal Co.* 456 F.3d at 157. Indeed, the Circuit Court characterized the attempt by the Commission to assert a right for the Commission to review enforcement decisions as "pernicious," writing "the most pernicious aspect of employing this purported standard as a check on charging decisions is that it invites the reviewing body to substitute its views of enforcement policy for those of the Secretary, a power that . . . the Commission does not possess." *Id.* at 158. The Commission and courts have repeatedly applied the fundamental principle of the Secretary's exclusive authority over the broad range of enforcement decisions and policies, including the right to vacate citations and S&S enforcement.

### A. **Citations**

The Secretary annually conducts thousands of meticulous inspections of mines. MSHA inspectors use their training, knowledge, and experience to make judgment calls concerning compliance with the thousands of requirements governing the mining industries. As a result, MSHA issues tens of thousands of citations. Thereafter, MSHA supervisors may review, approve, revise, or overrule inspectors' decisions. If a contest is filed, trained representatives of the Secretary pore over the citations reviewing the facts and the penalty assessment. Maintenance of a citation is one of the basic, if not the most basic, exercises of the Secretary's enforcement authority.

In *RBK Construction, Inc.*, 15 FMSHRC 2099 (Oct. 1993) ("*RBK*"), the Commission held that the Supreme Court's decision in *Cuyahoga Valley*, 474 U.S. 3, mandated that the Secretary had the dispositive authority to vacate a citation. The Commission correctly ended its decision with a short, declarative acknowledgment of the Secretary's authority, "We agree with the Secretary that he has the authority to vacate the citations in issue." *RBK,* 15 FMSHRC at 2101. For thirty years until today, no Commission has challenged this holding.

The Commission emphasized the Secretary's authority by instructing the Secretary and operators that they "may in the future file stipulations of dismissal signed by all parties to a proceeding, in order to effect voluntary dismissal. . . . Upon the parties' filing of the appropriate stipulation, the presiding Commission Judge shall enter an order dismissing the proceeding." *Id.* at 2101 n.2.[6] Therefore, if the parties had presented the vacation decisions separately from penalty adjustment on other citations being resolved, the ALJ would simply have ordered dismissal. It would be silly and counterproductive for the Secretary to have to resort to such gamesmanship to exercise her right to settle enforcement actions. The Secretary's unreviewable right to vacate a citation is the clear and long-standing discretionary right of the Secretary.

- In *Bixler Mining Company*, 16 FMSHRC 1427 (July 1994), the ALJ issued a default judgment against the operator for failing to comply with a prehearing order. More than 30 days later, the Secretary filed a motion to vacate the default decision, vacate the underlying citation, and dismiss the proceeding. The Commission reopened the case and

---

[6] Based upon this instruction on procedure by the Commission, when the Secretary is resolving a group of contests included in one docket, the Secretary may dispose of the vacation of a citation by filing the appropriate motion and, in turn, the ALJ "shall"—that is, "must"—approve. *RBK,* 15 FMSHRC at 2101 n.2.

vacated the citation. The Commission "concluded that the Secretary has unreviewable authority to vacate or withdraw his own enforcement actions." *Id.* at 1428.

- In *Bridger Coal Company*, 17 FMSHRC 270 (Mar. 1995), the Secretary sought to dismiss the Secretary's own previously filed PDR. Notably, the Secretary's motion stated the motion was made "in an effort to effectively utilize his resources." *Id.* at 270l. Affirming the dispositive effect of *RBK*, the Commission unanimously granted the motion. *Id.* at 271. The Secretary, not the Commission, decides upon the appropriate use of Secretarial resources.

- In *Mechanicsville Concrete, Inc. T/A Materials Delivery*, 18 FMSHRC 877 (June 1996), the principal issue was the ALJ's decision to enter an S&S finding even though the Secretary had not made a special finding of S&S. The Commission held that the Commission does not have authority to make an S&S finding not sought by the Secretary. Without a supporting finding by the Secretary, the ALJ did not possess the authority to add a new finding. *Id.* at 879-80, *citing Mettiki Coal Co*., 13 FMSHRC 760, 764-765 (May 1991). Further, the Commission reemphasized the ongoing guiding principle: "The Commission has recognized that the Secretary's discretion to vacate citations is unreviewable." *Id.* at 879.[7]

- In *United Metro Materials*, 24 FMSHRC 140 (Feb. 2002), Chairman Verheggen and Commissioner Beatty summarily granted the Secretary's motion to dismiss a Direction for Review of citations. Then-Commissioner (now Chair) Jordan separately concurred writing, "The [Supreme] Court pointed out that allowing the Commission to overturn the Secretary's decision to withdraw a citation would amount to allowing the Commission 'to make both prosecutorial decisions and to serve as the adjudicator of the dispute, a commingling of roles that Congress did not intend.'" *Id.* at 142 (citing *Cuyahoga Valley*, 474 U.S. at 7).

- Following *Cuyahoga*, 474 U.S. 3, this Commission in *RBK,* 15 FMSHRC at 2101, concluded that it lacked the authority to overturn a Secretarial decision to withdraw or vacate a citation.

- In *United Mine Workers of America on behalf of Local 1248, District 2 v. Maple Creek Mining, Inc*., 29 FMSHRC 583 (July 2007), the Commission reversed an ALJ's decision to permit litigation of a Withdrawal Order notwithstanding the Secretary's settlement. It did so even though, "[w]e are aware that vacating the judge's denial of the operator's motion for summary decision may have an adverse impact upon miners who might otherwise have been eligible for up to a week's compensation for the time they were not permitted to work due to the withdrawal order. We are sympathetic to their position. However, the Secretary has broad authority to vacate orders she has issued." *Id.* at 596-7.

---

[7] Oddly, the majority attempts to negate the clear holding of *Mechanicsville* by arguing it derived from the Commission's own prior dispositive decision in *RBK*. Slip op at 9-10.

- In *North American Drillers, LLC*, 34 FMSHRC 352, 355-56 (Feb. 2012), the Commission wrote: "The Commission has acknowledged that it lacks authority to overturn a decision by the Secretary to withdraw or vacate a citation under the Mine Act. *RBK*, 15 FMSHRC at 2101, *citing Cuyahoga*, 474 U.S. at 7-8; *Mechanicsville Concrete, Inc.*, 18 FMSHRC 877, 879 (June 1996). The Commission and the courts have also recognized that under the Mine Act, Congress intended to delegate such enforcement authority to the Secretary, not the Commission. *Mechanicsville*, 18 FMSHRC at 879; *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 161 (D.C. Cir. 2006); *Speed Mining, Inc. v. FMSHRC*, 528 F.3d 310, 319 (4th Cir. 2008)."

The majority does not provide any basis for veering from the express language of the Mine Act, its legislative history, the Commission's rules, or established case law to undercut the established principle of the Secretary's right to vacate a citation—the most basic exercise of her exclusive enforcement authority. In summary, the basic principles of split enforcement agencies, the Secretary's exclusive right to exercise prosecutorial discretion, the plain language of section 110(k), the legislative history of section 110(k), and the Commission's rules demonstrate the Secretary's right to vacate citations at any point.[8]

### B. <u>S&S Designations</u>

The standard for determining if an S&S violation has occurred is whether (1) there is an underlying violation of a mandatory safety standard; (2) the violation was reasonably likely to cause the occurrence of the discrete safety hazard against which the standard is directed; (3) the occurrence of that hazard would be reasonably likely to cause an injury; and (4) there would be a reasonable likelihood that the injury in question would be of a reasonably serious nature. *Peabody Midwest Mining, LLC*, 42 FMSHRC 379, 383 (June 2020).

If an S&S determination is challenged, an ALJ reviews the evidence and decides which party has made the more convincing argument. However, before and after the hearing, the Secretary has a right and duty to review the facts and decide whether to press a special S&S finding.

The Commission has understood the Secretary's enforcement power and the absence of Commission authority to interfere with the Secretary's authority:

---

[8] Even if those overwhelming principles were insufficient, commonsense principles of government decision-making mandate the absence of authority for the Commission to refuse to accept a decision to vacate a citation. The Commission cannot compel the Secretary to litigate a citation. If the Secretary finds a citation should be vacated, she may simply decline to prosecute it. In the absence of the presentation of a case by the Secretary, the citation must fail. It would be an unworkable and futile policy to attempt to force the Secretary to prosecute a citation once she has decided not to do so. Moreover, the Secretary recognizes that it is grossly unfair to the private citizen for a group of lawyers on the Commission to force the knowledgeable and experienced Secretary to prosecute the citizen despite her decision not to do so.

As is true under the OSH Act, "enforcement of the [Mine] Act is the sole responsibility of the Secretary," 499 U.S. at 152, 111 S.Ct. 1171 (internal quotation marks omitted), and the Commission has no "policymaking role," *id.* at 154, 111 S.Ct. 1171. Instead, "Congress intended to delegate to the Commission the type of nonpolicy-making adjudicatory powers typically exercised by a *court* in the agency-review context." *Id.* "Under this conception of adjudication, the Commission is authorized to review the Secretary's interpretations only for consistency with the regulatory language and for reasonableness." *Id.* at 154-55, 111 S.Ct. 1171. And, like a court, the Commission is not as a general matter authorized to review the Secretary's exercise of prosecutorial discretion.

*Twentymile Coal Co., 456 F.3d* at 161 (emphasis in original).[9]

In *Mechanicsville*, 18 FMSHRC 877, the Commission recognized the breadth and scope of MSHA's prosecutorial discretion. The Commission explained the distinctly different roles of MSHA and the Commission under the Mine Act, finding that the Commission must adjudicate disputes under the Mine Act; the Commission does not enforce the Mine Act itself. *Id*. at 879-80.

In *Heckler v. Chaney,* 470 U.S. 821 (1985), the Supreme Court held an agency's decision not to institute enforcement proceedings to be presumptively unreviewable under 5 U.S.C. § 701(a)(2). *Id*. at 831. An agency's "decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Id*. Numerous other decisions reiterate this fundamental principle. *Lincoln v. Vigil,* 508 U.S. 182, 191 (1993); *Wayte v. United States*, 470 U.S. 598, 607 (1985); *Robbins v. Reagan*, 780 F.2d 37, 44-45 (D.C. Cir. 1985).

Citing *Heckler* and *Brock v. Cathedral Bluffs Shale Oil Co.,* 796 F.2d 533, 538 (D.C. Cir. 1986), the Commission found that MSHA, as the enforcing administrative agency, has "virtually unreviewable discretion in making decisions not to take particular enforcement action relating to its statutory or regulatory authority." *Mechanicsville*, 18 FMSHRC at 879. An ALJ forcing the Secretary to continue an enforcement action that she has decided not to pursue directly contradicts this seminal principle.

In *American Aggregates of Michigan, Inc.*, 42 FMSHRC 570 (August 2020), the Commission held that an Administrative Law Judge may "not to engage in fact finding as he

---

[9] A host of cases affirm these basic premises. *See, e.g., Speed Mining, Inc*. v. *FMSHRC*, 528 F.3d 310, 319 (4th Cir. 2008); *RAG Cumberland Res. LP v. FMSHRC*, 272 F.3d 590, 595-96 (D.C. Cir. 2001); *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 5-6 (D.C. Cir. 2003); *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000).

would post-hearing." *Id.* at 576.[10]  The Commission recognized MSHA's right to determine whether to assert with an S&S claim stating, "[w]hether a violation is S&S is a matter in the first instance of prosecutorial discretion.  The Mine Act, therefore, recognizes the expertise of MSHA in judging whether a violation is S&S."  *Id.*

Determination of whether a violation should be designated S&S is a fact-based inquiry requiring the exercise of prosecutorial discretion.  If an S&S designation is contested at a hearing, the ALJ is presented with evidence by both parties and may decide the merits of the designation.  That authority, however, does not permit an ALJ to add an S&S finding to a citation that MSHA did not designate with a special S&S finding.  By parity of legal reasoning, if MSHA withdraws an S&S designation before a hearing, an ALJ could not make a post-hearing decision finding an S&S violation.  Similarly, it is an impermissible abuse of discretion for an Administrative Law Judge effectively to engage *sua sponte* in a fact-based inquiry and determine that the Secretary may not remove an S&S designation before settling a case.

---

[10] A searching factual inquiry by the ALJ into the Secretary's exercise of prosecutorial discretion to vacate a violation or a special S&S finding almost certainly precludes the ALJ from continuing as the Judge at a hearing.  For example, in *Knight Hawk*, Docket No. LAKE 2021-0160, the ALJ wrote, "the *operator may yet establish* by evidence that there was no violation or that any violation was not S&S."  Unpublished Order Denying Motion to Approve settlement, at 5 n.4 (Sept. 30, 2021) (emphasis added).  Although the Judge does not formally find S&S and disclaims finality, he places the burden of proof on the operator to establish at a hearing that the violation was not S&S.  Having reached that view before the presentation of any evidence, he could not possibly continue as the trial Judge.

# IV.

## CONCLUSION

The controlling element of these decisions is the exclusive enforcement authority of the Secretary.  Granting the Commission power to review the Secretary's policy decisions to enforce the Mine Act would place numerous such decisions in the hands of an ALJ who has heard no evidence, who has no mining experience, and to whom the parties have presented agreed-upon facts.  Moreover, the Commission cannot, and should not be able, to force the Secretary to undertake prosecutions she no longer supports.

The express words of the Mine Act, its legislative history, Commission rules, established case law, and sound policy demonstrate the right of the Secretary of Labor to issue citations, vacate citations, issue special S&S findings, vacate special S&S findings, issue flagrant violation citations, vacate flagrant violation citations, assert unwarrantable failures, withdraw the assertion of unwarrantable failures, and engage in a host of other enforcement, policy-driven, qualified expert decisions.  ALJs and Commissioners must resist the siren call to self-importance; they must stay within the boundaries of the law.  The Secretary has the "uncabined" right to assert or to vacate citations, special S&S findings, and other enforcement decisions.

William I. Althen, Commissioner

Distribution:

Alexandra J. Gilewicz, Esq.
Office of the Solicitor
U.S. Department of Labor
201 12th Street South, Suite 401
Arlington, VA 22202
gilewicz.alexandra.j@dol.gov

John Miklos
Director of Health and Safety
Knight Hawk Coal, LLC
500 Cutler-Trico Road
Perry, IL 62272
johnmiklos@knighthawkcoal.com

Mark E. Heath
Spilman, Thomas & Battle PLLC
PO Box 273
Charleston, WV 25321-0273
Phone: 304-340-3843
mheath@spilmanlaw.com

Emily Toler Scott
Senior Trial Attorney
Office of the Solicitor
U.S. Department of Labor
Mine Safety and Health Division
201 12th Street South, Suite 401
Arlington, VA 22202-5452
scott.emily.t@dol.gov

April Nelson, Esq.
Office of the Solicitor
U.S. Department of Labor
Mine Safety and Health Division
201 12th Street South, Suite 401
Arlington, VA 22202-5452
Nelson.April@dol.gov

Melanie Garris
U.S. Department of Labor
Office of Civil Penalty Compliance
Mine Safety and Health Administration
201 12th Street South, Suite 401
Arlington, VA 22202-5452
Garris.Melanie@dol.gov

Chief Administrative Law Judge Glynn F. Voisin
Federal Mine Safety & Health Review Commission
Office of the Chief Administrative Law Judge
1331 Pennsylvania Avenue, NW, Suite 520N
Washington, DC 20004-1710
GVoisin@fmshrc.gov

Administrative Law Judge Michael Young
Federal Mine Safety & Health Review Commission
Office of the Chief Administrative Law Judge
1331 Pennsylvania Avenue, NW, Suite 520N
Washington, DC 20004-1710
myoung@fmshrc.gov