## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Secretary of Labor, Mine Safety and Health Administration,
Petitioner,

*v.*

Knight Hawk Coal, LLC,
and Federal Mine Safety and Health Review Commission,
Respondents.

Secretary of Labor, Mine Safety and Health Administration,
Petitioner,

*v.*

Greenbrier Minerals, LLC,
and Federal Mine Safety and Health Review Commission,
Respondents.

Secretary of Labor, Mine Safety and Health Administration,
Petitioner,

*v.*

Bluestone Oil Corporation
and Federal Mine Safety and Health Review Commission,
Respondents.

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

**Brief of the Secretary of Labor**

LORI CHAVEZ-DEREMER
Secretary of Labor

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

SUSANNAH M. MALTZ
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW, N4420
Washington, DC 20210
maltz.susannah.m@dol.gov
(202) 693-5393

**Certificate as to Parties, Rulings, and Related Cases**

Under D.C. Circuit Rule 28(a)(1)(A), the Secretary of Labor certifies as follows:

**1. Parties and amici**

In *Knight Hawk Coal* (24-1293) the following parties appeared before the Federal Mine Safety and Health Review Commission:

- Secretary of Labor
- Knight Hawk Coal, LLC

In *Greenbrier Minerals* (24-1356) the following parties appeared before the Federal Mine Safety and Health Review Commission:

- Secretary of Labor
- Greenbrier Minerals, LLC

In *Bluestone Oil Corporation* (25-1077) the following parties appeared before the Federal Mine Safety and Health Review Commission:

- Secretary of Labor
- Bluestone Oil Corporation

The following are parties in this Court in these consolidated cases:

- Secretary of Labor
- Knight Hawk Coal, LLC
- Greenbrier Minerals, LLC
- Bluestone Oil Corporation

- Federal Mine Safety and Health Review Commission[1]

There were no intervenors or amici before the Commission, and there are no intervenors or amici before this Court.

## 2. Rulings under review

The rulings at issue in this court are the Federal Mine Safety and Health Review Commission's decisions in *Knight Hawk Coal LLC*, FMSHRC No. LAKE 2021-0160 (FMSHRC Aug. 30, 2024), reported at 46 FMSHRC 563 (2024); *Greenbrier Minerals*, FMSHRC No. WEVA 2022-0403 (FMSHRC Nov. 5, 2024), reported at 46 FMSHRC 933 (2024); and *Bluestone Oil Corporation*, FMSHRC Nos. WEVA 2022-0176 and WEVA 2022-0350 (Jan. 29, 2025), reported at 47 FMSHRC 1 (2025).

## 3. Related cases

A pair of consolidated cases involving substantially the same parties and presenting similar issues are pending in this Court: *Secretary of Labor* v. *Crimson Oak Grove Resources, LLC, et al. and FMSHRC*, No. 24-1294, and *Secretary of Labor* v. *County Line Stone Co. and FMSHRC*, No. 24-1357.

---

[1] The Commission is named because of the requirements of Fed. R. App. P. 15(a)(2)(A). See *Oil, Chem. & Atomic Workers Int'l Union* v. *OSHRC*, 671 F.2d 643, 651 (D.C. Cir. 1982) (Occupational Safety and Health Review Commission has no authority to participate as a party in proceeding to review its decision).

A third case involving an issue identical to those in *Crimson Oak Grove* and *County Line Stone* (and a separate issue) is also pending in this Court: *Secretary of Labor* v. *Genesis Alkali, LLC and FMSHRC*, No. 25-1107. It is in abeyance pending the disposition of *Crimson Oak Grove* and *County Line Stone*.

# Table of Contents

Certificate as to Parties, Rulings, and Related Cases ............................................. iii

Table of Contents ........................................................................................ vi

Table of Authorities ................................................................................... viii

Glossary ................................................................................................. xiv

Jurisdictional Statement .................................................................................. 1

Introduction and Statement of the Issues ............................................................... 2

Statement of the Case .................................................................................... 4

    1.    Statutory Framework .............................................................................. 4

        1.1.    The Commission's and the Secretary's Roles under the Mine Act. .... 4

        1.2.    The Secretary's Authority to Designate Citations as "Significant and Substantial." ........................................................................................ 5

    2.    Factual and Procedural Background ......................................................... 10

        2.1.    The ALJ Proceedings............................................................... 10

        2.2.    The Commission Proceedings ................................................... 14

Summary of Argument .................................................................................. 24

Standing ................................................................................................. 26

Standard of Review ..................................................................................... 27

Argument ................................................................................................ 27

    1.    This Court Has Jurisdiction ................................................................... 27

        1.1.    The Orders at Issue in this Case Are Reviewable Under the Collateral Order Doctrine. .................................................................................... 27

        1.2.    This Case Presents an Article III Case or Controversy. ..................... 34

    2.    The Secretary Has Unreviewable Prosecutorial Discretion to Remove an S&S Designation Because S&S Designations Are Enforcement Decisions, Not Penalties Under Section 110(k). .................................................................... 36

        2.1.    S&S Designations Are Unreviewable Enforcement Decisions........... 36

2.2.    The Mine Act Does Not Supply a Meaningful Standard for the Commission to Apply to Review the Secretary's Decisions to Remove S&S Designations. ............................................................... 47

2.3.    The Mine Act's Split-Enforcement Scheme Likewise Precludes Commission Review of the Secretary's Decisions to Remove S&S Designations. ............................................................... 53

3.    Fairness Considerations Support the Secretary's Unreviewable Discretion to Remove S&S Designations. ........................................................ 55

4.    Remedy ..................................................................................... 57

Conclusion ..................................................................................... 58

Certificate of Compliance with Type-Volume Limit,  Typeface Requirements, and Type-Style Requirements ......................................................... a

Certificate of Service ......................................................................... b

Addendum – Pertinent Statutes and Regulations .................................. c

vii

# Table of Authorities

**Cases**

*Aviation Enters, Inc.* v. *Orr*,
  716 F.2d 1403 (D.C. Cir. 1983) .......................................................... 33

*Brennan* v. *OSHRC*,
  502 F.2d 946 (3d Cir. 1974) ............................................................. 35

*Brennan* v. *OSHRC*,
  505 F.2d 869 (10th Cir. 1974) ........................................................... 35

*British Int'l Ins. Co.* v. *Seguros La Republica*,
  354 F.3d 120 (2d Cir. 2003) ............................................................. 34

*Brock* v. *Cathedral Bluffs Shale Oil Co.*,
  796 F.2d 533 (D.C. Cir. 1986) ....................................................... 8, 52

*Cobell* v. *Salazar*,
  No. 11-5270, 2012 WL 1884702 (D.C. Cir. May 22, 2012) ................................ 34

*Cohen* v. *Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) .................................................................... 32

*Coopers & Lybrand* v. *Livesay*,
  437 U.S. 463 (1978) .................................................................... 34

*Cuyahoga Valley Railway Co.* v. *United Transportation Union*,
  474 U.S. 3 (1985) ...................................................................... 20

*Donovan* v. *Allied Indus. Workers of Am.*,
  760 F.2d 783 (7th Cir. 1985) ........................................................... 32

*Donovan* v. *Int'l Union, Allied Indus. Workers of Am. & its Loc. 370*,
  722 F.2d 1415 (8th Cir. 1983) .......................................................... 32

*Donovan* v. *Loc. 962, Int'l Chem. Workers Union*,
  748 F.2d 1470 (11th Cir. 1984) ......................................................... 33

*Donovan* v. *Oil, Chem., & Atomic Workers Int'l Union & Its Loc. 4-23*,
  718 F.2d 1341 (5th Cir. 1983) .......................................................... 32

*Authorities on which the Secretary principally relies are marked with an asterisk.

*Donovan* v. *OSHRC*,
   713 F.2d 918 (2d Cir. 1983) .............................................. 28, 29, 31, 32

*Donovan* v. *United Steelworkers of Am., AFL-CIO*,
   722 F.2d 1158 (4th Cir. 1983) .................................................... 32

*Drake* v. *FAA*,
   291 F.3d 59 (D.C. Cir. 2002) ...................................................... 48

*Energy West Mining Co.* v. *FMSHRC*,
   40 F.3d 457 (D.C. Cir. 1994) ........................................................ 5

*Excel Mining, LLC* v. *Dept. of Lab.*,
   497 Fed.Appx. 78 (D.C. Cir. 2013) ............................................ 42, 43

*Heckler* v. *Chaney*,
   470 U.S. 821 (1985) ................................. 8, 15, 35, 36, 37, 45, 47, 48, 52

*In re Grand Jury Investigation of Ocean Transp.*,
   604 F.2d 672 (D.C. Cir. 1979) .................................................... 32

*Mach Mining, LLC* v. *Sec'y of Lab.*,
   728 F.3d 643 (7th Cir. 2013) ...................................................... 54

*Marshall* v. *Oil, Chem. & Atomic Workers Int'l Union*,
   647 F.2d 383 (3d Cir. 1981) ................................................ 30, 31, 32

*Marshall* v. *OSHRC*,
   635 F.2d 544 (6th Cir. 1980) .......................................... 28, 29, 30, 33

*Martin* v. *OSHRC*,
   499 U.S. 144 (1991) ................................................................. 4, 5

*Meredith* v. *Federal Mine Safety and Health Review Commission*,
   177 F.3d 1042 (D.C. Cir. 1999) ........................................ 26, 27, 28, 31

*North Carolina* v. *Rice*,
   404 U.S. 244 (1971) ................................................................. 33

*Oil, Chem. & Atomic Workers Int'l Union* v. *OSHRC*,
   671 F.2d 643 (D.C. Cir. 1982) ..................................................... iv

*Paulsen* v. *CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009) ................................................ 36, 52

ix

*Prairie State Generating Co.* v. *Sec'y of Lab.*,
792 F.3d 82 (D.C. Cir. 2015) ........................................ 26, 54

*Public Citizen, Inc.* v. *FERC*,
7 F.4th 1177 (D.C. Cir. 2021) ...................................... 36, 52

*Se. Fed. Power Customers, Inc.* v. *Harvey*,
400 F.3d 1 (D.C. Cir. 2005) .........................................33, 34

*Sec'y of Lab.* v. *FMSHRC & Jim Walter Res.*,
111 F.3d 913 (D.C. Cir. 1997) ........................................ 8

*Sec'y of Lab.* v. *Industrial TurnAround Corp.*,
138 F.4th 1339 (D.C. Cir. 2025) .............................. 30, 31, 33

*Sec'y of Lab. ex rel. Wamsley* v. *Mutual Mining, Inc.*,
80 F.3d 110 (4th Cir. 1996) ........................................... 5

*Sec'y of Lab.* v. *Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006) ..................4, 5, 28, 39, 44, 48, 54, 57

*Sierra Club* v. *Larson*,
882 F.2d 128 (4th Cir. 1989) ....................................... 36

*Sisseton-Wahpeton Oyate of Lake Traverse Rsrv.* v. *United States Corps of Eng'rs*,
888 F.3d 906 (8th Cir. 2018) ...................................... 36, 52

*Speed Mining, Inc.* v. *FMSHRC*,
528 F.3d 310 (4th Cir. 2008) ........................... 5, 48, 52, 54, 55

*Tucson Med. Ctr.* v. *Sullivan*,
947 F.2d 971 (D.C. Cir. 1991)....................................... 33

*Webster* v. *Doe*,
486 U.S. 592 (1988) ................................................ 48

*Will* v. *Hallock*,
546 U.S. 345 (2006) .................................................31

**Statutes**

5 U.S.C. 504 ......................................................... 21

5 U.S.C. 552 ......................................................... 39

29 U.S.C. 655(e) .....................................................17

*30 U.S.C. 814 .................................................. 25, 40, 43, 45, 47, 49, 3

30 U.S.C. 814(a) ........................................................................ 2

*30 U.S.C. 814(d) ........................................ 3, 6, 8, 40, 44, 45

30 U.S.C. 814(d)(1) ............................................................ 3, 8

30 U.S.C. 814(e) .................................................. 9, 40, 43, 44

30 U.S.C. 814(h) ................................................................ 18, 49

30 U.S.C. 815(a) ........................................................................ 3

30 U.S.C. 815(d) ........................................................................ 1

30 U.S.C. 816(a)(1) .............................................................. 28

30 U.S.C. 820 ...................................................................... 26, 40

30 U.S.C. 820(a) ........................................................................ 9

30 U.S.C. 820(b) ........................................................................ 9

30 U.S.C. 820(g) ........................................................................ 9

*30 U.S.C. 820(i) ................................ 3, 9, 18, 40, 47, 48

*30 U.S.C. 820(k) ...................................... 3, 9, 16, 49

30 U.S.C. 823(d) ........................................................................ 1

**Regulations**

29 C.F.R. 2700.76 ...................................................................... 1

29 C.F.R. 2702.7(a) ................................................................ 39

30 C.F.R. 100.3(e) ................................................................ 46

30 C.F.R. 100.6 ........................................................................ 55

**Federal Mine Safety and Health Review Commission Decisions**

*Am. Coal Co.*,
   38 FMSHRC 1972 (Aug. 2016) .......................................... 19, 58

*Am. Coal Co.,*
   40 FMSHRC 983 (Aug. 2018) ............................................ 16, 49

*Am. Aggregates of Mich., Inc.,
   42 FMSHRC 570 (Aug. 2020) .........................................6, 7, 38, 43, 46, 47, 53, 55

Am. Mine Svcs., Inc.,
   15 FMSHRC 1830 (Sept. 1993) ...................................................................... 58

Austin Powder Co.,
   21 FMSHRC 18 (Jan. 1999) ............................................................................ 41

Bellefonte Lime Co.,
   20 FMSHRC 1250 (Nov. 1998)................................................................6, 43, 47

Black Diamond Coal Mining Co,
   7 FMSHRC 1117 (Aug. 1985).......................................................................... 42

Consol. PA. Coal Co.,
   18 FMSHRC 1541 (Sept. 1996) ....................................................................... 46

Consol. PA. Coal Co.,
   No. 2021-0084 (FMSHRC Sept. 19, 2025) ................................................11, 46

Contractors Sand and Gravel, Inc.,
   20 FMSHRC 960 (Sept. 1998)......................................................................... 21

Eastern Associated Coal Corp.,
   13 FMSHRC 902 (June 1991) .......................................................................... 43

Emery Mining Corp.,
   9 FMSHRC 1997 (Dec. 1987) ............................................................................ 8

Hopedale Mining,
   24 FMSHRC 589 (Aug. 2021)........................................................................... 20

Maple Creek Mining, Inc.,
   27 FMSHRC 555 (Aug. 2005)............................................................................. 8

Mathies Coal Co.,
   6 FMSHRC 1 (Jan. 1984) .................................................................................11

*Mechanicsville Concrete,
   18 FMSHRC 877 (June 1996)............................................ 6, 8, 25, 38, 41, 47, 55

Morton Salt, Inc.,
   46 FMSHRC 489 (Aug. 2024)................................................................43, 45, 55

*N. Am. Drillers, LLC*,
   34 FMSHRC 352 (Feb. 2012) ............................................................. 53

*Quinland Coals, Inc.*,
   9 FMSHRC 1614 (Sept. 1987) ........................................................19, 46

**Other Authorities**

Charles H. Koch, Jr. & Richard Murphy, *Admin. Law & Practice* (3d ed.) .............. 4

S. Rep. 95-181 (1977) ...................................................................... 16, 40

## Glossary

| | |
|---|---|
| ALJ | Administrative Law Judge |
| Commission or FMSHRC | Federal Mine Safety and Health Review Commission |
| JA | Citations to the Joint Appendix |
| Mine Act | Federal Mine Safety and Health Act of 1977 |
| MSHA | Mine Safety and Health Administration |
| OSH Act | Occupational Safety and Health Act of 1970 |
| OSHA | Occupational Safety and Health Administration |
| OSHRC | Occupational Safety and Health Review Commission |
| S&S | "Significant and substantial" designation |

## Jurisdictional Statement

The Federal Mine Safety and Health Review Commission ("Commission") had jurisdiction over these cases because the mine operators timely contested the citations they received from the Mine Safety and Health Administration ("MSHA"). 30 U.S.C. 815(d), 823(d). A Commission administrative law judge ("ALJ") denied the Secretary's subsequent motions to settle the proceedings. The Secretary timely petitioned for interlocutory review, which the Commission granted. See 29 C.F.R. 2700.76 (governing interlocutory review at the Commission).

In *Knight Hawk Coal*, the Commission issued its decision affirming the ALJ's denial of settlement approval on August 30, 2024; the Secretary filed a petition for review in this Court on September 10, 2024. In *Greenbrier Minerals*, the Commission issued its decision affirming the ALJ's denial of settlement approval on November 5, 2024; the Secretary filed a petition for review in this Court on November 15, 2024. In *Bluestone Oil Corporation*, the Commission issued its decision affirming the ALJ's denial of settlement approval on January 29, 2025; the Secretary filed a petition for review in this Court on February 27, 2025.

The Secretary recognizes that the Commission's orders remand the cases back to the ALJ for further proceedings, but under the collateral order exception, this Court has jurisdiction to decide this matter. The Court has directed the Secretary

to address whether the orders at issue are immediately reviewable, see Per Curiam Ord., Nos. 24-1293, (Mar. 24, 2025); the Secretary has done so in detail in the Argument section, pp. 27-33, *infra*. In short, they are collateral orders that are immediately reviewable.

The Court has also directed the Secretary to address whether an Article III case or controversy exists. See Per Curiam Ord., Nos. 24-1293 (Mar. 24, 2025). The Secretary has done so in detail in the Argument section, pp. 33-35, *infra*. In short, there is an Article III case or controversy; the parties are adverse, and having reached a tentative settlement subject to Commission approval does not nullify that adversity.

The orders in this case are immediately reviewable and the case presents a justiciable controversy. Thus, the Court has jurisdiction to decide this matter.

### Introduction and Statement of the Issues

The Federal Mine Safety and Health Act of 1977 ("Mine Act") establishes a split-enforcement scheme: the Secretary of Labor has the exclusive authority to enforce the Mine Act, and the Commission adjudicates certain disputes arising under it.

If, during an inspection of a mine, the Secretary determines that a mine operator has violated a mandatory health and safety standard, she issues a citation to the operator. 30 U.S.C. 814(a). If the Secretary determines that the "violation is of such

nature as could "significantly and substantially" contribute to the cause and effect of a coal or other mine safety or health hazard," she issues a citation charging the operator with an "S&S" (significant and substantial) violation. 30 U.S.C. 814(d)(1). The mine operator may contest the citation before the Commission. 30 U.S.C. 815(a).

This case concerns the Secretary's discretion to remove an S&S designation—a prosecutorial charging decision—after an operator has contested a citation with an S&S designation before the Commission. The Commission concluded that the Secretary's initial decision *not* to charge an S&S violation is an exercise of unreviewable enforcement discretion, but once the operator has contested the citation before the Commission, the Commission then has authority to review—and deny—the Secretary's decision to remove an S&S violation. It reasoned that section 110(k) of the Mine Act, 30 U.S.C. 820(k), which concerns settlement of civil penalties, grants the Commission the authority to circumscribe the Secretary's discretion to remove an S&S violation from a contested citation, and that sections 110(i) and 110(k) of the Mine Act, 30 U.S.C. 820(i), (k), provide a meaningful standard to review those decisions.

The three Commission orders at issue are non-final, and the instant case arises from the parties' attempt to settle and resolve the underlying citations. The Court

has therefore ordered the Secretary to address whether the Court has jurisdiction to review the Commission orders.

The issues raised are:

1. Does this Court have jurisdiction to decide this case?

2. Did the Commission err in concluding that once a citation has been contested it has the authority to review the Secretary's discretionary, prosecutorial decision to remove an S&S designation?

## Statement of the Case

## 1. Statutory Framework

### 1.1. The Commission's and the Secretary's Roles under the Mine Act.

The Mine Act establishes a split-enforcement scheme under which the Secretary and the Commission perform distinct roles. The Secretary, acting through MSHA, exercises rulemaking, policymaking, and enforcement powers, while the Commission, an agency independent from the Department of Labor, exercises "nonpolicymaking adjudicatory powers typically exercised by a *court* in the agency-review context." *Sec'y of Lab.* v. *Twentymile Coal Co.*, 456 F.3d 151, 161 (D.C. Cir. 2006) (quoting *Martin* v. *OSHRC*, 499 U.S. 144, 154 (1991)). Under split-enforcement schemes such as the Mine Act, "[t]he adjudicating agency must take care not to arrogate power by attempting to modify the policy developed by the policymaking agency." 2 Charles H. Koch, Jr. & Richard Murphy, *Admin. Law & Practice* § 5:29 (3d ed.). Nearly two decades ago, in *Twentymile Coal,* this Court

reversed a Commission decision that restricted the Secretary's authority to charge a production operator for a violation committed by an independent contractor. 456 F.3d at 154.  In reversing the Commission, this Court concluded that the Secretary's charging decisions are generally unreviewable, and observed that "the Secretary's charging discretion [under the Mine Act] is as uncabined as that of a United States Attorney under the Criminal Code." *Id*. at 157, 161.

The courts of appeals have consistently held that the Commission has no enforcement or policymaking role. *Twentymile*, 456 F.3d at 160-161; *Energy West Mining Co.* v. *FMSHRC,* 40 F.3d 457, 463 (D.C. Cir. 1994); *Speed Mining, Inc.* v. *FMSHRC*, 528 F.3d 310, 319 (4th Cir. 2008); *Sec'y of Lab. ex rel. Wamsley* v. *Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996). The Commission plays an important role adjudicating disputes, but ultimately, "enforcement of the Act is the sole responsibility of the Secretary." *Twentymile*, 456 F.3d at 161 (quoting *Martin*, 499 U.S. at 151-152).

### 1.2. The Secretary's Authority to Designate Citations as "Significant and Substantial."

Section 104 of the Mine Act provides the Secretary with authority to designate certain violations of MSHA's mandatory safety or health standards as S&S if the violation is "of such nature as could have significantly and substantially contributed to the cause and effect of a coal or other mine health or safety hazard. . . ." 30

U.S.C. 814(d). An S&S finding is a "special," "elevated" finding. See, *e.g.*, *Bellefonte Lime Co.*, 20 FMSHRC 1250, 1252 (Nov. 1998) (using the term "special finding"); *Am. Aggregates of Mich.*, *Inc.*, 42 FMSHRC 570, 576 (Aug. 2020) (using the term "elevated finding").

The authority to designate violations as S&S—that is, charge an operator with this elevated level of enforcement—comes only from section 104, which discusses the Secretary's enforcement authority generally, and which permits only the Secretary to designate violations as S&S. So, the decision whether to designate a citation as S&S is an enforcement decision committed to the Secretary's discretion.

The Commission agrees, having previously held that the authority to designate citations as S&S in the first instance is the Secretary's alone. In *Mechanicsville Concrete*, the Commission held that ALJs cannot *sua sponte* designate citations as S&S, because that is "an exercise of enforcement authority reserved for the Secretary" and to do so would "usurp[] the Secretary's role of enforcing the Mine Act." 18 FMSHRC 877, 879-880 (June 1996). The Commission explained that there is "no material difference between the Secretary's discretion on the one hand to vacate a citation . . . and his discretion on the other hand . . . not to designate a citation as S&S." *Id.* at 879.

The Commission has also agreed that an ALJ's decision to deny a settlement motion based on the Secretary having removed an S&S charge from a citation is an abuse of discretion. *Am. Aggregates*, 42 FMSHRC at 576 (Aug. 2020). In *American Aggregates*, the Commission explained that "[w]hether a violation is S&S is a matter in the first instance of prosecutorial discretion. The Mine Act, therefore, recognizes the particular expertise of MSHA in judging whether a violation is S&S." *Ibid.*

The Secretary's discretionary enforcement authority to designate violations as S&S in the first instance necessarily includes the authority not to designate violations as S&S at all, as well as the authority to remove an existing S&S designation. "The Supreme Court has held that an administrative agency has virtually unreviewable discretion in making decisions not to take particular enforcement action relating to its statutory or regulatory authority." *Mechanicsville*, 18 FMSHRC at 879 (citing *Heckler* v. *Chaney*, 470 U.S. 821, 831-832 (1985) and *Brock* v. *Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986)).

The S&S provision is located in section 104 of the Mine Act, along with other enforcement tools belonging to the Secretary: the unwarrantable failure provision and the pattern of violations provision. Like the S&S designation, the unwarrantable failure designation is a "special" finding the Secretary makes when a

violation is "caused by an unwarrantable failure of [an] operator to comply with . . . mandatory health or safety standards." 30 U.S.C. 814(d)(1); *Bellefonte*, 20 FMSHRC at 1252 (referring to S&S and unwarrantable failure designations as "special findings"). An unwarrantable failure finding is appropriate where an operator's conduct "is aggravated . . . constituting more than ordinary negligence," that is "characterized by . . . 'reckless disregard,' 'intentional misconduct,' 'indifference,' or a 'serious lack of reasonable care.'" *Maple Creek Mining, Inc.*, 27 FMSHRC 555, 564 (Aug. 2005) (quoting *Emery Mining Corp.*, 9 FMSHRC 1997, 2003-2004 (Dec. 1987)). This Court has observed that while "the [S&S] clause asks what *effect* the violation will have[,] . . . the unwarrantability clause asks what type of conduct *caused* the violation." *Sec'y of Lab.* v. *FMSHRC & Jim Walter Res.*, 111 F.3d 913, 919 (D.C. Cir. 1997).

The pattern of violations provision is an enforcement mechanism related to the S&S designation. Under section 104(e), the Secretary issues a pattern of violations notice to an operator that has a pattern of S&S violations. 30 U.S.C. 814(e). If an operator is cited for an S&S violation within 90 days of receiving a pattern of violations notice, the Secretary can require the operator to withdraw miners from the area of the mine affected by the S&S violation until the violation is abated. 30 U.S.C. 814(e).

But the settlement and penalty provisions of the Mine Act are not located in section 104; they are located in section 110. Under section 110(k) of the Mine Act, the Commission and its ALJs have the authority to review settlements of *penalties*. 30 U.S.C. 820(k) ("No proposed *penalty* which has been contested. . . shall be compromised, mitigated or settled except with the approval of the Commission.") (emphasis added). Section 110(i) of the Mine Act specifies the factors that the Commission must consider in assessing a penalty: "the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, *the gravity of the violation*, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation. . . ." 30 U.S.C. 820(i) (emphasis added). Under section 110, a penalty is a monetary amount. See 30 U.S.C. 820(a) (referring to the maximum dollar amounts of civil penalties); 30 U.S.C. 820(b) (same); 30 U.S.C. 820(g) (same); 30 U.S.C. 820(i) (referring to the authority to assess "civil monetary penalties").

## 2. Factual and Procedural Background

### 2.1. The ALJ Proceedings

This consolidated case involves three ALJ decisions denying settlement approval where the Secretary removed S&S designations after the operator contested citations.

***Knight Hawk Coal* (FMSHRC No. LAKE 2021-0160).** Knight Hawk Coal operates an underground coal mine in Illinois. During a regularly scheduled inspection, MSHA cited the operator for allegedly failing to maintain equipment in safe condition and failing to comply with the roof control plan in place at the mine.[2] JA 30-32. The case involves three contested citations, all of which were initially designated S&S. JA 30-32. In August 2021, the Secretary filed a motion with the presiding ALJ to approve settlement. JA 36-41. The motion stated that the operator had agreed to accept one citation as written (including the S&S designation), and that the Secretary had removed the S&S designation on the other two citations (and also reduced the "gravity" designations on each of the citations). JA 36-37.

The ALJ requested clarification from the Secretary as to why changes were made to the two citations. JA 44-45. The Secretary amended the settlement motion

---

[2] The Mine Act requires MSHA to inspect underground mines at least four times each year. 30 U.S.C. 813(a).

three times, providing the ALJ with additional facts about the reductions in gravity. JA 46-66. But the Secretary declined to explain the S&S removal; the Secretary cited *American Aggregates* and *Mechanicsville* and explained that she had exercised her prosecutorial discretion to remove the S&S designations. JA 63-64.

The ALJ denied the motion, disagreeing with the Secretary's position that *American Aggregates* and *Mechanicsville* governed because "the cited authority does not confer sole discretion upon the Secretary or limit the evaluation of the Commission." JA 69. The ALJ determined that, having made an S&S designation, the Secretary "cannot rely solely on his discretion but must provide sufficient factual support [to remove the S&S designation]." JA 69.

The ALJ then engaged in a fact-intensive analysis before any trial or evidentiary hearing occurred. The ALJ evaluated whether the facts presented in the four settlement motions supported an S&S removal under the Commission's four-element test in *Mathies Coal Company*, 6 FMSHRC 1 (Jan. 1984), the test to determine whether the Secretary has proven, after an evidentiary hearing, that a violation was S&S. [3] JA 70-72. Ultimately, the ALJ accepted the removal of the

---

[3] The Commission has since apparently abrogated the *Mathies* test. *Consol PA Coal Co.*, No. PENN 2021-0084 at *19-24, 30 (FMSHRC Sept. 19, 2025). What test the Commission applies to determine whether the Secretary has proven a violation was S&S at hearing is not at issue in these cases.

S&S designation on one of the citations, JA 72, but concluded that the Secretary had failed to "provide a sufficient evidentiary basis to support approval of the settlement" on the other citation from which the Secretary removed the S&S designation. JA 90. The ALJ rejected the settlement proposal "because the removal of the S&S designation is inconsistent with, and thus inappropriate to, the facts the Secretary has chosen to provide in this case. . . ." JA 72. He certified the case for interlocutory review. JA 80-93.

*Greenbrier Minerals* **(FMSHRC No. WEVA 2022-0403).** Greenbrier Minerals operates an underground coal mine in West Virginia. During a regularly scheduled inspection, MSHA cited Greenbrier for alleged violations related to the ventilation plan in place at the mine, escapeways, maintenance of equipment, and deenergization of equipment. JA 190-197. The case involves six citations. JA 190-197. In November 2022, the Secretary filed a motion to approve settlement. JA 206-213. The motion stated that the operator had accepted three citations as written, that the Secretary had reduced the negligence designation on two others, and that the Secretary had reduced the gravity on the remaining citation and removed the S&S designation. JA 206-207. The motion provided facts in support of the modifications to the negligence and gravity. JA 208-211. But the Secretary declined

to explain her rationale for removing the S&S charge. JA 209. The motion asserted the Secretary's unreviewable discretion to remove S&S designations. JA 209.

The ALJ emailed the parties and advised that he could not approve the motion because he did not think the facts in the motion supported removing the S&S designation. JA 214. The Secretary filed an amended motion providing additional information concerning the gravity modification but not the S&S removal. JA 215-222. The ALJ did not find the amended motion satisfactory. JA 223-225. The ALJ denied the settlement motion and certified the case for interlocutory review. JA 229, 231. In his denial, the ALJ incorporated the same rationale he employed in his denial in *Knight Hawk*: that neither *Mechanicsville* nor *American Aggregates* recognizes the Secretary's discretion to remove S&S designations post-contest without Commission approval, and that the Secretary must provide relevant facts to support removing an S&S designation. JA 230.

***Bluestone Oil Corporation*** **(FMSHRC Nos. WEVA 2022-0176; 2022-0350).** Bluestone Oil Corporation operates an underground coal mine in West Virginia. During a regularly scheduled inspection, MSHA cited Bluestone for alleged violations related to power cables and deenergization of equipment, among other things. JA 323-359. The case involves 24 citations. JA 323-359. In October 2022, the Secretary filed a motion to approve settlement. JA 360-369. The motion stated

that the operator had accepted seventeen citations as written, the Secretary

modified the gravity on two citations and the negligence on one citation, reduced

the penalty on two citations, and removed the S&S designations and reduced the

penalty on two citations. JA 361-364.

The motion to approve settlement explained the penalty reductions and the

modifications to the gravity and negligence. JA 364-368. The motion also asserted

the Secretary's unreviewable discretion to remove S&S designations. JA 364-368. A

few days later, the ALJ's staff emailed the parties and explained that the ALJ would

not approve the settlements without more facts that justified removing the S&S

designations (the ALJ's only basis for denying the settlement). JA 370-371.

The ALJ denied the settlement and certified the case for interlocutory review,

JA 372-375, incorporating the same rationale from the *Knight Hawk* and *Greenbrier*

settlement denials. JA 374.

### 2.2. The Commission Proceedings

In each case, the Secretary sought interlocutory review on the question of

"[w]hether the Secretary has unreviewable discretion to remove an S&S

designation from a contested citation without the Commission's approval." JA 75

(in *Knight Hawk*, the Secretary's motion for interlocutory review) JA 231 (in

*Greenbrier*, the ALJ's order certifying the case for interlocutory review, framing the

question as the Secretary did and citing the *Knight Hawk* order), JA 374 (in *Bluestone*, the same). The Commission, however, directed for interlocutory review the slightly different question of "whether the Secretary has unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Mine Act. . . ." JA 94-95, 250, 390.

*Knight Hawk Coal* **(FMSHRC No. LAKE 2021-0160).** On August 30, 2024, the Commission issued a decision in *Knight Hawk* concluding that, in a post-contest case—that is, after an operator has contested MSHA's citation to the Commission—the Secretary does not have unreviewable discretion to remove an S&S designation without the Commission's approval and that parties to a proposed settlement must "provide sufficient reasoning and justification to support the removal of an S&S designation in a settlement motion." JA 153.

The Commission acknowledged that agency decisions not to enforce are generally committed to the agency's discretion and therefore presumed to be unreviewable. JA 153. But, under *Heckler* v. *Chaney*, that presumption can be overcome where the statute indicates "an intent to circumscribe agency enforcement discretion" and provides "meaningful standards for defining the limits

of that discretion." JA 153 (citing 470 U.S. 821, 834 (1985) (added emphasis omitted)).

Addressing the first prong of *Chaney*, the Commission determined that section 110(k) of the Mine Act, Commission precedent, the Mine Act's legislative history, analogous health and safety statutes, and practical considerations all express an intent to circumscribe the Secretary's enforcement discretion after a contest and "signal an expansive role for the Commission." JA 154.

Section 110(k) of the Mine Act provides that "[n]o proposed *penalty* which has been contested before the Commission . . . shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. 820(k) (emphasis added). The Commission determined that the "compromise[]," "mitigate[]" and "settle[]" language was "broad" and indicated an intent for Commission ALJs to take a "holistic approach" to reviewing settlements, rather than narrow language limited to "specifying that a penalty amount may not be lowered without Commission approval." JA 154. The Commission also relied on its previous decision in *The American Coal Company* to determine that its review of settlement proposals must be holistic and encompass both "monetary and nonmonetary aspects." JA 155. (citing *Am. Coal Co.,* 40 FMSHRC 983, 989 (Aug. 2018) ("*AmCoal II*").

Additionally, the Commission relied on the legislative history of the Mine Act, explaining that Congress enacted section 110(k) to rectify the shortcomings of the prior regulatory regime, introduce more scrutiny of lowering of penalties, and discouraging off-the-record settlement efforts. JA 155 (citing S. Rep. 95-181, at 44 (1977)).

The Commission compared section 110(k) to the requirements of the Occupational Safety and Health Act ("OSH Act"). JA 155-156. The OSH Act, the Commission observed, does not have a provision like Mine Act section 110(k) that authorizes the analogous Occupational Safety and Health Review Commission ("OSHRC") to review proposed penalties (the Commission also noted that the OSH Act requires settlements be published in the Federal Register, 29 U.S.C. 655(e)). JA 155-156. The Commission reasoned that the penalty-review provision of the Mine Act demonstrates congressional intent to "avoid the abuses arising from off-the-record negotiations by the Secretary by envisioning a greater role for the Commission under the Act." JA 156.

In her brief before the Commission, the Secretary argued that 110(k) applies only to penalties, and that the decision not to charge an S&S violation is not a penalty. JA 110. The Commission rejected this argument, explaining that a removal of an S&S designation *could* result in a lower penalty amount. JA 156. The

Commission also suggested that because S&S designations impact whether an operator might receive a "pattern of violations" notice in the future, removing the S&S designation might change a *future* penalty. JA 156.

The Secretary also argued that section 104(h) also confers authority to the Secretary to modify citations and orders, and that removing an S&S designation is a modification of the citation. JA 117. Under section 104(h), "[a]ny citation or order issued under this section shall remain in effect until modified, terminated or vacated by the Secretary," the Commission, or the courts. 30 U.S.C. 814(h). The Commission rejected this argument, reasoning that section 104(h) is "relevant for other purposes [and] does not negate th[e] clear Congressional intent" of section 110(k). JA 156. The Commission further suggested that this interpretation would allow the Secretary to modify any citation, as long as the penalty remained the same, which would be an "end run around Commission review of settlements, rendering such review a nullity." JA 156.

The Commission then turned to the second prong of the *Chaney* analysis ("meaningful standards for defining the limits of that discretion"). The Commission determined that section 110(i) provides a judicially manageable standard that "allows Commission [ALJ]s to evaluate how and when the Secretary should exercise her decision-making when removing S&S designations in

settlement proceedings." JA 157. Section 110(i) sets out six factors for ALJs to consider in assessing penalties. 30 U.S.C. 820(i). The Commission conceded that section 110(i) does not direct an ALJ to consider an S&S designation, or mention S&S designations at all. JA 157. But, the Commission reasoned, it does direct ALJs to consider the gravity of a violation, and "gravity and S&S, although not identical, are 'based frequently upon the same or similar factual circumstances.'" JA 157. (citing *Quinland Coals, Inc.*, 9 FMSHRC 1614, 1622 n. 11 (Sept. 1987)). The Commission concluded that its review of S&S removal is authorized by the gravity factor in section 110(i). JA 157.

The Commission also determined that section 110(k) provides a meaningful standard, because, in its precedent, the Commission has interpreted it to require penalty settlements to be "fair, reasonable, appropriate under the facts, and protect[ive of] the public interest." JA 158. (citing *Am. Coal Co.*, 38 FMSHRC 1972, 1976 (Aug. 2016) ("*AmCoal I*"). The Commission determined that the same standard applies to the Secretary's decision to remove an S&S designation. JA 158.

Before the Commission, the Secretary relied on *Mechanicsville* and *American Aggregates* to argue that her decision to remove S&S designations is unreviewable. JA 111-112. The Commission disagreed that those cases are controlling. JA 158-160. It suggested that *Mechanicsville* was distinguishable because it concerned an ALJ's

attempt to add an S&S designation to a citation that the Secretary had not initially designated S&S (rather than the Secretary removing an S&S designation). JA 158. And, the Commission suggested, the case was also distinguishable because it is based on a line of precedent stemming from a case brought under the OSH Act: *Cuyahoga Valley Railway Company* v. *United Transportation Union*, 474 U.S. 3 (1985) (the Secretary's authority to vacate a citation issued under the OSH Act is unreviewable). JA 158. The Commission concluded that precedent developed under the OSH Act does not apply in the Mine Act settlement context, because the OSH Act does not have a provision comparable to Mine Act section 110(k). JA 158.

The Commission also disagreed that *American Aggregates* supports the Secretary's position; the Commission explained that in that case, it vacated an ALJ's decision denying a settlement motion because the ALJ ignored facts that plausibly supported modifications to citations, including a removal of the S&S designation. JA 158. The Commission concluded that "[n]othing in that case supports the parties' broad, sweeping position that the Secretary's decision to remove an S&S designation in a settlement constitutes unreviewable prosecutorial discretion." JA 158-159.

The Commission maintained that while ALJs "need not engage in fact-finding, weighing conflicting evidence, or making credibility determinations" at the

settlement-approval stage, they must "probe gaps or inconsistencies in the explanation offered in support of a settlement motion." JA 159. (citing *Hopedale Mining*, 24 FMSHRC 589, 595 (Aug. 2021)).

The Secretary argued that Commission review of post-contest S&S removals would, in effect, invite the Commission to intrude on the Secretary's prosecutorial and discretionary enforcement authority; if the Commission denied proposed S&S removals, that would force the Secretary to take a position she might believe is unwarranted. JA 118-119. The Commission rejected this argument, concluding that if the Secretary does not wish to pursue an S&S charge, "all the Secretary needs to do is provide justification for removing the S&S designation to the [ALJ] in her settlement motion—and her motion must be granted." JA 160.

Similarly, the Secretary argued that the Commission's rejection of an S&S removal might subject her to Equal Access to Justice Act (EAJA) liability. 5 U.S.C. 504; JA 125-126. Under EAJA, "a prevailing party may be awarded attorney's fees unless the position of the United States is substantially justified." *Contractors Sand and Gravel, Inc.*, 20 FMSHRC 960, 967 (Sept. 1998). The Commission rejected this argument, explaining that all the Secretary need do if an S&S charge is not supportable is provide justifying facts to an ALJ. JA 161-162. And, the Commission

reasoned, settlement positions cannot be used against a party in litigation to show inconsistency. JA 162.

The Secretary also argued that it simply does not make sense that S&S removal would not be subject to Commission review *before* a contest was filed, but would be subject to such review *after* a contest is filed. JA 122-123. The Secretary explained that the timing of the Secretary's decision to remove a charge of S&S should not impact the Secretary's inherent authority to do so. JA 122-123. The Commission acknowledged that this presented a fairness concern but concluded that these "procedural fairness concerns are outweighed by the safety policies of the Act," and that sections 110(k) (Commission review of penalty settlements) and section 110(i) (factors for ALJs to consider in assessing penalties) create transparency in settlement and a deterrent to potential abuses of authority. JA 161.

*Greenbrier Minerals* **(FMSHRC No. WEVA 2022-0403).** On November 5, 2024, the Commission issued a decision in *Greenbrier*.[4] JA 288-297. The Commission again concluded that post-contest the Secretary does not have

---

[4] The Secretary petitioned this Court for review of the *Knight Hawk* decision on September 10, 2024. On October 22, 2024, the Secretary filed a motion with the Commission seeking to hold *Greenbrier* in abeyance pending the disposition of *Knight Hawk*. JA 280-287. In a footnote in the November 5, 2024 *Greenbrier* decision, the Commission denied that motion. JA 288, n.3.

unreviewable discretion to remove an S&S designation without the Commission's approval and that parties to a proposed settlement must provide sufficient justification to support an S&S removal. JA 291.

The Commission relied on the same reasoning it employed in *Knight Hawk*, concluding that:

- Sections 110(k) and 110(i) demonstrate Congress's intent to circumscribe the Secretary's enforcement discretion, and provide a meaningful standard to define the limits of that discretion, based on the broad language of section 110(k), the gravity factor in section 110(i), and the legislative history. JA 291-293.

- *Mechanicsville* and *American Aggregates* do not support the Secretary's position; *Mechanicsville* involved an ALJ adding (not removing) an S&S designation and based its reason on an OSH Act case and *American Aggregates* reversed an ALJ who failed to consider relevant factual support. JA 293.

***Bluestone Oil Corporation* (FMSHRC Nos. WEVA 2022-0176; 2022-0350).**

On January 29, 2025, the Commission issued a decision in *Bluestone Oil*.[5] JA 426-433. The Commission reached the same conclusion in *Bluestone Oil* that it did in *Knight Hawk* and *Greenbrier*, and relied on the same reasoning. JA 428-432.

---

[5] On October 22, 2024, the Secretary filed a motion with the Commission seeking to hold *Bluestone Oil* in abeyance pending the disposition of *Knight Hawk*. JA 418-425. In a footnote in the January 29, 2025 *Bluestone Oil* decision, the Commission denied that motion. JA 426, n.3.

In all three cases, the Commission affirmed the ALJ's denial of the settlement and remanded each case. JA 163, 295, 433.

## Summary of Argument

The Secretary's decision to remove an S&S designation from a contested citation is a discretionary, prosecutorial enforcement decision, just like the Secretary's discretionary enforcement decision to designate a citation as S&S in the first instance. Both are charging decisions solely within the Secretary's province under the split-enforcement scheme of the Mine Act, and are unreviewable. This Court should therefore vacate the Commission's orders.

As a threshold matter, this Court has jurisdiction to decide this case. The Commission orders affirming the ALJs' denial of motions to approve settlement, while not final orders, are reviewable under the collateral order doctrine. They conclusively determine the sole question in dispute before this Court: whether the Secretary has unreviewable discretion to remove an S&S designation from a contested citation. This question is separate from the merits of the proposed settlement of the citations, as well as the merits of the validity of the citations, and is vitally important, as it concerns the Secretary's prosecutorial authority to enforce the Mine Act. Additionally, the orders are otherwise effectively unreviewable on appeal, because the parties cannot get review of the Commission orders determining that the Secretary does not have unreviewable authority to remove

S&S designations at any later point in the litigation (regardless of the outcome of the settlement motions on remand).

This case also presents an Article III case or controversy. The parties and their legal interests are adverse. The Secretary has issued citations to the mine operators and proposed penalties for alleged violations, and the operators have contested these. Neither an unapproved settlement agreement nor an operator's nonparticipation in a case dissolves the controversy.

On the merits, the language and structure of the Mine Act, applicable federal case law, and Commission precedent establish that the Secretary has unreviewable prosecutorial discretion to remove S&S designations from contested citations. The Commission itself recognized this principle in *Mechanicsville Concrete*, 18 FMSHRC 877 ( June 1996), finding that designating a citation as S&S in the first instance is an enforcement decision left entirely to the Secretary. It necessarily follows that the decision to remove that designation is also within the Secretary's sole prosecutorial purview.

While the Act's split enforcement scheme grants the Commission the authority to assess civil penalties after an evidentiary hearing, and limited authority to review penalty settlements before an evidentiary hearing, the Act also makes clear that an S&S designation is not a penalty, nor a statutory penalty factor the Commission

may consider in assessing a penalty. An S&S designation is instead an elevated enforcement action the Secretary must initiate for violations that could "significantly and substantially" contribute to a hazard. The authority to designate a citation as S&S is located in section 104 of the Mine Act, the section governing the Secretary's enforcement powers and issuance of citations. 30 U.S.C. 814. The provisions related to civil penalties are located elsewhere, in section 110. 30 U.S.C. 820. Indeed, the Commission itself treats S&S designations and penalty amounts as distinct issues, including in *Mechanicsville*, where removing the S&S designation did not impact the penalty. The Court should therefore reject the Commission's orders now suggesting that its penalty-settlement review authority also grants it the power to review the Secretary's removal of an S&S designation.

## Standing

An Article III case or controversy exists involving the contested citations, and the Secretary has standing to seek review under the collateral order doctrine. See *Meredith* v. *Federal Mine Safety and Health Review Commission*, 177 F.3d 1042 (D.C. Cir. 1999) (reviewing a non-final Commission order that remanded the matter to an

ALJ, because "under the collateral order doctrine, the petition for review [was] properly before [the Court]."). [6]

## Standard of Review

This Court reviews questions of law and the legal determinations of the Commission de novo. *Prairie State Generating Co.* v. *Sec'y of Lab.*, 792 F.3d 82, 89 (D.C. Cir. 2015). The questions at issue here—whether the Court has jurisdiction to review this case, and whether the Secretary has the discretionary authority to remove an S&S charge from a contested citation—are questions of law.

## Argument

### 1. This Court Has Jurisdiction

#### 1.1. The Orders at Issue in this Case Are Reviewable Under the Collateral Order Doctrine.

This Court has jurisdiction to review Commission orders that fall within the collateral order exception to the general rule requiring finality. *Meredith*, 177 F.3d at 1048, 1050 (D.C. Cir. 1999). A non-final agency order is reviewable as a collateral order if it "(i) conclusively determines a disputed question; (ii) resolves an important issue completely separate from the merits of the action; and (iii) is

---

[6] The Mine Act also authorizes the Secretary to obtain this Court's review "of any final order of the Commission[.]" 30 U.S.C. 816(b). The Commission orders before the Court are not final orders.

effectively unreviewable on appeal from a final judgment." *Id.* at 1048. The Commission orders before the Court satisfy that three-part test.

First, these Commission orders conclusively determine the disputed question of whether the Secretary has unreviewable discretion to remove an S&S designation after the underlying citation has been contested before the Commission. The orders are the Commission's final disposition of that issue and may not be revised: the administrative records have been filed in this Court, which gives this Court "exclusive jurisdiction of the proceeding and of the questions determined therein[.]" 30 U.S.C. 816(a)(1). The Commission has also issued remand orders, indicating that its own review of the issue is concluded.

The Sixth Circuit has held, in the analogous context of the OSH Act,[7] that an order of the Occupational Safety and Health Review Commission ("OSHRC"), remanding a matter to an OSHRC ALJ to allow employees to prosecute a citation that the Secretary had vacated was a collateral order and thus immediately reviewable "with respect to the rights of the Secretary as prosecutor[.]" *Marshall* v. *OSHRC*, 635 F.2d 544, 549 (6th Cir. 1980). The Second Circuit, too, has held

---

[7] The OSH Act comparison is significant because the Mine Act "[r]eplicat[es] the division of responsibilities between the Secretary of Labor and the Occupational Safety and Health Review Commission[.]" *Meredith*, 177 F.3d at 1054; see also *Twentymile Coal.*, 456 F.3d at 160-161 (D.C. Cir. 2006) (discussing these analogous "split enforcement" schemes).

that an OSHRC order remanding to an OSHRC ALJ to determine whether to approve a settlement "conclusively determine[d] that the Secretary does not have the unfettered right to reach a settlement without Commission approval or employee involvement[.]" *Donovan* v. *OSHRC*, 713 F.2d 918, 924 (2d Cir. 1983).

Second, the Commission orders resolve an important issue separate from the merits. They are separate from the merits because the question of whether the Commission has authority to review the Secretary's S&S charging decision is distinct from whether the Secretary has satisfied the Commission's standard for approving a compromise of civil penalties in a particular case. See *Donovan* v. *OSHRC*, 713 F.2d at 924 ("the issue of the Secretary's right to settle the case will not merge in a final judgment on the merits of the citation").

The issue is also important because the orders here concern the scope of the Secretary's prosecutorial authority under the Mine Act. Courts of appeals have recognized the importance of this issue (and the applicability of the collateral order exception) in the analogous OSHRC context. As the Sixth Circuit explained, an OSHRC order permitting a union to prosecute an OSHA citation issued, but subsequently vacated, by the Secretary "raises broader issues as to the statutory authority of the Secretary as prosecutor of OSHA citations and as to whether the Secretary may exercise prosecutorial powers over the litigation and settlement of

OSHA citations without Commission oversight and intervention." *Marshall* v.

*OSHRC*, 635 F.2d at 549. The Sixth Circuit also noted that "the Secretary and the

Commission are at a deadlock in their disagreement on the scope and extent of their

respective responsibilities in the administration of OSHA—a deadlock which can

hamper the effective administration of the Act and should be resolved by this court

in the public interest." *Ibid.*; see also *Donovan* v. *OSHRC*, 713 F.2d at 924 (noting

that issues about settlements under the OSH Act present "an important issue of

statutory construction, viz, the respective roles of the Commission, the Secretary,

and employees in the administration of the Act").

Similarly, in a case concerning a union's objections to aspects of a settlement

approved by an OSHRC ALJ, the Third Circuit explained that the Secretary's

prosecutorial authority satisfies the "importance" prong:

> The Secretary's power to enter into a settlement agreement is critical
> to the enforcement scheme of the Act. Without this power the
> settlement agreements that the Secretary enters into can have no sense
> of finality and employers, rather than being encouraged, will be
> discouraged from settling these cases. Thus we are presented with a
> serious and unsettled question which is too important to be denied
> review: the power of the Secretary to settle a case as the exclusive
> prosecutor of the Act.

*Marshall* v. *Oil, Chem. & Atomic Workers Int'l Union*, 647 F.2d 383, 387 (3d Cir.

1981).

This Court recently reaffirmed the importance of prosecutorial-discretion questions like the one at issue here. In *Secretary of Labor* v. *Industrial TurnAround Corporation*, this Court determined that Commission orders reopening final orders did not warrant collateral review because the issue to be resolved was not sufficiently important. *Sec'y of Lab.* v. *Industrial TurnAround Corp.*, 138 F.4th 1339, 1343 (D.C. Cir. 2025) ("*ITAC*"). In explaining the "relative unimportance" of the issue raised by the reopen orders, the Court contrasted that issue with the prosecutorial-discretion issues implicated in *Marshall* v. *OSHRC*, *Marshall* v. *Oil, Chemical & Atomic Workers International Union*, and *Donovan* v. *OSHRC*, noting that the Supreme Court had determined that type of issue was sufficiently important to warrant collateral review. *ITAC*, 138 F.4th 1342 (citing *Will* v. *Hallock*, 546 U.S. 345, 352 (2006)).

Third, the Commission orders are effectively unreviewable on appeal. If a Commission ALJ, on remand, disapproves the settlement and requires the parties to proceed to an evidentiary hearing, no meaningful review of the Commission's order will be available. "Once administrative proceedings have run their course, the interest in avoiding them has been vitiated and cannot be vindicated." *Meredith*, 177 F.3d at 1052. Likewise, if a Commission ALJ approves the settlement on remand, the order is still effectively unreviewable. For example, in *Donovan*, the Second

Circuit held that the Secretary's petition for review of an OSHRC order remanding a settlement approval to an ALJ was reviewable as a collateral order, reasoning that the order was effectively unreviewable partly because "[i]f the settlement were approved on remand, the Secretary would have no ground to petition for review." 713 F.2d at 924 n.10.

Critically, "the mere possibility that the Secretary could obtain appellate review of a Commission order ... does not mean that [the] order is effectively reviewable within the meaning of" the collateral order doctrine. *Donovan*. 713 F.2d at 924 n.10. That is because whether an issue is effectively unreviewable is given a "practical rather than a technical construction." *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (citations omitted); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 674 (D.C. Cir. 1979) ("Practical rather than technical considerations must control in this area."). The practical considerations discussed above demonstrate that the Commission orders are effectively unreviewable on appeal.

For these reasons, courts of appeals have uniformly held that they have collateral order jurisdiction in similar cases involving issues of prosecutorial discretion in the OSHRC context. *Donovan* v. *Oil, Chem., & Atomic Workers Int'l Union & its Loc. 4-23*, 718 F.2d 1341, 1344-1346 (5th Cir. 1983) (an OSHRC order denying the Secretary's motion to vacate its order directing review of an OSHRC

ALJ order approving settlement was a reviewable collateral order); *Donovan v. Allied Indus. Workers of Am.*, 760 F.2d 783, 785 (7th Cir. 1985) (an OSHRC order allowing a union to object to a settlement reached by the Secretary and an employer on a ground other than the reasonableness of the abatement period was a reviewable collateral order); *Donovan* v. *Int'l Union, Allied Indus. Workers of Am. & its Loc. 370*, 722 F.2d 1415, 1417-1418 (8th Cir. 1983) (same); *Donovan* v. *United Steelworkers of Am., AFL-CIO*, 722 F.2d 1158, 1160 (4th Cir. 1983) (same); *Donovan* v. *OSHRC*, 713 F.2d at 923-925 (same); *Marshall* v. *OCAW*, 647 F.2d at 387 (same); *Marshall* v. *OSHRC*, 635 F.2d at 548-549 (an OSHRC order allowing a union to prosecute an OSHA citation issued, but subsequently vacated, by the Secretary was a reviewable collateral order); see also *Donovan* v. *Loc. 962, Int'l Chem. Workers Union*, 748 F.2d 1470, 1473 (11th Cir. 1984) (adjudicating a petition for review of an OSHRC "interlocutory decision" holding that employees could object to the Secretary's settlement).

This case presents the very type of issue identified by this Court in *ITAC*, as well as by other circuits, that merits review under the collateral order doctrine. See *ITAC*, 138 F.4th at 1342. This Court, therefore, should reach the same result and exercise collateral jurisdiction over the Commission orders at issue in this case.

### 1.2. This Case Presents an Article III Case or Controversy.

Article III extends the jurisdiction of the federal courts "only to cases or controversies." *Se. Fed. Power Customers, Inc.* v. *Harvey*, 400 F.3d 1, 4 (D.C. Cir. 2005) (quoting *Tucson Med. Ctr.* v. *Sullivan,* 947 F.2d 971, 977 (D.C. Cir. 1991)). To present a case or controversy, an issue must be "live," *ibid.*, and "the matter at hand [must] 'be definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Aviation Enters, Inc.* v. *Orr*, 716 F.2d 1403, 1407 (D.C. Cir. 1983) (quoting *North Carolina* v. *Rice,* 404 U.S. 244, 246 (1971)). These cases satisfy both requirements.

First, the issues are live. Although the Secretary and the respondent mine operators have reached proposed settlement agreements, those settlements are not yet final because the Commission has declined to approve them. A conditional or tentative settlement does not moot a case. *Se. Fed. Power Customers*, 400 F.3d at 4 (D.C. Cir. 2005) (citing *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 465 n.3 (1978) and *British Int'l Ins. Co.* v. *Seguros La Republica,* 354 F.3d 120, 123 (2d Cir. 2003)).

Second, there is sufficient adversity between the Secretary and the respondent mine operators to create a case or controversy. Although the Secretary and the operators reached potential settlement agreements, this Court has rejected the "claim that the adverseness required for an Article III case or controversy ends

when the parties to a dispute reach a settlement subject to court approval" as "contrary to all precedent and to common sense." *Cobell* v. *Salazar*, No. 11-5270, 2012 WL 1884702, at *1 (D.C. Cir. May 22, 2012).

And the Secretary's and the operators' legal interests in any event remain adverse: the Secretary has issued citations and proposed penalties; the operators have contested them and have not withdrawn their contests. That is sufficient to create Article III adversity. For example, the Tenth Circuit held that a case presented an Article III "case or controversy" when the Secretary sought review of an OSHRC decision invalidating a regulation, even though the employer that had been cited did not participate in the case. *Brennan* v. *OSHRC*, 505 F.2d 869, 871 (10th Cir. 1974). The court reasoned that the "[e]mployer has an interest in the controversy even though it is unwilling to do anything to protect that interest. We have a case or controversy within the purview of the Constitution." *Ibid.* The Third Circuit has reached the same conclusion. *Brennan* v. *OSHRC*, 502 F.2d 946, 948 (3d Cir. 1974) (holding that "there is a continuing case or controversy warranting judicial review even though [the employer] has not responded to the petition for review" because "the employer here has not withdrawn its contest of the Secretary's citation").

This case presents a justiciable Article III case or controversy because the issues are live and because the interests of the Secretary and the operators remain adverse.

**2. The Secretary Has Unreviewable Prosecutorial Discretion to Remove an S&S Designation Because S&S Designations Are Enforcement Decisions, Not Penalties Under Section 110(k).**

### 2.1.S&S Designations Are Unreviewable Enforcement Decisions.

Federal case law involving agency enforcement action, Commission precedent, and the structure of the Mine Act confirm that the Secretary's S&S designations are unreviewable enforcement decisions.

Federal courts have consistently held that an agency's decision not to pursue enforcement action is unreviewable. *Chaney*, 470 U.S. at 837-838 (discussing the presumption of unreviewability of agency's prosecutorial discretion); *Public Citizen, Inc.* v. *FERC*, 7 F.4th 1177, 1195 (D.C. Cir. 2021) (finding agency decision not to pursue an enforcement action after an investigation to be unreviewable); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv.* v. *United States Corps of Eng'rs*, 888 F.3d 906, 916-917 (8th Cir. 2018) (unreviewable agency decision not to enforce the recapture provision of the Clean Water Act); *Paulsen* v. *CNF Inc.*, 559 F.3d 1061, 1085 (9th Cir. 2009) (unrevieweable agency decision not to pursue enforcement action related to a pension plan terminated in connection with a bankruptcy);

*Sierra Club* v. *Larson*, 882 F.2d 128, 132 (4th Cir. 1989) (unreviewable agency decision not to take enforcement action under the Highway Beautification Act).

The Supreme Court has recognized that the decision not to take enforcement action is generally committed to an agency's discretion for a variety of reasons, including that such a decision "often involves a complicated balancing of a number of factors which are peculiarly within its expertise" and that in *not* taking enforcement action an agency "generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Chaney*, 470 U.S. at 831-832.

The Secretary's decision not to designate a violation S&S—or to remove an S&S designation after contest—requires consideration of factors particularly within her expertise as the prosecutor of Mine Act citations. Not all MSHA citations are cited with the elevated S&S charge, yet the Secretary is not required to justify her reasons for not doing so. When an S&S citation is pending before the Commission, there are times when an elevated S&S charge is no longer warranted, and it is the Secretary who makes this determination. There are any number of reasons why a prosecutor reduces a charge. New evidence emerges. Witnesses are no longer available. Enforcement priorities shift. So, too, are these (and other) factors relevant in the Mine Act settlement context, including the Secretary's decision-

making process about whether to remove S&S designations. The Commission

ignores the Secretary's prerogative to engage in this "complicated balancing of a

number of factors which are peculiarly within [her] expertise," cf. *Chaney*, 470

U.S. at 831-832, running afoul of *Chaney* and, indeed, the Commission's own

precedent.

In fact, since 1996, the Commission has considered the decision to designate a

violation as S&S an enforcement decision left entirely to the Secretary's discretion.

*Mechanicsvillle*, 18 FMSHRC at 879-880 (an ALJ could not *sua sponte* add an S&S

designation to a violation); *Am. Aggregates*, 42 FMSHRC at 576 (an ALJ's denial of

a settlement motion based on the Secretary having removed an S&S designation

was an abuse of discretion). So too must be the decision to remove an S&S

designation after it was initially charged. See *Cuyahoga Valley*, 474 U.S. at 5

(rejecting the Sixth Circuit's reasoning that the OSHRC could deny the Secretary's

authority to vacate an OSHA citation just because the OSHRC "had control of the

case.")

The Commission now suggests that because *Mechanicsville* and *American

Aggregates* do not expressly hold that the Secretary's decision to remove an S&S

designation post-contest is unreviewable, they are therefore distinguishable from

the present case. JA 158-160, 293, 430-431. But that proposition is contrary to what

those decisions clearly *mean*: *Mechanicsville* holds that the decision not to designate a citation as S&S is the Secretary's discretionary decision to make, and an ALJ who purports to designate a citation S&S is "usurp[ing] the Secretary's role. . ." and improperly appropriating "an exercise of enforcement authority reserved for the Secretary." 18 FMSHRC at 880. And *American Aggregates* reversed an ALJ who abused his discretion by denying a settlement in which the Secretary decided to remove an S&S designation on a citation (and offered no explanation for the removal), because "[w]hether a violation is S&S is a matter in the first instance of prosecutorial discretion. . . . " 42 FMSHRC at 579. The logical conclusion of these cases is that the Secretary alone has the authority to remove S&S designations, even after a contest is filed. An enforcement power that is "reserved for the Secretary" is not the Commission's to review.

The Commission also suggests that *Mechanicsville* is distinguishable because its reasoning is based on an OSH Act case (*Cuyahoga*). JA 158, 293, 431. The Commission, however, failed to heed this Court's treatment of the OSH Act and the Mine Act as "fundamentally similar enforcement schemes." See, *e.g.*, *Twentymile*, 456 F.3d at 160-161 ("we have previously, and repeatedly, applied *Martin's* analysis [under the OSH Act] to the Mine Act."). In any event, the only specific feature that the Commission cites to distinguish the Mine Act from the

OSH Act is the fact that OSH Act settlements are published in the Federal Register. JA 155, 292, 430. This is not a meaningful distinction. All Mine Act settlements are a matter of public record and are subject to release under the Freedom of Information Act. See 5 U.S.C. 552; 29 C.F.R. 2702.7(a) (Commission procedural rule) ("Except for [exempted] records. . . all records of the Commission or in its custody are available to any person who requests them. . . .") This imbues the settlement process with the transparency that Congress intended. S. Rep. 95-181, at 44 (1977) (reflecting concerns that settlements under the prior statutory and regulatory regime were "not on the record.")

The Mine Act's language and structure likewise confirm that the decision to designate (or not to designate) a violation as S&S is an enforcement decision solely within the Secretary's discretionary, prosecutorial purview, and not a penalty proposal subject to Commission approval. The designation of a citation as S&S is discussed exclusively in section 104 of the Mine Act. 30 U.S.C. 814(d)-(e). Section 104 addresses the Secretary's enforcement authority. It makes no reference to the Commission. Instead, it is the Secretary who determines, under sections 104(d) and (e), whether a violation is of "such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard." *Id.* In contrast, section 110 deals exclusively with penalties and

expressly identifies the Commission's role. 30 U.S.C. 820. It grants the Commission certain specific, limited authority, including the authority to assess civil penalties after an evidentiary hearing. Section 110(i) provides a list of factors that are considered in assessing a penalty. 30 U.S.C. 820(i) (including the "gravity of the violation"). The Secretary's "significant and substantial" designation pursuant to section 104 is nowhere mentioned in section 110. The Mine Act deals with S&S designations and penalties separately, in different sections, because they are different things.

Consistent with the Mine Act's structural division of S&S enforcement designations and penalty assessments, the Commission has described and treated the two as distinct. The Commission has explained that an S&S designation constitutes a "special finding" that is included in a citation. *Bellefonte*, 20 FMSHRC at 1252. It is not itself a penalty; indeed, the Commission has held that an S&S designation can be vacated without impact on the assessed penalty. For example, in *Mechanicsville*, the Commission removed the S&S designation that the ALJ had improperly added, but affirmed the penalty as assessed by the ALJ, because removal of an S&S designation is a different legal question than the imposition of a penalty. 18 FMSHRC at 881; cf. *Austin Powder Co.*, 21 FMSHRC 18, 28 (Jan. 1999) (concluding that the Commission's vacatur of an unwarrantable

failure designation (another special finding), which it did "only because the Secretary had modified the citation to delete the unwarrantable failure charge," did not require a reduction in the penalty assessment).

Indeed, the Commission has long distinguished between certain elevated enforcement designations and penalty factors that are distinct from, but factually related to, those enforcement designations. Forty years ago, the Commission acknowledged the distinction between "enforcement sanctions of section 104(d) [unwarrantable failure]," on one hand, and the concept of "negligence" as "one of the criteria that the Commission must consider in assessing a civil penalty," on the other hand. *Black Diamond Coal Mining Co.*, 7 FMSHRC 1117, 1122 (Aug. 1985). "Although the same or similar factual circumstances may be included in the Commission's consideration of unwarrantable failure and negligence, the issues are distinct." *Ibid*. The *Black Diamond* Commission concluded that "[t]he judge properly declined to address the issue of unwarrantable failure in the context of penalty assessments." *Ibid*. This Court has cited *Black Diamond* with approval. *Excel Mining, LLC* v. *Dept. of Lab.*, 497 Fed.Appx. 78, 79 (D.C. Cir. 2013) (unpublished decision) ("the Commission has consistently held that the analysis for calculating monetary penalties is distinct from the analysis for 'unwarrantable failure'"). The *Excel Mining* court explained *why* the penalty provision of the Mine

Act (section 110(i)) is different from the enforcement provisions of the Mine Act (section 104(d)): a finding of "moderate" negligence "need not also preclude the separate, forward-looking decision to impose heightened oversight under § 814(d) [unwarrantable failure] when the record shows that aggravating factors predominate." *Id.* at 80; see also *Eastern Associated Coal Corp.*, 13 FMSHRC 902, 910 ( June 1991) ("The threat of a chain of section 104(d) orders 'provides a powerful incentive for the operator to exercise special vigilance in health and safety matters...') (citations omitted).

This precise analysis also applies to S&S designations. Like the unwarrantable failure provision in section 104(d), the S&S provision in section 104(d) is also a "forward-looking decision to impose heightened oversight." Cf. *Excel Mining,* 497 Fed.Appx. at 80; see also *Bellefonte*, 20 FMSHRC at 1252 (S&S and unwarrantable designations are "special findings"); *Am. Aggregates*, 42 FMSHRC at 576 (S&S is an "elevated finding"). An operator's history of S&S violations may lead to heightened oversight through the pattern of violations provision; an operator with a pattern of violations may be subject to withdrawal orders if future citations are designated S&S. 30 U.S.C. 814(e)(2); see, *e.g.*, *Morton Salt, Inc.*, 46 FMSHRC 489, 496 (Aug. 2024) (explaining the pattern of violations provision, and noting that "if the operator is found to be in further violation of the law—[only then] will MSHA

issue an order withdrawing miners from the affected areas"). Just like section 104(d) leads to an increasingly severe "chain" of enforcement withdrawal orders in the unwarrantable failure context, so too does the section 104(e) pattern of violation lead to the increasingly severe withdrawal orders in the S&S context. 30 U.S.C. 814(d), (e).

Here, the Commission suggests that "an operator might be willing to pay the full amount of a proposed penalty in exchange for the Secretary's removal of an S&S designation in order to avoid a Pattern of Violations . . . notice in the future thereby 'mitigat[ing]' the harshness of the proposed penalty." JA 156. Beyond being merely speculative about what "might" motivate an operator, the Commission's characterization of the penalty impact in this imagined scenario is wrong: accepting the full amount of a proposed penalty does not "mitigate" that penalty. The Commission would read "penalty" to encompass any consequence, however speculative, and its role under section 110(k) as assessing whether, in its view, an outcome is sufficiently "harsh." The Commission's attempt to consider the potential *impact* of removing an S&S designation on a particular citation essentially "substitute[s] its views of enforcement policy for those of the Secretary," which is precisely the kind of power that "the Commission does not

possess." *Twentymile*, 456 F.3d at 158 (describing a similar intrusion into the Secretary's charging decision as "pernicious.").[8]

The Commission's misplaced reliance on the pattern-of-violations provision also runs counter to its own recent pronouncement that the Secretary's decision to issue an operator a pattern of violations notice is, itself, an act of unreviewable prosecutorial discretion. *Morton Salt*, 46 FMSHRC at 498. In *Morton Salt*, the Commission directly addressed the question of whether the Secretary's decision to notify an operator of a pattern of violation was reviewable. After explaining the Secretary's pattern of violations enforcement process, the Commission concluded that "we lack jurisdiction to review the Secretary's internal processes related to her exercise of discretion" to notify an operator of a pattern of violations. *Id*. at 495-497. Citing *Twentymile Coal*, the Commission emphasized that its "ability to consider whether a pattern of violations exists must be distinguished from our lack of jurisdiction to review how or why the Secretary decided to *charge* an operator with a pattern notice." 456 F.3d at 496. Significantly, the Commission used the word

---

[8] The Commission's reliance on the legislative history of the Mine Act (to address the shortcomings of the prior regulatory regime) in support of its expansive reading of section 110(k) is no longer apt. Congress's concerns reflected a practice before the 1977 Mine Act was passed, when all prosecutorial and adjudicatory functions were performed entirely within the Department of the Interior. That is no longer the case. Mine Act settlements are a matter of public record, see p. 39, *supra*.

*charged*, inherently recognizing the Secretary's role of balancing "a number of factors peculiarly within [her] expertise." *Chaney*, 470 U.S. at 831-832.

Like the pattern of violations provision, the S&S language is located in the enforcement provisions of the Mine Act: section 104(d), 30 U.S.C. 814(d). And, like the pattern of violations provision, the S&S provision is one of many elevated enforcement tools available to the Secretary. *Am. Aggregates*, 42 FMSHRC at 576 (S&S is an "elevated finding"). There is no reason for the Commission to treat the S&S enforcement provision in section 104(d) any differently than the Commission treats the pattern of violations enforcement provision in section 104(e), or, indeed, any differently that it treats the unwarrantable failure provision in section 104(d).

The Commission also relies heavily on its authority under section 110 to review *penalty* settlements; it cites the "gravity" penalty criterion in section 110(i) to conclude that it has authority to review S&S removals, because gravity and S&S are "based frequently upon the same or similar factual circumstances," JA 157, 293, 430 (citing *Quinland*, 9 FMSHRC at 1622 n.11 (Sept. 1987)).[9] But, as the Commission has previously recognized, gravity and S&S are "not identical." *Quinland*, 9 FMSHRC at 1622 n.11; see also *Consol. PA. Coal Co.*, 18 FMSHRC

---

[9]The Secretary defines "gravity" as the degree of seriousness of the violation, in terms of likelihood of an injury-producing event, the severity of the potential injury, and the number of persons affected by the violation. 30 C.F.R. 100.3(e).

1541, 1550 (Sept. 1996) (contrasting gravity and S&S). In every citation, the

Secretary addresses the "gravity" of the violation, but the Secretary does not

designate every citation as S&S. S&S is an enforcement tool provided to the

Secretary in section 104, 30 U.S.C. 814, while gravity is a penalty factor described

in section 110(i). 30 U.S.C. 820(i). S&S is not a penalty factor; the Secretary can

remove an S&S designation without adjusting the gravity components of likelihood

and severity and without impacting the penalty. See, *e.g.*, *Mechanicsville*, 18

FMSHRC at 878. In settlement, the Secretary explains her reductions in the

components of gravity, but not her decision to remove an S&S designation, because

an S&S designation is a charging determination—a "special" or "elevated"

finding, *Bellefonte*, 20 FMSHRC at 1252; *Am. Aggregates*, 42 FMSHRC at 576—

over which the Secretary has sole discretion. S&S is not a penalty determination.

### 2.2. The Mine Act Does Not Supply a Meaningful Standard for the Commission to Apply to Review the Secretary's Decisions to Remove S&S Designations.

Because the Secretary's decisions to remove S&S designations are enforcement

decisions, they are presumptively unreviewable. *Chaney*, 470 U.S. at 831-833. That

presumption may be overcome if a statute "has indicated [Congress's] intent to

circumscribe agency enforcement discretion, and has provided meaningful

standards for defining the limits of that discretion . . . ." *Id.* at 834. If there are "no

judicially manageable standards . . . for judging how and when an agency should exercise its discretion," then those discretionary decisions are unreviewable. *Id*. at 830. Whether a statute provides a "meaningful standard" depends on "the particular language and overall structure of the statute in question, as well as 'the nature of the administrative action at issue.'" *Speed Mining*, 528 F.3d at 317 (citing *Webster* v. *Doe*, 486 U.S. 592, 600-601 (1988) and quoting *Drake* v. *FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)).

The Mine Act provides no judicially manageable standards for judging the Secretary's S&S charging discretion. Contrary to the Commission's decision in this case, JA 156-157, 292-293, 430, the "particular language" of section 110(k) does not supply a meaningful standard because it grants the Commission only the authority to approve the settlement of *penalties*. As explained above, *supra* p. 39, S&S designations are not penalties, nor are S&S designations among the penalty factors listed in section 110(i), 30 U.S.C. 820(i). The statute is silent on any standard for imposing limits on the Secretary's discretion, but the Commission "hears sounds in the silence." *Twentymile*, 456 F.3d at 157-158.

The Commission suggests, JA 154, 291, 429, that the language of section 110(k) gives it broad authority to review settlements and that Congress intended it to take a holistic approach to settlements, because section 110(k) prohibits contested

penalties from being "compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. 820(k). The language of compromise, mitigation, and settlement in section 110 may be broad, but it refers only to penalties—i.e., the amount of money—not to the Secretary's "forward looking" enforcement tools, and certainly not to the Commission's perception of the potential impact of the Secretary's use of those enforcement tools. Far from the "particular language" of the Act giving the Commission authority over S&S designations, the language of section 104 expressly recognizes the Secretary's S&S enforcement authority— separate from the Commission's authority—to "modif[y], terminat[e], or vacat[e]" citations. 30 U.S.C. 814(h). Removing an S&S designation is modifying a citation— modifying a charging decision. Congress would not have given the Secretary the independent authority to modify violations if Congress did not mean for the Secretary to exercise that authority independently. 30 U.S.C. 814(h) (Citations are in effect until modified, terminated, or vacated "by the Secretary[,] the Commission, or the courts.")."

In a similar vein, the Commission determined that its decision in *American Coal Company* elucidates its authority over "nonmonetary" aspects of a proposed settlement. JA 155, 291-292, 429 (citing *Am.Coal II*, 40 FMSHRC at 989. But the Commission cannot assume for itself authority that the statute does not provide. In

*AmCoal II*, the Commission determined that an ALJ erred in "not giving any weight to the non-monetary value of accepting the citations as written." 40 FMSHRC at 989. In the settlement motion in that case, the parties proposed a 30 percent reduction in each penalty. *Id.* at 984. The ALJ sought to require the Secretary to explain the "specific numerical percentage reduction" of each penalty in the settlement proposal, finding it "odds-defying" that each violation warranted an exact 30 percent reduction. *Id.* at 991. But the Commission disagreed, explaining that monetary considerations based on section 110(i) factors might, in many cases, clearly explain why a particular numerical reduction is apt. *Id.* at 992. But in other cases, "there may be non-monetary considerations that also support settlement that are not amenable to such precision." *Id.* at 992.

But *AmCoal II* was not an S&S case and it does not give the Commission authority to review *any* nonmonetary consideration. Instead, *AmCoal II* stands only for the proposition that in reviewing penalty modifications, the Commission can consider reasons for changes *to the penalty* that are not strictly monetary. *AmCoal* does not allow the Commission to stray outside the boundaries of its review authority as prescribed by statute; it may review penalty settlements only, not enforcement decisions.

The "overall structure" of the Mine Act thus confirms that S&S removals are unreviewable. The Secretary's S&S authority is governed by section 104, which delineates the Secretary's authority to issue citations and orders. This is quintessential enforcement authority that agencies have unreviewable discretion to exercise; the fact that the S&S authority is located in this section indicates that its exercise, too, is unreviewable.

The nature of the administrative action at issue is also quintessential enforcement discretion. See *Speed Mining*, 528 F.3d at 317. The decision to remove an S&S designation is the decision not to take elevated enforcement action. Such prosecutorial decisions are unreviewable. See *Chaney*, 470 U.S. at 837-838 (discussing the general presumption of unreviewability of the decision to refrain from taking enforcement action); *Public Citizen*, 7 F.4th at 1195 (an agency decision not to close an investigation and take no enforcement action was unreviewable); *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv.*, 888 F.3d at 916-917 (an agency decision not to take enforcement action was unreviewable); *Paulsen*, 559 F.3d at 1085 (same); *Sierra Club*, 882 F.2d at 132 (same); *Cathedral Bluffs,* 796 F.2d at 538 (the Secretary of Labor was not bound to adhere to an enforcement policy concerning citations to independent contractors).

Permitting the Commission to review S&S removals would result in impermissible Commission intrusion on prosecutorial decisions declining to continue elevated enforcement action, and force the Secretary to maintain an S&S designation that she believes is unwarranted. The Commission asserts that all the Secretary need do is provide justification for her removal decision. JA 161-162, 294, 431. But allowing Commission review is not merely a matter of requiring explanation; it would impermissibly give the Commission authority to accept or reject that explanation, and consequently, ultimate authority over whether to charge an S&S violation. But the Act does not authorize the Commission to force the Secretary to take, or continue, enforcement action.

Notwithstanding its recent orders, the Commission has recognized the Secretary's sole enforcement authority in the past: in *American Aggregates*, the Commission acknowledged that the Secretary may need to modify citations in the exercise of her prosecutorial discretion, and that the Commission could not compel the Secretary to pursue citations the Secretary "determined, in the proper exercise of [her] prosecutorial discretion, not to be appropriate." 42 FMSHRC at 581 n.12. Similarly, in *North American Drillers*, the Commission held that a case was moot after the Secretary vacated a citation and the judge dismissed the operator's contest. *N. Am. Drillers, LLC*, 34 FMSHRC 352, 358-359 (Feb. 2012). The

Commission emphasized that it "serves no purpose to force the Secretary to continue litigating the merits of a citation that she has determined to be legally or otherwise unworthy of prosecution." *Id.* at 359. Although *North American Drillers* involved a vacatur, not an S&S designation, the principle is the same because, as the Commission also has stated, there is "no material difference between the Secretary's discretion on the one hand to vacate a citation and [her] discretion on the other hand . . . not to designate a citation as S&S." *Mechanicsville*, 18 FMSHRC at 879.

### 2.3. The Mine Act's Split-Enforcement Scheme Likewise Precludes Commission Review of the Secretary's Decisions to Remove S&S Designations.

The courts of appeals have explained, time and time again, that the Commission's role is not to second-guess the Secretary's enforcement choices or substitute its own. *Prairie State*, 792 F.3d at 85-86, 90-93 (D.C. Cir. 2015) (affirming the Secretary's authority to make ventilation plan determinations, "judgments that the expert, policymaking agency is charged with and better equipped to make [than the Commission]"); *Mach Mining, LLC* v. *Sec'y of Lab.*, 728 F.3d 643, 649-650, 657-658 (7th Cir. 2013) (same); *Speed Mining*, 528 F.3d at 319 (affirming that whether to issue a citation to a production-operator or contractor is the Secretary's decision to make); *Twentymile*, 456 F.3d at 159-161

(same). The Secretary's decisions to remove S&S designations are quintessential acts of prosecutorial discretionary enforcement. Because of its separate and independent adjudicatory role, the Commission cannot review those decisions. That "pernicious" intrusion into enforcement decisions would "invite[] the reviewing body to substitute its views of enforcement policy for those of the Secretary, a power that . . . the Commission does not possess." *Twentymile*, 456 F.3d at 158; *Speed Mining*, 528 F.3d at 319 ("While the Commission's authority is broad, it does not extend to reviewing the Secretary's policy-based enforcement decisions."). Of course, the Commission has authority, after a hearing, to determine whether an S&S designation that the Secretary has charged is supported by the evidence. See *Morton Salt*, 46 FMSHRC at 495-496 (distinguishing between the Secretary's unreviewable authority to charge a POV, but noting that the "burden remains on the Secretary to demonstrate the existence of a pattern" to an ALJ, if challenged by an operator). But the decision to charge (or not) a violation as S&S is the Secretary's discretionary decision alone. *Mechanicsville*, 18 FMSHRC at 879. In fact, in a recent decision, the Commission appeared to recognize this anew: "[T]he Commission's intention in reformulating the S&S analysis [relevant to the standard applied at hearing] is not to change the frequency with which Section 104(d) [the S&S provision] is cited by MSHA inspectors. *That is a public policy*

*question for the Secretary of Labor to decide* and for conditions in the nation's mines to dictate." *Consol PA Coal Co.*, No. PENN 2021-0084 at *32 (FMSHRC Sept. 19, 2025) (emphasis added). The cases presently before the Court seem to be an anomalous interlude where the Commission apparently forgot that it is the Secretary who plays the policymaking and enforcement role.

### 3. Fairness Considerations Support the Secretary's Unreviewable Discretion to Remove S&S Designations.

MSHA inspectors make on-the-ground decisions about whether and what citations and orders to issue. They are well-trained in making those decisions, but they are sometimes acting on incomplete information. As such, after additional post-inspection review, it is sometimes necessary to remove an S&S designation. See *Am. Aggregates*, 42 FMSHRC at 581 n.12. The Secretary may reach this conclusion in different ways. For example, operators may avail themselves of a pre-contest conference with MSHA and raise additional facts during the conference. 30 C.F.R. 100.6. Or, when in litigation, discovery may lead to additional facts that necessitate a change. It therefore cannot be the case, as the Commission suggests, that the Secretary has unreviewable discretion to remove an S&S designation *before* a contest is filed, but not *after* one is filed. This would mean that, after a contest, no matter what the Secretary learns in discussions with an operator, the Commission could prevent the Secretary from removing an S&S designation. This would

55

effectively make the Commission the prosecutor, which is not its role. Cf. *Twentymile*, 456 F.3d at 158.

It also is unfair to operators. An operator's ability to present information to the Secretary, and to have special findings like the S&S designation removed when warranted, must not depend on where a citation happens to be in the contest process. The Commission acknowledged the "procedural fairness concerns" identified by the Secretary, but went on to say that such concerns are "outweighed here by the safety policies of the Mine Act." JA 161. The Commission also stated that its "interpretation of section 110(k) reflects a reasonable accommodation of the safety goals and other policies of the Act." JA 161. The Act's safety and health policies are not furthered by the Commission seizing control of the Secretary's discretionary enforcement decisions, and forcing an operator to proceed to an evidentiary hearing just to have an S&S designation removed. In fact, to force an operator to do so is an exercise of coercive power by the Commission. Cf. *Chaney*, 40 U.S. at 831 (refusal to act is generally not coercive); see p. 36, *supra*.[10]

---

[10] The Commission's casual dismissal of the Secretary's EAJA concerns is particularly disturbing in light of the Commission's invitation that the Secretary essentially concede that an S&S designation is unwarranted by explaining "relevant circumstances" to justify removal. JA 160. Moreover, the Commission's suggestion—that the Secretary will not assume any risk under EAJA because a party's settlement positions cannot be used against that party in litigation, JA 162 (citing Fed. R. Evidence 408), ignores the potential reality the Secretary may need

### 4. Remedy

Should this Court agree with the Secretary that her discretionary authority to remove S&S designations is unreviewable, the Court should vacate the Commission's orders because they are errors of law. See, *e.g.*, *Twentymile*, 456 F.3d at 161. The Court should also instruct the Commission to vacate the ALJ's orders denying the Secretary's motions to approve settlement, because those are an abuse of discretion. See *AmCoal I*, 38 FMSHRC at 1984 (the Commission reviews an ALJ's order denying a motion to approve settlement for abuse of discretion; an ALJ's decision is an abuse of discretion where it "is based on an improper understanding of the law"). The Commission then may, if necessary, remand to the ALJ for additional factual justifications regarding components of the motions that it does have authority to review (e.g., reductions in negligence) or grant the Secretary's motions to approve settlement, see *Am. Mine Svcs., Inc.*, 15 FMSHRC

---

to defend an EAJA claim even if she prevails in that EAJA action, despite the Commission's optimistic, and speculative, prognosis to the contrary. If the Secretary's attempt to remove an S&S designation is rejected by the Commission, and then the case goes to hearing and the S&S is ultimately removed by the ALJ, the Secretary may face exposure for advancing an elevated enforcement action that is not substantially justified. It is one thing for the Secretary to advance novel arguments and risk EAJA exposure on her own behalf, it is quite another thing for the Commission to expose the Secretary to that risk.

1830, 1834 (Sept. 1993) (remand is unnecessary if an ALJ's reconsideration would serve no purpose).

## Conclusion

For the foregoing reasons, the Court should grant the Secretary's petition for review, vacate the Commission's orders, and remand the matter to the Commission for further disposition consistent with this Court's decision.

Respectfully submitted,

LORI CHAVEZ-DEREMER
Secretary of Labor

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

s/ SUSANNAH M. MALTZ

U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW,
Suite N4420
Washington, DC 20210
maltz.susannah.m@dol.gov
(202) 693-5393
(202) 693-9392 (fax)

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted under Fed. R. App. P. 32(f), it contains 12,692 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft Word in 14-point Equity.

s/ SUSANNAH M. MALTZ
Attorney

## Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the District of Columbia Circuit by using the

appellate CM/ECF system on September 22, 2025 and the following registered

users will be served via the CM/ECF system and by email:

Mark E. Heath
   *Knight Hawk Coal, LLC*

Lorna Waddell,
   *Greenbrier Minerals, LLC*

Christopher Pence
   *Bluestone Oil Corporation*

Jason Riley
   *Federal Mine Safety and Health Review Commission*

s/ SUSANNAH M. MALTZ
Attorney

## Addendum – Pertinent Statutes and Regulations

**Statutes**

**Occupational Safety and Health Act of 1970**

**29 U.S.C. 655 - Standards**

(e) Statement of reasons for Secretary's determinations; publication in Federal Register

Whenever the Secretary promulgates any standard, makes any rule, order, or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this chapter, he shall include a statement of the reasons for such action, which shall be published in the Federal Register.

**Mine Safety and Health Act of 1977**

**30 U.S.C. 814 – Citations and orders**

(a) Issuance and form of citations; prompt issuance

If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator of a coal or other mine subject to this chapter has violated this chapter, or any mandatory health or safety standard, rule, order, or regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The requirement for the issuance of a citation with reasonable promptness shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter.

. . .

(d) Findings of violations; withdrawal order

(1) If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or

health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any citation given to the operator under this chapter. If, during the same inspection or any subsequent inspection of such mine within 90 days after the issuance of such citation, an authorized representative of the Secretary finds another violation of any mandatory health or safety standard and finds such violation to be also caused by an unwarrantable failure of such operator to so comply, he shall forthwith issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (c) to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

(2) If a withdrawal order with respect to any area in a coal or other mine has been issued pursuant to paragraph (1), a withdrawal order shall promptly be issued by an authorized representative of the Secretary who finds upon any subsequent inspection the existence in such mine of violations similar to those that resulted in the issuance of the withdrawal order under paragraph (1) until such time as an inspection of such mine discloses no similar violations. Following an inspection of such mine which discloses no similar violations, the provisions of paragraph (1) shall again be applicable to that mine.

(e) Pattern of violations; abatement; termination of pattern

(1) If an operator has a pattern of violations of mandatory health or safety standards in the coal or other mine which are of such nature as could have significantly and substantially contributed to the cause and effect of coal or other mine health or safety hazards, he shall be given written notice that such pattern exists. If, upon any inspection within 90 days after the issuance of such notice, an authorized representative of the Secretary finds any violation of a mandatory health or safety standard which could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard, the authorized representative shall issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (c), to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

d

(2) If a withdrawal order with respect to any area in a coal or other mine has been issued pursuant to paragraph (1), a withdrawal order shall be issued by an authorized representative of the Secretary who finds upon any subsequent inspection the existence in such mine of any violation of a mandatory health or safety standard which could significantly and substantially contribute to the cause and effect of a coal or other mine health or safety hazard. The withdrawal order shall remain in effect until an authorized representative of the Secretary determines that such violation has been abated.

(3) If, upon an inspection of the entire coal or other mine, an authorized representative of the Secretary finds no violations of mandatory health or safety standards that could significantly and substantially contribute to the cause and effect of a coal or other mine health and safety hazard, the pattern of violations that resulted in the issuance of a notice under paragraph (1) shall be deemed to be terminated and the provisions of paragraphs (1) and (2) shall no longer apply. However, if as a result of subsequent violations, the operator reestablishes a pattern of violations, paragraphs (1) and (2) shall again be applicable to such operator.

(4) The Secretary shall make such rules as he deems necessary to establish criteria for determining when a pattern of violations of mandatory health or safety standards exists.

(h) Duration of citations and orders

Any citation or order issued under this section shall remain in effect until modified, terminated or vacated by the Secretary or his authorized representative, or modified, terminated or vacated by the Commission or the courts pursuant to section 815 or 816 of this title.

## 30 U.S.C. 815 – Procedure for enforcement

(a) Notification of civil penalty; contest

If, after an inspection or investigation, the Secretary issues a citation or order under section 814 of this title, he shall, within a reasonable time after the termination of such inspection or investigation, notify the operator by certified mail of the civil penalty proposed to be assessed under section 820(a) of this title for the violation cited and that the operator has 30 days within which to notify the Secretary that he wishes to contest the citation or proposed assessment of penalty.

A copy of such notification shall be sent by mail to the representative of miners in such mine. If, within 30 days from the receipt of the notification issued by the Secretary, the operator fails to notify the Secretary that he intends to contest the citation or the proposed assessment of penalty, and no notice is filed by any miner or representative of miners under subsection (d) of this section within such time, the citation and the proposed assessment of penalty shall be deemed a final order of the Commission and not subject to review by any court or agency. Refusal by the operator or his agent to accept certified mail containing a citation and proposed assessment of penalty under this subsection shall constitute receipt thereof within the meaning of this subsection.

. . .

(d) Contest proceedings; hearing; findings of fact; affirmance, modification, or vacatur of citation, order, or proposed penalty; procedure before Commission

If, within 30 days of receipt thereof, an operator of a coal or other mine notifies the Secretary that he intends to contest the issuance or modification of an order issued under section 814 of this title, or citation or a notification of proposed assessment of a penalty issued under subsection (a) or (b) of this section, or the reasonableness of the length of abatement time fixed in a citation or modification thereof issued under section 814 of this title, or any miner or representative of miners notifies the Secretary of an intention to contest the issuance, modification, or termination of any order issued under section 814 of this title, or the reasonableness of the length of time set for abatement by a citation or modification thereof issued under section 814 of this title, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5, but without regard to subsection (a)(3) of such section), and thereafter shall issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation, order, or proposed penalty, or directing other appropriate relief. Such order shall become final 30 days after its issuance. The rules of procedure prescribed by the Commission shall provide affected miners or representatives of affected miners an opportunity to participate as parties to hearings under this section. The Commission shall take whatever action is necessary to expedite proceedings for hearing appeals of orders issued under section 814 of this title.

## 30 U.S.C. 816 – Judicial review of Commission orders

(a) Petition by person adversely affected or aggrieved; temporary relief

(1) Any person adversely affected or aggrieved by an order of the Commission issued under this chapter may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit, by filing in such court within 30 days following the issuance of such order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and to the other parties, and thereupon the Commission shall file in the court the record in the proceeding as provided in section 2112 of Title 28. Upon such filing, the court shall have exclusive jurisdiction of the proceeding and of the questions determined therein, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside, in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. The Commission may modify or set aside its original order by reason of such modified or new findings of fact. Upon the filing of the record after such remand proceedings, the jurisdiction of the court shall be exclusive and its

judgment and degree.[11] shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28.

(b) Petition by Secretary for review or enforcement of final Commission orders

The Secretary may also obtain review or enforcement of any final order of the Commission by filing a petition for such relief in the United States court of appeals for the circuit in which the alleged violation occurred or in the Court of Appeals for the District of Columbia Circuit, and the provisions of subsection (a) shall govern such proceedings to the extent applicable. If no petition for review, as provided in subsection (a), is filed within 30 days after issuance of the Commission's order, the Commission's findings of fact and order shall be conclusive in connection with any petition for enforcement which is filed by the Secretary after the expiration of such 30-day period. In any such case, as well as in the case of a noncontested citation or notification by the Secretary which has become a final order of the Commission under subsection (a) or (b) of section 815 of this title, the clerk of the court, unless otherwise ordered by the court, shall forthwith enter a decree enforcing the order and shall transmit a copy of such decree to the Secretary and the operator named in the petition. In any contempt proceeding brought to enforce a decree of a court of appeals entered pursuant to this subsection or subsection (a), the court of appeals may assess the penalties provided in section 820 of this title, in addition to invoking any other available remedies.

**30 U.S.C. 820 – Penalties[12]**

(a) Civil penalty for violation of mandatory health or safety standards

(1) The operator of a coal or other mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter, shall be assessed a civil penalty by the Secretary which penalty shall not be more than $50,000 for each such violation. Each occurrence of a violation of a mandatory health or safety standard may constitute a separate offense.

---

[11] So in original. Probably should be "decree."

[12] The monetary amounts in this section have been adjusted upwards since the enactment of the statute. See Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2025, 90 Fed. Reg. 185 ( Jan. 10, 2025).

(2) The operator of a coal or other mine who fails to provide timely notification to the Secretary as required under section 813(j) of this title (relating to the 15 minute requirement) shall be assessed a civil penalty by the Secretary of not less than $5,000 and not more than $60,000.

(3)(A) The minimum penalty for any citation or order issued under section 814(d)(1) of this title shall be $2,000.

(B) The minimum penalty for any order issued under section 814(d)(2) of this title shall be $4,000.

(4) Nothing in this subsection shall be construed to prevent an operator from obtaining a review, in accordance with section 816 of this title, of an order imposing a penalty described in this subsection. If a court, in making such review, sustains the order, the court shall apply at least the minimum penalties required under this subsection.

(b) Civil penalty for failure to correct violation for which citation has been issued

(1) Any operator who fails to correct a violation for which a citation has been issued under section 814(a) of this title within the period permitted for its correction may be assessed a civil penalty of not more than $$5,000$1 for each day during which such failure or violation continues.

(2) Violations under this section that are deemed to be flagrant may be assessed a civil penalty of not more than $220,000. For purposes of the preceding sentence, the term "flagrant" with respect to a violation means a reckless or repeated failure to make reasonable efforts to eliminate a known violation of a mandatory health or safety standard that substantially and proximately caused, or reasonably could have been expected to cause, death or serious bodily injury.

(g) Violation by miners of safety standards relating to smoking

Any miner who willfully violates the mandatory safety standards relating to smoking or the carrying of smoking materials, matches, or lighters shall be subject to a civil penalty assessed by the Commission, which penalty shall not be more than $250 for each occurrence of such violation.

(i) Authority to assess civil penalties

The Commission shall have authority to assess all civil penalties provided in this chapter. In assessing civil monetary penalties, the Commission shall consider the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation. In proposing civil penalties under this chapter, the Secretary may rely upon a summary review of the information available to him and shall not be required to make findings of fact concerning the above factors.

(k) Compromise, mitigation, and settlement of penalty

No proposed penalty which has been contested before the Commission under section 815(a) of this title shall be compromised, mitigated, or settled except with the approval of the Commission. No penalty assessment which has become a final order of the Commission shall be compromised, mitigated, or settled except with the approval of the court.

## 30 U.S.C. 823 – Federal Mine Safety and Health Review Commission

(d) Proceedings before administrative law judge; administrative review

(1) An administrative law judge appointed by the Commission to hear matters under this chapter shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such administrative law judge by the chief administrative law judge of the Commission or by the Commission, and shall make a decision which constitutes his final disposition of the proceedings. The decision of the administrative law judge of the Commission shall become the final decision of the Commission 40 days after its issuance unless within such period the Commission has directed that such decision shall be reviewed by the Commission in accordance with paragraph (2). An administrative law judge shall not be assigned to prepare a recommended decision under this chapter.

(2) The Commission shall prescribe rules of procedure for its review of the decisions of administrative law judges in cases under this chapter which shall meet the following standards for review:

(A)(i) Any person adversely affected or aggrieved by a decision of an administrative law judge, may file and serve a petition for discretionary review by the Commission of such decision within 30 days after the issuance of such decision. Review by the Commission shall not be a matter of right but of the sound discretion of the Commission.

(ii) Petitions for discretionary review shall be filed only upon one or more of the following grounds:

(I) A finding or conclusion of material fact is not supported by substantial evidence.

(II) A necessary legal conclusion is erroneous.

(III) The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.

(IV) A substantial question of law, policy or discretion is involved.

(V) A prejudicial error of procedure was committed.

(iii) Each issue shall be separately numbered and plainly and concisely stated, and shall be supported by detailed citations to the record when assignments of error are based on the record, and by statutes, regulations, or principal authorities relied upon. Except for good cause shown, no assignment of error by any party shall rely on any question of fact or law upon which the administrative law judge had not been afforded an opportunity to pass. Review by the Commission shall be granted only by affirmative vote of two of the Commissioners present and voting. If granted, review shall be limited to the questions raised by the petition.

(B) At any time within 30 days after the issuance of a decision of an administrative law judge, the Commission may in its discretion (by affirmative vote of two of the Commissioners present and voting) order the case before it for review but only upon the ground that the decision may be contrary to law or Commission policy, or that a novel question of policy has been presented. The Commission shall state in such order the specific issue of law, Commission policy, or novel question of policy involved. If a party's petition for discretionary review has been granted, the Commission shall not raise or consider additional issues in such review proceedings except in compliance with the requirements of this paragraph.

(C) For the purpose of review by the Commission under paragraph (A) or (B) of this subsection, the record shall include: (i) all matters constituting the record upon which the decision of the administrative law judge was based; (ii) the rulings upon proposed findings and conclusions; (iii) the decision of the administrative law judge; (iv) the petition or petitions for discretionary review, responses thereto, and the Commission's order for review; and (v) briefs filed on review. No other material shall be considered by the Commission upon review. The Commission either may remand the case to the administrative law judge for further proceedings as it may direct or it may affirm, set aside, or modify the decision or order of the administrative law judge in conformity with the record. If the Commission determines that further evidence is necessary on an issue of fact it shall remand the case for further proceedings before the administrative law judge.

(The provisions of section 557(b) of Title 5 with regard to the review authority of the Commission are expressly superseded to the extent that they are inconsistent with the provisions of subparagraphs (A), (B), and (C) of this paragraph.)

**Regulations**

### 29 C.F.R. 2700 – Procedural Rules of the Federal Mine Safety and Health Review Commission

2700.76 – Interlocutory review

(a) Procedure. Interlocutory review by the Commission shall not be a matter of right but of the sound discretion of the Commission. Procedures governing petitions for review of temporary reinstatement orders are found at § 2700.45(f).

(1) Review cannot be granted unless:

(i) The ALJ has certified, upon the ALJ's own motion or the motion of a party, that an interlocutory ruling involves a controlling question of law and that in the ALJ's opinion immediate review will materially advance the final disposition of the proceeding; or

(ii) The ALJ has denied a party's motion for certification of the interlocutory ruling to the Commission, and the party files with the Commission a petition for interlocutory review within 30 days of the ALJ's denial of such motion for certification.

(2) In the case of either paragraph (a)(1)(i) or (ii) of this section, the Commission, by a majority vote of the full Commission or a majority vote of a duly constituted panel of the Commission, may grant interlocutory review upon a determination that the ALJ's interlocutory ruling involves a controlling question of law and that immediate review may materially advance the final disposition of the proceeding. Interlocutory review by the Commission shall not operate to suspend the hearing unless otherwise ordered by the Commission. Any grant or denial of interlocutory review shall be by written order of the Commission.

(b) Petitions for interlocutory review. Where the ALJ denies a party's motion for certification of an interlocutory ruling and the party seeks interlocutory review, a petition for interlocutory review shall be in writing and shall not exceed 15 pages. A copy of the ALJ's interlocutory ruling sought to be reviewed and of the ALJ's order denying the petitioner's motion for certification shall be attached to the petition.

(c) Briefs. When the Commission grants interlocutory review, it shall also issue an order which addresses page limits on briefs and the sequence and schedule for filing of initial briefs, and, if permitted by the order, reply briefs.

(d) Scope of review. Unless otherwise specified in the Commission's order granting interlocutory review, review shall be confined to the issues raised in the ALJ's certification or to the issues raised in the petition for interlocutory review.

## 30 C.F.R. 100 – Criteria and Procedures for Proposed Assessment of Civil Penalties, Mine Safety and Health Administration

100.3 - Determination of penalty amount; regular assessment.

(e) Gravity. Gravity is an evaluation of the seriousness of the violation. This criterion accounts for a maximum of 88 penalty points, as derived from the Tables XI through XIII. Gravity is determined by the likelihood of the occurrence of the event against which a standard is directed; the severity of the illness or injury if the event has occurred or was to occur; and the number of persons potentially affected if the event has occurred or were to occur.

[Tables omitted.]

100.6 - Procedures for review of citations and orders; procedures for assessment of civil penalties and conferences.

(a) All parties shall be afforded the opportunity to review with MSHA each citation and order issued during an inspection. It is within the sole discretion of MSHA to grant a request for a conference and to determine the nature of the conference.

(b) Upon notice by MSHA, all parties will have 10 days within which to submit additional information or request a safety and health conference with the District Manager or designee. A conference request may include a request to be notified of, and to participate in, a conference initiated by another party. A conference request must be in writing and must include a brief statement of the reason why each citation or order should be conferenced.

(c) When a conference is conducted, the parties may submit any additional relevant information relating to the violation, either prior to or at the conference. To expedite the conference, the official assigned to the case may contact the parties to discuss the issues involved prior to the conference.

(d) MSHA will consider all relevant information submitted in a timely manner by the parties with respect to the violation. When the facts warrant a finding that no violation occurred, the citation or order will be vacated. Upon conclusion of the conference, or expiration of the conference request period, all citations that are abated and all orders will be promptly referred to MSHA's Office of Assessments. The Office of Assessments will use the citations, orders, and inspector's evaluation as the basis for determining the appropriate amount of a proposed penalty.