# United States Court of Appeals
# for the District of Columbia Circuit

SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION,
*Petitioner,*

v.

KNIGHT HAWK COAL, LLC;
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
*Respondents,*

SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION,
*Petitioner,*

v.

GREENBRIER MINERALS, LLC;
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
*Respondents,*

SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION,
*Petitioner,*

v.

BLUESTONE OIL CORPORATION;
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
*Respondents,*

SOREN J. SCHMIDT,

*Court-Appointed Amicus Curiae
for Respondents.*

On Petition for Review of a Decision of the
Federal Mine Safety and Health Review Commission

## BRIEF OF COURT-APPOINTED
## AMICUS CURIAE IN SUPPORT OF RESPONDENT FEDERAL MINE
## SAFETY AND HEALTH REVIEW COMMISSION'S ORDERS

*(cover continues on inside)*

Soren J. Schmidt[*]
    *Counsel of Record*
Patrick D. Powers
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
soren.schmidt@lw.com

December 22, 2025     *Court-Appointed Amicus Curiae*

---

[*]   Supervised by Gregory G. Garre, Partner, Latham & Watkins LLP.

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

## A.  Parties and Amici

In *Knight Hawk Coal* (24-1293) the following parties appeared before the Federal Mine Safety and Health Review Commission:

• Secretary of Labor

• Knight Hawk Coal, LLC

In *Greenbrier Minerals* (24-1356) the following parties appeared before the Federal Mine Safety and Health Review Commission:

• Secretary of Labor

• Greenbrier Minerals, LLC

In *Bluestone Oil Corporation* (25-1077) the following parties appeared before the Federal Mine Safety and Health Review Commission:

• Secretary of Labor

• Bluestone Oil Corporation

The following are parties in this Court in these consolidated cases:

• Secretary of Labor

• Knight Hawk Coal, LLC

• Greenbrier Minerals, LLC

• Bluestone Oil Corporation

• Federal Mine Safety and Health Review Commission

Soren J. Schmidt was appointed as *amicus curiae* in support of the respondent Federal Mine Safety and Health Revision Commission's orders.

### B. Ruling Under Review

The orders on appeal are the Federal Mine Safety and Health Review Commission's decisions in *Secretary of Labor, Mine Safety & Health Administration v. Knight Hawk Coal, LLC*, FMSHRC No. LAKE 2021-0160 (FMSHRC Aug. 30, 2024), reported at 46 FMSHRC 563 (2024); *Secretary of Labor, Mine Safety & Health Administration v. Greenbrier Minerals, LLC*, FMSHRC No. WEVA 2022-0403 (FMSHRC Nov. 5, 2024), reported at 46 FMSHRC 933 (2024); and *Secretary of Labor, Mine Safety & Health Administration v. Bluestone Oil Corp.*, FMSHRC Nos. WEVA 2022-0176 and WEVA 2022-0350 (FMSHRC Jan. 29, 2025), reported at 47 FMSHRC 1 (2025).

### C. Related Cases

A pair of consolidated cases involving several of the same parties and presenting similar issues are pending in this Court: *Secretary of Labor v. Crimson Oak Grove Resources, LLC, et al. and FMSHRC*, No. 24-1294, and *Secretary of Labor v. County Line Stone Co., et al. and FMSHRC*, No. 24-1357.

*/s/ Soren J. Schmidt*
Soren J. Schmidt

*Court-Appointed Amicus Curiae*

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF AUTHORITIES ...................................................................v

GLOSSARY ........................................................................... xii

INTRODUCTION ........................................................................1

STATEMENT OF JURISDICTION.............................................................5

ISSUES PRESENTED........................................................................5

STATUTES AND REGULATIONS...............................................................6

STATEMENT OF THE CASE...................................................................6

    A.    The Mine Act's Split-Enforcement Scheme ........................................6

    B.    The Proceedings Below....................................................10

    C.    The Proceedings Before This Court...................................13

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT ........................................................................17

I.    THE COURT MAY DIRECT THE COMMISSION TO PRESENT ARGUMENTS ........................................................17

II.    THE COURT LACKS JURISDICTION OVER THIS APPEAL ...............27

III.    THE COURT SHOULD UPHOLD THE COMMISSION'S DECISIONS ........................................................37

    A.    The Mine Act Places Judicially Manageable Limits On The Secretary's Discretion ........................................37

        1.    Congress May Constrain An Agency's Prosecutorial Discretion ................................................38

2.      The Mine Act Limits The Secretary's Discretion To
        Compromise, Mitigate, Or Settle Contested Penalties ............39

B.      The Removal Of S&S Designations From Contested Penalties
        Falls Squarely Within Section 110(k) ...................................42

C.      The Secretary's Contrary Arguments Fail .........................................46

1.      Section 110(k) Covers More Than Just Penalty
        Reductions ................................................................................47

2.      The Commission's Review Does Not Violate The
        Secretary's Nonenforcement Discretion ..................................51

CONCLUSION .........................................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abney v. United States*,
  431 U.S. 651 (1977)..................................................................29

*American Forest Resource Council v. United States*,
  77 F.4th 787 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 1110 (2024)...........45, 46

*Baker v. Carr*,
  369 U.S. 186 (1962)..................................................................22

*Baltimore Gas & Electric Co. v. FERC*,
  252 F.3d 456 (D.C. Cir. 2001)....................................................40

*Block v. SEC*,
  50 F.3d 1078 (D.C. Cir. 1995).....................................................39

*Brennan v. OSHRC*,
  502 F.2d 946 (3d Cir. 1974) .......................................................24

*Brennan v. OSHRC*,
  505 F.2d 869 (10th Cir. 1974) ....................................................24

*CFTC v. Schor*,
  478 U.S. 833 (1986)..................................................................45

*Cobell v. Salazar*,
  No. 11-5270, 2012 WL 1884702 (D.C. Cir. May 22, 2012) .............................22

*Cody v. Cox*,
  509 F.3d 606 (D.C. Cir. 2007)....................................................40

*Cortes v. National Labor Relations Board*,
  145 F.4th 57 (D.C. Cir. 2025).............................................22, 23, 25

*Cyan, Inc. v. Beaver County Employees Retirement Fund*,
  583 U.S. 416 (2018)..................................................................48

\* Authorities upon which we chiefly rely are marked with asterisks.

*Dickson v. Secretary of Defense*,
  68 F.3d 1396 (D.C. Cir. 1995) ............................................................40

* *Digital Equipment Corp. v. Desktop Direct, Inc.*,
  511 U.S. 863 (1994) ........................................... 28, 29, 30, 31, 32, 34, 35, 36, 37

*Donovan v. Occupational Safety & Health Review Commission*,
  713 F.2d 918 (2d Cir. 1983) .............................................................35

*Drake v. FAA*,
  291 F.3d 59 (D.C. Cir. 2002) ............................................................39

*Dunlop v. Bachowski*,
  421 U.S. 560 (1975) .......................................................................39

*Duval Corp. v. Donovan*,
  650 F.2d 1051 (9th Cir. 1981) ..........................................................26

* *Heckler v. Chaney*,
  470 U.S. 821 (1985) .........................................................37, 38, 39, 40, 52

*Hi-Tech Furnace Systems, Inc. v. FCC*,
  224 F.3d 781 (D.C. Cir. 2000) ..........................................................38

*Hinson v. National  Transportation Safety Board*,
  57 F.3d 1144 (D.C. Cir. 1995) .......................................................19, 21

*Marshall v. Oil, Chemical & Atomic Workers International Union*,
  647 F.2d 383 (3d Cir. 1981) .............................................................35

*McClendon v. City of Albuquerque*,
  630 F.3d 1288 (10th Cir. 2011) .........................................................31

*Meredith v. FMSHRC*,
  177 F.3d 1042 (D.C. Cir. 1999) .....................................................19, 32

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) .......................................................................29

*Mohawk Industries, Inc. v. Carpenter*,
  558 U.S. 100 (2009) ...................................................................30, 36

*Moten v. Bricklayers, Masons & Plasterers International Union*,
543 F.2d 224 (D.C. Cir.1976) ............................................................25

*National Federation of Independent Business v. Sebelius*,
567 U.S. 519 (2012) ..........................................................................39

*National Labor Relations Board v. Constellium Rolled Products Ravenswood, LLC*,
43 F.4th 395 (4th Cir. 2022) ............................................................25

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ..........................................................................28

*Oil, Chemical, & Atomic Workers International Union v. OSHRC*,
671 F.2d 643 (D.C. Cir. 1982) ............................. 18, 19, 20, 21, 23, 25

*Ricketts v. Adamson*,
483 U.S. 1 (1987) ........................................................................30, 33

*Rubin v. Islamic Republic of Iran*,
583 U.S. 202 (2018) ..........................................................................48

*Secretary of Labor v. Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006) ....................................... 9, 33, 39, 53

*Secretary of Labor, Mine Safety & Health Administration v. Consolidation Coal Co.*,
895 F.3d 113 (D.C. Cir. 2018) ....................................................41, 55

*Secretary of Labor, Mine Safety & Health Administration v. Industrial TurnAround Corp.*,
138 F.4th 1339 (D.C. Cir. 2025) ..................................................35, 36

*Seigal v. Merrick*,
590 F.2d 35 (2d Cir. 1978) ................................................................31

*Seila Law LLC v. Consumer Financial Protection Bureau*,
591 U.S. 197 (2020) ..........................................................................25

*Smith v. United States*,
508 U.S. 223 (1993) ..........................................................................42

*Speed Mining, Inc. v. FMSHRC*,
    528 F.3d 310 (4th Cir. 2008) ............................................................38

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard
    College*,
    600 U.S. 181 (2023)..........................................................................21

*Trout Unlimited v. Pirzadeh*,
    1 F.4th 738 (9th Cir. 2021) ...............................................................53

\* *United States v. Carrigan*,
    778 F.2d 1454 (10th Cir. 1985) ...................................31, 33, 34, 52

*United States v. FCC*,
    652 F.2d 72 (D.C. Cir. 1980)............................................................26

*United States v. Johnson*,
    319 U.S. 302 (1943).........................................................................22

*United States v. Samueli*,
    582 F.3d 988 (9th Cir. 2009) ......................................................31, 32

*United States v. Windsor*,
    570 U.S. 744 (2013).........................................................................25

*Utah ex rel. Utah State Department of Health v. Kennecott Corp.*,
    14 F.3d 1489 (10th Cir. 1994) .........................................................31

*Weyerhaeuser Co. v. United States Fish & Wildlife Service*,
    586 U.S. 9 (2018).............................................................................38

\* *Will v. Hallock*,
    546 U.S. 345 (2006).................................... 3, 28, 29, 30, 32, 34, 35

**FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION DECISIONS**

*Amax Lead Co. of Missouri*,
    4 FMSHRC 975 (1982)..................................................................8, 51

*American Aggregates of Michigan, Inc.*,
    42 FMSHRC 570 (2020)....................................................................12, 44, 45, 53

\* *American Coal Co.*,
    38 FMSHRC 1972 (2016)..................................................................9, 37, 41, 55

\* *American Coal Co.*,
    40 FMSHRC 983 (2018)..........................................................................9, 20, 50

*Bluestone Oil Corp.*,
    47 FMSHRC 1 (2025).......................................................................................10

*Dickenson Russell Coal Co.*,
    35 FMSHRC 519 (2013)...................................................................................54

*Greenbrier Minerals, LLC*,
    46 FMSHRC 933 (2024)...................................................................................10

*Hopedale Mining, LLC*,
    42 FMSHRC 589 (2020).............................................................................43, 46

*Knight Hawk Coal, LLC*,
    44 FMSHRC 23 (2022).....................................................................................13

*Knight Hawk Coal, LLC*,
    46 FMSHRC 563 (2024)...................................................................................10

*Mechanicsville Concrete, Inc. t/a Materials Delivery*,
    18 FMSHRC 877 (1996).........................................................................8, 33, 53

*Morton Salt, Inc.*,
    46 FMSHRC 489 (2024)...................................................................................53

*Peabody Coal Co.*,
    18 FMSHRC 1309 (1996)..................................................................................44

*RBK Construction, Inc.*,
    15 FMSHRC 2099 (1993).............................................................................33, 52

*T&T Fuels Inc.*,
    14 FMSHRC 113 (1992)...................................................................................44

*Thunder Basin Coal Co.*,
 8 FMSHRC 1364 (1986)............................................................................44

## STATUTES AND REGULATIONS

7 U.S.C. § 2204 ...................................................................................................26

10 U.S.C. § 1552(b) ............................................................................................40

20 U.S.C. § 3412 .................................................................................................26

24 U.S.C. § 413(b) ..............................................................................................40

28 U.S.C. § 516 ...................................................................................................26

30 U.S.C. § 801 *et seq.* .......................................................................................6

30 U.S.C. § 811 ...................................................................................................7

30 U.S.C. § 813(a) ..............................................................................................7

30 U.S.C. § 814(a) ..............................................................................................7

30 U.S.C. § 814(d)(1)...............................................................................7, 10, 53

30 U.S.C. § 814(e) ..............................................................................................43

30 U.S.C. § 815 ...................................................................................................7

30 U.S.C. § 816 .................................................................................................34

30 U.S.C. § 816(a)(1)...........................................................................................8

30 U.S.C. § 816(b) .......................................................................................27, 34

30 U.S.C. § 820(i) ..........................................................................................9, 41

* 30 U.S.C. § 820(k) ........................................... 1, 8, 10, 20, 39, 40, 47

30 U.S.C. § 822.................................................................................................26

30 U.S.C. § 823(d)(1)..........................................................................................7

30 U.S.C. § 823(d)(2)(A)(i) ........................................................8

30 C.F.R. § 100.6 ...............................................................8, 54

30 C.F.R. § 100.7(a) ...............................................................7

## OTHER AUTHORITIES

*Black's Law Dictionary* (12th ed. 2024) ..............................43, 44

Fed. R. Crim. P. 11 ................................................................30

*Merriam-Webster.com*, https://tinyurl.com/53fpr8cz (last visited Dec. 17, 2025) ..............................................................................42

S. Rep. No. 95-181 (1977) .............................6, 7, 8, 46, 49

S. Rep. No. 109-365 (2006) ..............................................45

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...........................................................48

# GLOSSARY

| Abbreviation/acronym | Description |
| --- | --- |
| ALJ | Administrative Law Judge |
| EAJA | Equal Access to Justice Act |
| FMSHRC or Commission | Federal Mine Safety and Health Review Commission |
| Mine Act | Federal Mine Safety & Health Act of 1977 |
| MSHA | Department of Labor's Mine Safety and Health Administration |
| OSH Act | Occupational Safety and Health Act |
| OSHRC | Occupational Safety and Health Review Commission |
| POV | Pattern of Violations |
| S&S | Significant and substantial |
| Secretary | Secretary of Labor |

# INTRODUCTION

The Federal Mine Safety & Health Act of 1977 ("Mine Act") divides its enforcement responsibilities between the Secretary of Labor ("Secretary") and the Federal Mine Safety & Health Review Commission ("FMSHRC" or "Commission"). The Secretary issues citations against mine operators, who can contest the merits of those citations in adjudicative proceedings before the Commission and its Administrative Law Judges ("ALJs"). To ensure that citation contests remain transparent even if they are settled, Section 110(k) of the Act provides that no contested penalty "shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k).

In each of the consolidated proceedings below, the Secretary sought to settle citations contested before the Commission. The Secretary requested approval for the proposed settlement, but refused to provide any explanation for one element of that agreement: removing the "S&S" (significant and substantial) designation, which denotes a particularly hazardous violation. The Secretary claimed that no explanation was needed because she possesses "unreviewable discretion" to remove S&S designations from contested citations. The Commission rejected that claim, explaining that the Secretary's agreement to remove S&S designations required approval because it "compromised, mitigated, or settled" the contested penalties.

For the reasons explained below, the Court should dismiss or deny the Secretary's petitions for review. At the outset, however, the Court can and should direct the Commission to participate in this appeal. Thus far, the Commission has declined to present any arguments, citing circuit precedent that excludes other independent adjudicative agencies from appearing as respondents. But that precedent is inapposite. It governs appeals of run-of-the-mill orders from such agencies, where they acted as a quasi-district court and held no direct stake in the appeal's outcome. Here, by contrast, the issue on appeal squarely implicates the Commission's own authority, and the central adversity is not between the Secretary and the mine operators (who fully support the Secretary's claims), but between the Secretary and the Commission. Without the Commission, in fact, the only remaining parties lack any adversity at all, an absence that appointing an *amicus* cannot wholly fill in the circumstances here. The Court should therefore direct the Commission to defend itself—as agencies without independent litigating authority regularly do— against the Secretary's challenge to its authority.

Regardless, this appeal should ultimately be dismissed for lack of jurisdiction. The Mine Act only permits the Secretary to appeal "final" Commission orders, and the orders below were not. The Secretary tries to evade that statutory bar by invoking the collateral order doctrine, which permits immediate interlocutory review for a narrow class of special nonfinal orders, like orders denying presidential or

qualified immunity. But the Secretary fails to show that the orders below are "effectively unreviewable" in imperiling a cognizable public interest under the doctrine. Her primary argument is that without immediate review, her interest in avoiding further proceedings before the Commission will be irretrievably lost. The Supreme Court has definitively rejected that "right to avoid trial" definition of "effectively unreviewable" as unworkably broad, instead requiring that delayed review also imperil a substantial public interest. *See Will v. Hallock*, 546 U.S. 345, 349-53 (2006). The Secretary's gesture at the public interest in prosecutorial discretion fails. As courts have explained in the context of criminal prosecutions, there is no prosecutorial right to have a plea bargain accepted by the court. The same is true for the Secretary, whose prosecutorial discretion is not a right to settlement approval. There is accordingly no substantial public interest at issue here, and the doctrine's third condition is not satisfied. Just like rejected plea bargains, denied Mine Act settlements do not make the exclusive list of collateral orders.

If the Court does reach the merits, it should deny the Secretary's petitions. As Congress intended, the Mine Act sets boundaries on the Secretary's discretion to dispose of contested penalties. Specifically, Section 110(k) establishes a requirement of Commission approval that is triggered when a contested penalty is "compromised, mitigated, or settled." The Secretary's removal of S&S designations as part of an agreement to settle contested penalties clearly does so. In fact, it trips

all three of Section 110(k)'s triggering verbs: Through the removal, contested penalties are "compromised" by mutual concessions, "mitigated" in effect, and "settled" by the agreement that includes the S&S removals. The Commission has applied that straightforward interpretation to review S&S removals for decades, and Congress has declined to disturb it even while amending related portions of the Mine Act.

The Secretary's theory is that under Section 110(k), the Commission cannot review any part of a settlement agreement except for reductions in dollar amounts of penalties. That reading has no basis in the statutory text. If Congress had meant to trigger the approval requirement only when a contested penalty is "reduced," it could easily have said so. Instead, it used the much broader verbs of "compromised, mitigated, or settled." The Secretary's theory would read those words out of the statute. What is more, it would excuse her from explaining the full reasons for settling contested penalties—circumventing the oversight and accountability that Congress created the Commission to provide.

Rejecting the Secretary's claim will still leave her legitimate prosecutorial discretion intact. All agree on her exclusive authority to initiate enforcement actions, including by designating violations S&S. Her prerogative to unconditionally terminate enforcement actions is not at issue here, either. And as Commission precedent requires, the Secretary's burden to obtain approval is light—requiring her

to provide only a minimal showing of justification for removing S&S designations. To the extent the Secretary objects to even that forgiving constraint, her complaint should be directed to Congress. This Court should not dilute the Mine Act's clear commands.

The Court should accordingly (1) direct the Commission to participate in this case and (2) either dismiss or deny the petitions for review.

## STATEMENT OF JURISDICTION

The Secretary asserts that this Court has jurisdiction under the collateral order doctrine, and that adversity exists between her and the mine operators. *See* Sec'y of Labor Br., Dkt. 2136303 (Sept. 22, 2025) ("OB"). *Amicus* argues that this Court lacks jurisdiction. *Infra* Section II.

## ISSUES PRESENTED

1. Whether this Court may require the Commission to present arguments in this case.

2. Whether this Court lacks jurisdiction.

3. Whether the Secretary has unreviewable discretion to remove an "S&S" (significant and substantial) designation in a settlement agreement for contested citations without the Commission's approval under Section 110(k) of the Mine Act.

## STATUTES AND REGULATIONS

All applicable statutes are contained in the Opening Brief of the Secretary of Labor.

## STATEMENT OF THE CASE

### A.    The Mine Act's Split-Enforcement Scheme

Congress passed the Federal Mine Safety & Health Act of 1977 to address disastrous shortcomings in the enforcement of mine safety standards.  30 U.S.C. § 801 *et seq*.   The 1970s had brought "a frightening number of injuries and accidents," including "the death of 91 miners from carbon monoxide asphyxiation at the Sunshine Silver Mine in 1972, the death of 125 persons due to the bursting of an impoundment at the Buffalo Creek Mine in 1972, and the 1976 Scotia disaster in which twenty-three miners and three federal inspectors died in two explosions." Joint Appendix ("JA"), Dkt. 2136308, at 165 (Sept. 22, 2025).   Congress found that such tragedies resulted, in part, because the existing "penalty system, as applied" was "insufficient to encourage mine management to comply with the law's requirements."  S. Rep. No. 95-181, at 42 (1977).

In particular, Congress was concerned that government enforcers were letting noncompliant mine operators off easy in settlement agreements for reasons that had nothing to do with mine worker safety—*e.g.*, "to save litigation and collection expenses."  *Id.* at 44-45.   Congress decided that even those ordinarily legitimate

reasons for settling "should play no role" in the Mine Act context because they undercut the more important "purpose of encouraging operator compliance with the Act's requirements." *Id*. To make matters worse, the settlement negotiations were happening in secret, leaving Congress and the public in the dark about why and how the agreements were reached. *Id.* at 44-46. Congress resolved to prevent any potential "abuses" of such "off-the-record negotiations." *Id.* at 45.

Consequently, even as Congress delegated the Mine Act's primary enforcement power to the Secretary of Labor, it also created the Federal Mine Safety and Health Review Commission to check that power with a layer of accountability. Under the Act's split-enforcement scheme, the Secretary of Labor promulgates safety and health standards, conducts mine inspections, and issues citations to mine operators. 30 U.S.C. §§ 811, 813(a), 814(a). Citations are followed by a proposed penalty. 30 C.F.R. § 100.7(a). When a safety violation is "of such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard," the Secretary designates that violation as "S&S" (significant and substantial). 30 U.S.C. § 814(d)(1).

The Act also establishes a procedure for mine operators to contest citations issued by the Secretary in an adversarial proceeding before the Commission. *Id.* § 815. The Commission appoints ALJs to initially adjudicate those contests. *Id.*

§ 823(d)(1). ALJ decisions may be appealed to the Commission, and Commission decisions may be appealed to this Court. *Id.* §§ 816(a)(1), 823(d)(2)(A)(i).

Congress did not stop at granting the Commission general adjudicatory authority over contested citations, however, because that would not address the problem of lax or opaque settlement agreements. "To remedy the situation," Congress limited the Secretary's prosecutorial discretion over settlement agreements—subjecting it to Commission approval. S. Rep. No. 95-181 at 45. Section 110(k) of the Mine Act provides: "No proposed penalty which has been contested before the Commission . . . shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k). Since the Act's passage, the Commission has accordingly "review[ed] settlements entered into between the parties in contested penalty proceedings." *Amax Lead Co. of Mo.*, 4 FMSHRC 975, 977 (1982).

Section 110(k)'s constraint on the Secretary's prosecutorial discretion, while meaningful, is limited. It applies only after penalties are contested—before then, the Secretary can modify or vacate them in pre-assessment conferences with the cited operator. *See* 30 U.S.C. § 820(k); 30 C.F.R. § 100.6. It does not dictate when the Secretary must issue citations or which penalties she must propose. And it does not authorize the Commission to add or remove such sanctions itself. *See* JA157-58; *Mechanicsville Concrete, Inc. t/a Materials Delivery*, 18 FMSHRC 877, 879-80

(1996). Thus, "[u]nder the Act, the Secretary's charging discretion is as uncabined as that of a United States Attorney under the Criminal Code." *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006).

In view of the Secretary's primary enforcement role, the Commission applies a highly deferential standard when deciding whether to approve settlements in contested penalty proceedings. As the Commission explained below: "If any relevant circumstances exist to plausibly suggest" a penalty should be compromised, mitigated, or settled, "all the Secretary needs to do is provide the reasoning and justification . . . in her settlement motion—and her motion must be granted." JA160; JA162 (collecting Commission precedent). Relevant circumstances include those related to the underlying statutory standards, such as the penalty factors set forth in Section 110(i), as well as those bearing on whether the settlement is "fair, reasonable, appropriate under the facts, and protects the public interest." JA157-58 (first citing 30 U.S.C. § 820(i), then quoting *American Coal Co.* (*AmCoal I*), 38 FMSHRC 1972, 1982 (2016)). The Commission must therefore "accord due consideration to the entirety of the proposed settlement package, including *both its monetary and nonmonetary aspects*." JA155 (quoting *American Coal Co.* (*AmCoal II*), 40 FMSHRC 983, 989 (2018). The Commission approves over 99.95 percent of proposed settlements. *AmCoal I*, 38 FMSHRC at 1977 n.7.

### B. The Proceedings Below

This appeal arises from three Commission orders regarding contested citation proceedings: *Knight Hawk Coal, LLC*, 46 FMSHRC 563 (2024); *Greenbrier Minerals, LLC*, 46 FMSHRC 933 (2024); and *Bluestone Oil Corp.*, 47 FMSHRC 1 (2025).

In all material respects, these underlying proceedings share the same procedural history. Respondents operate underground coal mines in Illinois and West Virginia. JA142; OB12-13. At all three mines, inspectors from the Department of Labor's Mine Safety and Health Administration ("MSHA") issued citations after finding health and safety violations. JA30-32; JA190-97; JA323-59. Some violations were found to be "of such a nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard." 30 U.S.C. § 814(d)(1). Accordingly, they were designated "S&S." JA22; JA189; JA309-10. The operators contested MSHA's proposed penalties, and proceedings were initiated before a Commission ALJ. JA22; JA189; JA310.

In all three proceedings, Petitioner filed motions asking the ALJ to approve settlements. JA46; JA206; JA360-61; 30 U.S.C. § 820(k). The agreements proposed leaving some penalties unchanged, lowering the dollar amount on some, and removing S&S designations from others. JA37; JA207; JA362-64. In each case, the Secretary refused to explain why S&S removals were appropriate, including after

the ALJ requested any relevant information.  *See* JA63-64; JA209; JA364-68.  The Secretary claimed no explanation was needed because she possessed unreviewable authority to remove S&S designations from contested penalties.  In her view, all she needed approval for were the reductions in penalty dollar amounts.  The ALJ rejected that claim and denied approval.  JA67; JA227; JA372.

After granting interlocutory appeal, the Commission affirmed the settlement denials.  It held that "the Secretary does not have unreviewable discretion to remove an S&S designation from a contested citation without the Commission's approval under section 110(k) of the Act" and that "the parties must provide sufficient reasoning and justification to support the removal of an S&S designation in a settlement motion."  JA153.[1]

The Commission decisions carefully examined Section 110(k)'s text, reasoning that the terms "'compromised'" and "'mitigated'" carry independent weight and confirm the Commission's mandate to "apply a holistic approach to reviewing settlements" beyond "the mere settlement of civil penalty dollar figures." JA154.  S&S removals "'mitigate[d]' the harshness of the proposed penalt[ies]" by

---

[1]  Because the Commission decisions in *Greenbrier Minerals* and *Bluestone Oil Corporation* incorporate the Commission's reasoning from *Knight Hawk Coal*, this section primarily cites the *Knight Hawk Coal* commission decision.  *See* JA291-93; JA426-32; OB23.  Commissioner Althen dissented from the *Knight Hawk* Order, JA164-77, but did not participate in the *Greenbrier* or *Bluestone* decisions, *see* JA288-95; JA426-32.

reducing the risk of future Pattern of Violations ("POV") notices. JA156, 154 n.5.

"All factors, rather than simply the penalty amount, are part of the bargained-for exchange, i.e., the 'compromise' that occurs in Mine Act settlements." JA156, *see* JA154 n.5. The Commission also explained that it "cannot effectively review the Secretary's reduction of a penalty without examining the factors that go into it." JA155. Because the S&S removals sometimes resulted in reduced penalty amounts, the Commission would have no way to evaluate whether the penalties were appropriate without also reviewing why the S&S designations were removed. JA156.

The Commission also refuted the Secretary's contrary arguments. First, the Secretary's "[b]road [r]eliance" on FMSHRC precedent in *Mechanicsville* and *American Aggregates of Michigan, Inc.*, 42 FMSHRC 570 (2020), was misplaced. JA158. *Mechanicsville* "involved a *Judge's* attempt to *add* an S&S designation while the current case involves a proposal by the *Secretary* to *eliminate* an S&S designation." *Id.* *Mechanicsville* also relied on cases involving the Occupational Safety and Health Review Commission ("OSHRC"), but the Occupational Safety and Health Act ("OSH Act") has no provision like Section 110(k) granting the OSHRC approval authority over settlement agreements. *Id.* Second, *American Aggregates* did not hold that the Secretary had unreviewable authority to remove S&S designations as part of settlement packages. *Id.* Rather, it held that the ALJ

"ignored information that was relevant to the reasonableness of the settlement under the *AmCoal* criteria." *Id.* (quoting *Knight Hawk Coal, LLC*, 44 FMSHRC 23, 25 (2022)).

The Commission similarly rejected the Secretary's claim that Commission review of S&S removals would violate the Act's split-enforcement scheme. Specifically, the Secretary expressed fear that the Commission could force her to prosecute meritless citations, potentially subjecting her to liability under the Equal Access to Justice Act ("EAJA"). JA118-19, 125. The Commission concluded that fear was unfounded because of the deference afforded to the Secretary. "If any relevant facts exist to plausibly suggest that an S&S enforcement action is unwarranted, all the Secretary needs to do is provide the reasoning and justification for removing the S&S designation to the Judge—and the settlement motion must be granted." JA160.

### C.    The Proceedings Before This Court

The Secretary petitioned for review of the Commission's orders, and the three cases were consolidated into a single docket before this Court. *See* Dkt. No. 2091885 (Dec. 30, 2024); Dkt. No. 2110758 (Apr. 14, 2025). The Commission filed a letter with the Court stating that after "consultations with the Department of Justice and in consideration of this Court's ruling in *Oil, Chemical, and Atomic Workers Intern. Union v. OSHRC*, 671 F.2d 643 (D.C. Cir. 1982)," it did not intend to participate as

an active litigant "unless otherwise directed by the Court." Dkt. No. 2082814, at 1 (Oct. 30, 2024). The Court issued an order directing the parties to show cause why the case should not be dismissed for lack of jurisdiction, and to address whether the Commission should be permitted or required to participate in the appeal. Dkt. No. 2090378, at 2 (Dec. 19, 2024).

In response to the show-cause order, the Secretary argued that the Court retains jurisdiction and that the Commission's participation is not permitted. Dkt. No. 2100569, at 2-15 (Feb. 13, 2025). The mine operators filed short responses as well, noting their agreement with the Secretary. Dkt. No. 2100792, at 3-4 (Feb. 14, 2025); Dkt. No. 2100903, at 5 (Feb. 14, 2025). The Court discharged the show-cause order and instructed the parties to address in their merits briefs whether an Article III case or controversy exists and whether the collateral order doctrine permits this appeal. Dkt. No. 2107448, at 2 (Mar. 24, 2025).

The Court appointed the undersigned as *amicus curiae* on August 6, 2025, with instructions "to present arguments in support of the Federal Mine Safety and Health Review Commission's orders, including but not limited to any arguments that this court lacks jurisdiction over the petitions for review. In addition, amicus is directed to address whether this court may require the Commission to file briefs in these cases." Dkt. No. 2128941, at 1 (Aug. 6, 2025) (as amended by Dkt. No. 2141168 (Oct. 20, 2025)).

After the Secretary filed her merits brief, the mine operators filed a joint notice explaining that they had "reviewed the [Secretary's] brief and believe it addresses the issues before this Court and therefore join in the Arguments presented by the Secretary." Dkt. No. 2141359, at 2 (Oct. 21, 2025).

## SUMMARY OF ARGUMENT

I.   The Court may direct the Commission to participate in this appeal. Agencies—even those without independent litigating authority—routinely appear as respondents in appeals that challenge their authority. This Court's decisions in *Oil* and *Hinson* establish an exception. Those decisions excluded purely adjudicative independent agencies from participating in appeals where (1) they possess no adversity with the parties before them, nor any stake in the appeal's outcome, and (2) their absence would still leave adverse parties to litigate the appeal. While many appeals of the Commission's orders might fit that bill, this one does not. The Commission is adverse to the Secretary and has a direct stake in the appeal's disposition. Moreover, no adversity remains in this appeal without its participation. The Court should accordingly decline to extend *Oil* and *Hinson* to this case and should direct the Commission to present its own arguments.

II.   The Court lacks jurisdiction over this premature appeal. The Commission's orders below were undisputedly nonfinal, and do not qualify for the collateral order doctrine. Just as other circuits do not permit collateral review when

a proposed plea bargain is rejected, this Court should decline to review the denial of a proposed settlement agreement. Delaying appeal will not imperil the kind of public interest that the doctrine recognizes as cognizable to render an order "effectively unreviewable." The Court should therefore dismiss the Secretary's petitions for lack of jurisdiction.

III. If the Court reaches the merits, it should uphold the Commission's orders. Section 110(k) of the Mine Act establishes judicially manageable standards, requiring the Secretary to obtain Commission approval before a contested penalty is "compromised, mitigated, or settled." That approval is required here. When the Secretary removes an S&S designation as part of a settlement agreement, the contested penalties in that agreement are (1) "compromised" by the mutual concessions of S&S removals and accepted penalties; (2) "mitigated" in harshness because of the lessened enforcement consequences; and ultimately (3) "settled" by the agreement that includes the S&S removals. The Commission has applied that plain meaning for decades, and Congress has declined to disturb that practice, despite amending other provisions relating to the Commission's jurisdiction generally and S&S designations specifically.

The Secretary's alternative reading—that Section 110(k) applies only to reductions in the dollar amounts of penalties—would erase the words "compromised, mitigated, or settled" from the statute and open an end run around

the Act's oversight purposes. And the Secretary's generalized appeals to prosecutorial discretion largely attack straw men. The Commission's highly deferential review of settlement proposals does not usurp the Secretary's enforcement prerogatives; it simply ensures her accountability, as Congress intended.

## ARGUMENT

### I. THE COURT MAY DIRECT THE COMMISSION TO PRESENT ARGUMENTS

*Amicus* submits that, in the specific circumstances of this case, the Court may direct the Commission to present arguments in support of its orders below.[2] The Court has previously excluded independent adjudicative agencies like the Commission from participating in appeals of their orders. But the reasons the Court did so in those cases counsel the opposite result here. The Commission's participation is appropriate given its direct stake in the outcome of this case, which

---

[2] The Court instructed *amicus* "to address whether this court may require the Commission to file briefs in these cases." Dkt. No. 2128941, at 2. Typically, this Court "require[s]" parties to file briefs only in the sense that the failure to submit could result in forfeiture or default of some kind—not that some other sanction will follow. *Amicus* uses the word "direct" to convey that former meaning. Relatedly, the Commission's stated reason for not participating thus far is its understanding, after consultation with the Department of Justice, that it is prohibited from doing so by this Court's precedents. Dkt. No. 2082814, at 1. The Commission specifically contemplated participating if "otherwise directed by this Court." *Id.* If the Court were to clarify that those precedents do not apply in this case, it could then "direct" the Commission to reconsider its non-participation here.

is tied to its unique statutory approval role in the enforcement process; its actual adversity with remaining parties; and the lack of adversity without its participation. While the Commission does not possess freestanding authority to initiate litigation, that does not preclude its appearance as a respondent to defend the scope of its statutory powers.

1. When an agency decision is appealed, the agency generally appears as a respondent to defend it. Twice before, however, this Court has determined that a purely adjudicatory agency could not participate as an active party in the judicial review of its decisions. In *Oil, Chemical, & Atomic Workers International Union v. OSHRC*, the OSHRC had dismissed a citation issued against the company American Cyanamid. 671 F.2d 643, 645-46 (D.C. Cir. 1982). A workers' union that had been party to the citation proceedings filed a petition for review, but named OSHRC as a respondent rather than American Cyanamid. *Id.* at 646. This Court found error, concluding that OSHRC could not participate in the appeal. *Id.* at 651.

The Court gave several reasons for that conclusion. First, the OSHRC lacked "true adversity" with the parties before it—unlike disputes between "the claimant of a government benefit and the commission which seeks to withhold it," where the commission "is the party against whom relief is sought." *Id.* at 652. Second, because the OSHRC was established solely "to settle disputes between employers and the Secretary of Labor," it was "similar to a district court" in that "it has no stake in the

outcome of the litigation" and so does not "appear and defend its decision upon direct appeal." *Id.* at 652-53. Finally, unlike a situation where "a single private party is contesting the action of an agency, and the agency must appear and defend to assure the adversarial stance requisite to a case or controversy," "sufficient adversity exists between the union and the company to insure proper litigation without the participation of the OSHRC." *Id.* at 653.

In *Hinson v. National Transportation Safety Board*, the Court relied on similar reasoning to exclude the National Transportation Safety Board from an appeal. 57 F.3d 1144 (D.C. Cir. 1995). As the Court explained, the Board lacked a "direct stake in the outcome" of its orders' appeal because its "adjudicatory function [was] roughly analogous to that of a district court." *Id.* at 1147 n.1. Further, the Board's governing statute did not appear to contemplate any adversarial role for the Board, and "there [was] sufficient adversity between the real parties in interest to ensure proper litigation of all the issues." *Id.* As a result, the Court held that "the Board [was] not a proper party to [the] petition for review." *Id.*

In the Commission's capacity adjudicating run-of-the-mill citation disputes between the Secretary and mine operators, the same logic might apply. After all, that role "[r]eplicat[es] the division of responsibilities between the Secretary of Labor and the Occupational Safety and Health Review Commission." *Meredith v. FMSHRC*, 177 F.3d 1042, 1054 (D.C. Cir. 1999). But when it comes to the approval

of settlements, the Mine Act divides responsibilities differently, giving the Commission an approval power that the OSHRC lacks. *See* 30 U.S.C. § 820(k). That difference explains why the issue on appeal here is not an ordinary dispute between the Secretary and mine operators. In fact, it is not a dispute between the Secretary and mine operators at all, who are in complete agreement. As a result, the Court need not address the Commission's potential exclusion from appeals of its more typical orders.

In the specific posture of this case, the key considerations from *Oil* and *Hinson* are flipped, and the analysis comes out the other way. To begin, there *is* "true adversity" between the Commission and a party before it. The Secretary claims authority to proceed with the proposed settlements, and "the commission . . . seeks to withhold it." *Oil*, 671 F.2d at 652. That is why the Commission "is the party against whom relief is sought" here, *id.*; the Secretary asks this Court to "instruct the Commission" and its ALJs, going forward, either to examine the monetary reductions involved in those settlements, or to "grant the Secretary's motions" entirely, OB57. That remedy would curtail the Commission's longstanding construction of its approval obligation under Section 110(k), which encompasses both "monetary and nonmonetary aspects" of proposed settlement agreements. JA155 (emphasis omitted) (quoting *AmCoal II*, 40 FMSHRC at 989). The OSHRC in *Oil* and the Board in *Hinson* lacked any equivalent statutory mandate. And

because this case concerns the scope of that mandate, the Commission—unlike the agencies in those cases—has a "direct stake in the outcome" here: its own authority under the Mine Act. *Hinson*, 57 F.3d at 1147 n.1; *see Oil*, 671 F.2d at 652. The Commission's position is therefore not "analogous to that of a district court." *Hinson*, 57 F.3d at 1147 n.1.

2. There is another problem with excluding the Commission: The remaining parties lack adversity. This Court has proceeded without adjudicative agencies only after assuring that doing so would "not trigger any jurisdictional problem potentially foreclosing the effective adjudication of the merits of the appeal." *Oil*, 671 F.2d at 652. *Oil* recognized that "the union and the company" could "be expected to litigate vigorously" over the OHSRC's order below. *Id.* at 653. *Hinson* likewise acknowledged the "sufficient adversity" between the Federal Aviation Administration and the pilot whose certificate it suspended. 57 F.3d at 1145-46, 1147 n.1.

Here, excluding the Commission raises significant jurisdictional concerns. "Article III of the Constitution limits '[t]he judicial power of the United States' to 'cases' or 'controversies,' ensuring that federal courts act only 'as a necessity in the determination of real, earnest and vital' disputes." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (alteration in original) (citation omitted). "To establish a case or controversy, the parties must

have adverse interests, meaning that a judgment benefiting the plaintiff's concrete interests must adversely affect a concrete interest of the defendant." *Cortes v. Nat'l Lab. Rels. Bd.*, 145 F.4th 57, 61 (D.C. Cir. 2025). In turn, an "honest and actual antagonistic assertion of rights," *United States v. Johnson*, 319 U.S. 302, 305 (1943) (citation omitted), generates "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends," *Baker v. Carr*, 369 U.S. 186, 204 (1962).

The only parties participating in this appeal—the Secretary and the mine operators—are not adverse. For starters, their legal positions are identical. After the Secretary filed her merits brief, the operators specifically declined to file a supplemental brief because they saw "no need" to further address the issues, opting instead to simply "join in the Arguments presented by the Secretary." Notice to Adopt Secretary's Br. 2, Dkt. 2141359 (Oct. 21, 2025). Their complete accord is the opposite of an "antagonistic assertion of rights," *Johnson*, 319 U.S. at 305 (citation omitted), or "adverse[] . . . presentation of issues," *Baker*, 369 U.S. at 204.

More fundamentally, the Secretary and the operators seek the exact same result in this appeal. The problem is not that they have agreed to settle their underlying disputes; if such agreement alone defeated jurisdiction, then a settlement could never be court-approved, which defies "common sense." OB34-35 (quoting *Cobell v. Salazar*, No. 11-5270, 2012 WL 1884702, at *1 (D.C. Cir. May 22, 2012)).

The real problem is that, with respect to the sole question on appeal—may the Commission review S&S removals?—both the Secretary and the operators' interests in consummating their settlement will rise or fall together. Because the parties do not "seek adverse forms of relief," this Court could not enter "a judgment that adversely affects one party's concrete interests and benefits the other's." *Cortes*, 145 F.4th at 62-63. The Secretary and the mine operators thus lack "adverse interests" in this appeal. *Id.* at 61.

3. The Secretary insists that there are no adversity problems here because "the Secretary has issued citations and proposed penalties," while "the operators have contested them and have not withdrawn their contests." OB35. That may accurately describe the contest between the Secretary and operators before the Commission, but it elides the true nature of this appeal. Here, the Secretary and the operators are for all practical purposes acting as "a single private party . . . contesting the action of an agency." *Oil*, 671 F.2d at 653. In this posture, "the agency must appear and defend to assure the adversarial stance requisite to a case or controversy." *Id.* It is particularly troubling, then, that the Secretary has also argued that the Commission should be excluded from participation here. *See* Dkt. No. 2100569, at 11. On the one hand, the Secretary urges this Court to proceed to the merits of a question on which she and the mine operators are completely aligned. On the other, she urges

the Court to exclude the one party with an adverse interest in that question—the Commission itself. The Secretary cannot have it both ways.

The Secretary also cites a pair of OSHRC cases that she claims support finding adversity here. OB35 (citing *Brennan v. OSHRC*, 505 F.2d 869 (10th Cir. 1974); *Brennan v. OSHRC*, 502 F.2d 946 (3d Cir. 1974)). In reality, they do the opposite. The Secretary correctly observes that the courts proceeded to review OSHRC decisions without participation from the cited employer. *Id.* But the reason that posed no adversity problem was that the OSHRC *itself* participated in the appeal. (These cases predated the decisions holding that OSHRC is an improper respondent. *Supra* Section I.) Thus, while "the employer . . . filed no response to the Secretary's petition for review," the OSHRC "ha[d], however, responded in defense of its order." *Brennan*, 502 F.2d at 948; *see Brennan*, 505 F.2d at 870-71. Here, by contrast, neither the Commission nor the mine operators offer any opposition to the Secretary's petition.

4. In these circumstances, the appointment of *amicus* to argue in support of the Commission's orders is an imperfect cure to the lack of adversity. To be sure, the Supreme Court sometimes appoints *amici* to supply missing adversarial arguments—typically, when the government declines to defend a federal law or changes positions mid-litigation—but only after confirming that Article III is satisfied and that prudential considerations weigh in favor of retaining jurisdiction.

*See United States v. Windsor*, 570 U.S. 744, 755-63 (2013); *see, e.g.*, *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 212-13 (2020).

As in those typical cases, the Secretary and operators do "retain[] a stake" in the appeal necessary for standing. *Windsor*, 570 U.S. at 757. But unlike in those cases, the parties' stakes here rise and fall together. *See id.* at 758. The Secretary and operators lack any "adverse interests" in the appeal's disposition permitting "a judgment that adversely affects one party's concrete interests and benefits the other's." *Cortes*, 145 F.4th at 61, 63. It is not clear, therefore, that their participation alone sustains a case or controversy. *See Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 401-04 (4th Cir. 2022).

Prudential considerations also weigh against proceeding without the Commission here. *Amicus* cannot replace the Commission's expertise, nor exercise the procedural options that a full party can—including filing an appeal, which is irrelevant in typical Supreme Court appointments, but vital in the lower courts. *See Moten v. Bricklayers, Masons & Plasterers Int'l Union*, 543 F.2d 224, 227 (D.C. Cir.1976) (per curiam) (*amici* may not appeal judgments). As a result, the better solution to the "jurisdictional problem" here, *Oil*, 671 F.2d at 652, is to direct the Commission itself to participate.

5. Lastly, the Commission's lack of independent litigating authority does not categorically disqualify it from participating here. *Contra* Secretary's Resp. to

Show-Cause Order, Dkt. No. 2099119, at 10-11 (Feb. 6, 2025). It is true that the Mine Act grants only the Secretary power to initiate litigation. *Id.*; *see* 30 U.S.C. § 822. But it does not follow that the Commission cannot appear to defend its own authority. Many other agencies without independent litigating authority—for instance, the Department of Education, *see* 20 U.S.C. § 3412; or the Department of Agriculture, *see* 7 U.S.C. § 2204—routinely appear in court to defend themselves from challenges.[3] Indeed, if the absence of independent litigating authority dispositively precluded an agency from appearing in a defensive posture, then *Oil* and *Hinson* could have rested solely on that ground. Instead, this Court undertook the analysis discussed above, confirming the relevance of other considerations.

In sum, each of the reasons this Court gave for *excluding* the agency respondents in *Oil* and *Hinson* are reasons for *including* the Commission in this case. Even if those precedents govern ordinary appeals of Commission orders, the special

---

[3] Generally, agencies in such cases are represented by attorneys from the Department of Justice, reflecting the default rule of 28 U.S.C. § 516. However, there is some precedent for agencies being represented by their own internal counsel. *See Duval Corp. v. Donovan*, 650 F.2d 1051, 1053 n.1 (9th Cir. 1981) (explaining that while "the Secretary of Labor is represented by the Solicitor of Labor," the Commission also "has its own counsel" who is "entitled to appear before this court" and whose presentation "would be helpful to the court and to the parties"); *see also United States v. FCC*, 652 F.2d 72, 74 (D.C. Cir. 1980) (FCC represented by its internal counsel in defending challenge brought by the Department of Justice, among others). *Amicus* takes no position on which counsel should represent the Commission here.

posture of this appeal is different.  The Court may direct the Commission to participate here.

## II.   THE COURT LACKS JURISDICTION OVER THIS APPEAL

This premature appeal should be dismissed for lack of jurisdiction.  All agree that the Mine Act authorizes judicial review only of a "final order" of the Commission, 30 U.S.C. § 816(b), and that the orders denying settlement approval here do not fall within that meaning, *see* OB27 n.6.  The Secretary nonetheless urges this Court to hold, for the first time, that such orders are reviewable under the collateral order doctrine.  But in attempting to satisfy the doctrine's third condition— that an order would be "effectively unreviewable" on appeal from final judgment— the Secretary advances a theory that the Supreme Court has squarely rejected:  That delayed review will irretrievably deny her right to avoid further proceedings before the Commission.  Her attempt to portray delay as a cognizable deprivation of prosecutorial discretion does not rescue her theory.  As shown by cases declining collateral review for denials of plea bargains, prosecutorial discretion does not include a right to approval of a negotiated disposition.  The Court therefore should adhere to the Mine Act's finality requirement and decline to exercise jurisdiction here.

1.   The collateral order doctrine operates against the foundational principle "that a party is entitled to a single appeal, to be deferred until final judgment has

been entered, in which claims of . . . error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). That principle reflects "substantial finality interests," like "judicial efficiency" and "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals." *Will v. Hallock*, 546 U.S. 345, 349-50 (2006) (alteration in original) (citation omitted).

Accordingly, the Supreme Court has "repeatedly stressed that the 'narrow' exception" occupied by the collateral order doctrine "should stay that way and never be allowed to swallow the general rule." *Digital Equip.*, 511 U.S. at 868. To qualify, an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349 (citation omitted). These conditions must be particularly "stringent" because "the issue of appealability" under the doctrine "is to be determined for the entire category to which a claim belongs." *Digital Equip.*, 511 U.S. at 868. "[A]lthough the Court has been asked many times to expand the 'small class' of collaterally appealable orders," it has "instead kept it narrow and selective in its membership." *Will*, 546 U.S. at 350. That small class includes, for example, orders denying the defenses of absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982), qualified

immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); and double jeopardy, *Abney v. United States*, 431 U.S. 651, 659-60 (1977).

2.  In recent decades, the Supreme Court has narrowed the third condition for collateral orders, clarifying that only certain kinds of "'irretrievabl[e] los[s]'" render an order "effectively unreviewable on appeal from final judgment." *Digital Equip.*, 511 U.S. at 867, 879 (alterations in original) (citation omitted).  Cognizable losses do not include "'every right that could be enforced appropriately by pretrial dismissal,'" even if they could be described as "a right to avoid trial," *Will*, 546 U.S. at 350-51 (citation omitted), or might be "imperfectly reparable by appellate reversal" of a final judgment, *Digital Equip.*, 511 U.S. at 872.

That is because "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial,'" and thus qualify as "'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." *Digital Equip.*, 511 U.S. at 872-73 (citation omitted).  In concrete terms:

> Allowing immediate appeals to vindicate every such right would move [the finality requirement] aside for claims that the district court lacks personal jurisdiction, that the statute of limitations has run, that the movant has been denied his Sixth Amendment right to a speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state a claim.

*Will*, 546 U.S. at 351 (quoting *Digital Equip.*, 511 U.S. at 873). That would leave the finality requirement "in tatters." *Id.*

Instead, the "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Will*, 546 U.S. at 352-53). Thus, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts." *Will*, 546 U.S. at 353.

3.    The doctrine's application in an analogous context—denials of plea bargains requiring court approval—is instructive. In criminal prosecutions, such plea bargains are the equivalent of the settlement proposals at issue in this case. As here, they arise in the context of the government prosecuting charges against a defendant. They conclusively resolve those charges through a "bargained-for exchange" of "concessions" from "each side." *Ricketts v. Adamson*, 483 U.S. 1, 9 n.5 (1987) (citation omitted). And they are subject to approval from the district court. Fed. R. Crim. P. 11. When asked to review the rejection of plea bargains as collateral orders, however, the two circuits to consider the issue have refused to do

so. *United States v. Samueli*, 582 F.3d 988 (9th Cir. 2009); *United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985).[4]

Those courts' reasoning is particularly instructive with respect to the kinds of irretrievable losses that are cognizable—or not—under the third collateral order condition. In *Carrigan*, the government claimed that the Constitution required immediate correction of the "district court's unwarranted interference in the exercise of executive discretion." 778 F.2d at 1465. The Tenth Circuit disagreed because, unlike a prosecutor's right to dismiss charges wholesale, there was no "Government[] right to have a plea bargain accepted" by the district court. *Id.* Moreover, an "order denying a proposed plea bargain does not conclusively force the Government to trial." *Id.* at 1466. *Samueli*, expressly following *Carrigan*, added that after a final sentencing order was in place, "either party may argue that the district court abused its discretion in rejecting the combined plea and sentence

---

[4] Certain civil settlements also require court approval. In those contexts, a similar consensus holds that denying or rescinding approval for a settlement agreement is not a collateral order. *See Digital Equip.*, 511 U.S. at 865-68 (denying collateral review for rescission of approval for settlement agreement); *McClendon v. City of Albuquerque*, 630 F.3d 1288 (10th Cir. 2011) (denying collateral review for withdrawal of approval for settlement agreement); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489 (10th Cir. 1994) (denying collateral review for denial of settlement including a consent decree under the Comprehensive Environmental Response, Compensation, and Liability Act); *Seigal v. Merrick*, 590 F.2d 35 (2d Cir. 1978) (denying collateral review for denial of settlement in shareholder derivative case).

agreement." 582 F.3d at 992. As a result, both circuits concluded that the government's asserted right to avoid trial through a plea bargain was not a cognizable loss rendering the plea bargain rejections "effectively unreviewable."

4. For similar reasons, the settlement denials at issue here do not cause the kinds of irretrievable losses necessary to qualify as "effectively unreviewable" and satisfy the collateral order doctrine's third condition. The Secretary is right that "[o]nce administrative proceedings have run their course, the interest in avoiding them has been vitiated and cannot be vindicated." OB31 (quoting *Meredith*, 177 F.3d at 1052). But that fact alone "has never sufficed to meet the third [condition]." *Digital Equip.*, 511 U.S. at 872. If it did, then "Congress's final decision rule would end up a pretty puny one," with immediate review granted to "virtually every right that could be enforced appropriately by pretrial dismissal." *Id.* at 872-73 (collecting examples). That is why "it is not mere avoidance of a trial, but *avoidance of a trial that would imperil a substantial public interest*, that counts." *Will*, 546 U.S. at 353 (emphasis added).

The Secretary has identified no "substantial public interest" imperiled by the continuation of administrative proceedings before the Commission. She suggests that her "prosecutorial discretion" would be lost if judicial review were delayed here, implying an injury to the constitutional separation of powers. OB32. Not so. As the Tenth Circuit explained with respect to criminal prosecutions, prosecutorial

discretion includes the right "to dismiss all the charges against the parties to the agreement in an unconditional . . . motion," or to "exercise the option of simply declining to prosecute further." *Carrigan*, 778 F.2d at 1466. But those actions are distinct from consummating an agreement that resolves pending charges through a "bargained-for exchange" of "concessions" from "each side." *Ricketts*, 483 U.S. at 9 n.5 (citation omitted). Unlike the Executive's prerogative to completely dismiss or decline a prosecution, there is no "right to have a plea bargain accepted." *Carrigan*, 778 F.2d at 1465. That is true even in the unusual situation where the government "join[s] a defendant on appeal in arguing that no trial should have been held." *Id.* at 1465-66. Consequently, for purposes of the third condition, there is no "substantial public interest" in government prosecutors avoiding a trial by entering a plea bargain.

What is true of plea bargains is true here. *Cf. Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006) (comparing the Secretary's enforcement discretion to a U.S. Attorney's). The Secretary's exclusive authority includes the discretion to issue citations against mine operators in the first place, as well as to unconditionally dismiss them. *See Mechanicsville Concrete, Inc. t/a Materials Delivery*, 18 FMSHRC 877, 879-80 (1996); *RBK Constr., Inc.*, 15 FMSHRC 2099, 2100-01 (1993). If the Commission had tried to prevent one of those actions, that could impinge on the Secretary's prosecutorial discretion, and "an

appeal might lie." *Carrigan*, 778 F.2d at 1466. But an order denying a proposed settlement "does not present the same constitutional difficulties." *Id.* at 1465. The Secretary has no right to have a settlement accepted. Reviewing her claims now is therefore not necessary to "avoid[] . . . a trial that would imperil a substantial public interest." *Will*, 546 U.S. at 353. Just like the denial of a plea bargain, then, the denial of a settlement proposal does not subject the Secretary to "effectively unreviewable" losses for collateral order purposes. *Digital Equip.*, 511 U.S. at 872.

5. Holding otherwise would contravene Congress's clear intent, undermine important values, and disrupt the consensus in analogous contexts. The Mine Act states that only a "final order of the Commission" is subject to judicial review. 30 U.S.C. § 816(b). The finality requirement reflects Congress's judgment that "piecemeal appeals" frustrate the "efficient administration of justice." *Digital Equip.*, 511 U.S. at 867-68, 872. Opening the courthouse doors to months or years of interlocutory litigation anytime the Commission denies a proposed settlement would contradict both the Mine Act and its purposes. It would also call into question the settled understanding that the collateral order doctrine does not apply to orders denying approval for plea bargains or other civil settlements that must be accepted by the district court. The Court can avoid that disarray by hewing to the Mine Act's rule: Judicial review is reserved for a "final order" of the Commission. 30 U.S.C. § 816.

The cases cited in the Secretary's analysis of the third condition are neither controlling nor persuasive. *See* OB31-33. Most of them are decades-old, out-of-circuit decisions permitting interlocutory appeals from OSHRC decisions which have nothing to do with settlement denials. *See id.* The two that reviewed settlement denials did so on the basis of (1) the Secretary's exclusive authority over settlements under the OSH Act; and (2) the notion that delayed review "will never fully vindicate the Secretary's position that he could have settled the case" because he will bear the costs of litigating the case to final judgment. *Marshall v. Oil, Chem. & Atomic Workers Int'l Union*, 647 F.2d 383, 387 (3d Cir. 1981); *see also Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 923-24 (2d Cir. 1983). The first basis only underscores the OSH Act's contrast with the Mine Act, which distinctly shares the Secretary's authority over settlements with the Commission. And the second basis has since been expressly and repeatedly repudiated by the Supreme Court as insufficient to justify collateral review. *See Will*, 546 U.S. at 350-53; *Digital Equip.*, 511 U.S. at 869-75. The OSHRC cases are not good law, especially in the Mine Act context.

The Secretary's only other authority is *Secretary of Labor, Mine Safety & Health Administration v. Industrial TurnAround Corp.*, a case that *rejected* the Secretary's bid for collateral review based on those same OSHRC cases. 138 F.4th 1339 (D.C. Cir. 2025). There, this Court cited the OSHRC cases to "merely

highlight[] the relative unimportance of the order" at issue—*i.e.*, to explain why the order failed the second collateral order condition of "'resolv[ing] an important issue completely separate from the merits of the action.'" *Id.* at 1343-44 (citation omitted). The Court did "not decide whether the other [collateral order] requirements are met." *Id.* at 1343 (citation omitted). As a result, its drive-by distinction of the OSHRC cases has no bearing on whether the third condition is satisfied here.

Finally, the Court should feel "no dismay" at "preserving the strict limitations on" collateral review, "for the law is not without its safety valve to deal with cases . . . out of the ordinary run." *Digital Equip.*, 511 U.S. at 883. In truly "extraordinary circumstances" —a "'usurpation of power,'" "'a clear abuse of discretion,'" or some other "manifest injustice"—"a party may petition the court of appeals for a writ of mandamus." *Mohawk*, 558 U.S. at 111 (citation omitted). "That a fraction of orders" denying approval for settlements "may nevertheless harm individual litigants in ways that are 'only imperfectly reparable' does not justify making all such orders immediately appealable as of right." *Id.* at 112 (quoting *Digital Equip.*, 511 U.S. at 872).

The Secretary would elevate this case to the ranks of *Nixon*, *Mitchell*, and *Abney*. And not just this case, but "the entire category to which a claim belongs"— all settlement denials. *Digital Equip.*, 511 U.S. at 868. Setting precedent at that

"high[] level of generality," as is required, *id.* at 876-77, would flood this Court with untold new appeals, disrupt the District Court's docket management, and burden litigants with additional rounds of appellate review. There is no good reason to take that course. The doctrine's "narrow" application "should stay that way." *Id*. at 868.

## III. THE COURT SHOULD UPHOLD THE COMMISSION'S DECISIONS

If the Court reaches the merits, it should deny the Secretary's petitions for review. The Mine Act's Section 110(k) expressly limits the Secretary's prosecutorial discretion, and the limit is judicially manageable: The Secretary may not compromise, mitigate, or settle a contested penalty without Commission approval. As the Commission correctly held, that approval requirement clearly applies to the removal of S&S designations in a settlement agreement for contested penalties. The Secretary's attempt to rewrite Section 110(k) as limiting Commission review to penalty reductions, along with her generalized invocations of prosecutorial discretion, are unavailing.

### A. The Mine Act Places Judicially Manageable Limits On The Secretary's Discretion

Unlike most agency actions, traditional exercises of prosecutorial discretion are presumed unreviewable. *See Heckler v. Chaney*, 470 U.S. 821, 828-29 (1985). But as "[t]he Secretary has acknowledged" previously, "'the *Chaney* presumption of unreviewability is rebutted by the existence of [s]ection 110(k).'" *AmCoal I*, 38 FMSHRC 1972, 1980 n.10 (2016) (alteration in original) (citation omitted). Section

110(k) sets judicially manageable boundaries on the Secretary's discretion to dispose of contested penalties.

### 1. Congress May Constrain An Agency's Prosecutorial Discretion

Agency actions are generally subject to judicial review. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,* 586 U.S. 9, 23 (2018). There is an exception, however, for the "very narrow" class of agency actions "committed to agency discretion by law." *Hi-Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 788 (D.C. Cir. 2000) (citation omitted). The exception is limited to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 586 U.S. at 23.

Traditional exercises of prosecutorial discretion—including decisions to initiate and halt enforcement actions—generally constitute one such exception. *See Heckler*, 470 U.S. at 828-29. But the exception does not apply where a statute indicates "an intent to circumscribe agency enforcement discretion" and provides "meaningful standards for defining the limits of that discretion." *Id.* at 834-35. In those circumstances, "there is 'law to apply,'" and "courts may require that the agency follow that law." *Id.*

In determining whether to review an agency's exercise of prosecutorial discretion, courts look to "the particular language and overall structure of the statute in question, as well as 'the nature of the administrative action at issue.'" *Speed*

*Mining, Inc. v. FMSHRC*, 528 F.3d 310, 317 (4th Cir. 2008) (citation omitted) (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)). For example, the Supreme Court recognized in *Heckler* that a statute requiring prosecution when "certain 'clearly defined factors' were present" fell within "'the judicial capacity to supervise.'" 470 U.S. at 834 (citation omitted) (citing *Dunlop v. Bachowski*, 421 U.S. 560, 567 n.7 (1975)). "Meaningful standards" may be derived not only from statutory text, but also from the agency's own binding guidance and regulations. *See Twentymile Coal Co.*, 456 F.3d at 158-59; *Block v. SEC*, 50 F.3d 1078, 1082 (D.C. Cir. 1995).

### 2. The Mine Act Limits The Secretary's Discretion To Compromise, Mitigate, Or Settle Contested Penalties

The Mine Act unambiguously limits the Secretary's prosecutorial discretion. The "best evidence of Congress's intent is the statutory text," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012), and here the text is clear. Section 110(k) states: "No proposed penalty which has been contested before the Commission . . . shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k). The provision has three parts. The first part defines its subject: contested penalties. The second part defines its trigger: when those penalties are "compromised, mitigated, or settled." And the third part defines its consequence: Commission approval is required. Taken together: Once a penalty

is contested, the Secretary needs Commission approval to compromise, mitigate, or settle it.

Section 110(k)'s clearly defined subject, trigger, and consequence provide "meaningful standards for defining the limits" on the Secretary's discretion. *Heckler*, 470 U.S. at 834. *Contra* OB47-49. The text draws a sharp line marking where the Secretary loses absolute discretion over "the manner in which the [agency] is to proceed against a particular transgressor." *Baltimore Gas & Elec. Co. v. FERC,* 252 F.3d 456, 461 (D.C. Cir. 2001). Once penalties have been contested, the Secretary can no longer unilaterally compromise, mitigate, or settle them; to proceed with any of those actions, she must first obtain Commission approval. 30 U.S.C. § 820(k). Courts can readily assess when the conditions requiring approval have been met, and the Secretary has never suggested otherwise—nor could she. This Court has found and applied "'meaningful standard[s]'" in far more "permissive and indeterminate language" than Section 110(k). *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (citation omitted); *see, e.g.*, *id.* (finding meaningful standard in statute requiring only "high quality and cost-effective" care (quoting 24 U.S.C. § 413(b)); *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1399 (D.C. Cir. 1995) (finding meaningful standard where agency could excuse a failure to file "if it finds it to be in the interest of justice" (quoting 10 U.S.C. § 1552(b))).

Once faced with the Secretary's request to compromise, mitigate, or settle a contested penalty, the Commission scrutinizes the proposal no more than necessary to ensure the Act's integrity. Under its own binding precedent, the Commission's review is highly deferential to the Secretary. *See Sec'y of Labor, Mine Safety & Health Admin. v. Consolidation Coal Co.*, 895 F.3d 113, 119 (D.C. Cir. 2018) (holding the Commission bound by its precedent). The general inquiry is whether the proposed settlement is "fair, reasonable, appropriate under the facts, and protect[ive of] the public interest." *AmCoal I*, 38 FMSHRC at 1982. In practice, the demands of that inquiry are minimal: "If any relevant circumstances exist to plausibly suggest" a penalty should be compromised, mitigated, or settled, "all the Secretary needs to do is provide justification . . . in her settlement motion—and her motion must be granted." JA160; JA162 (collecting Commission precedent). The Commission assesses what "circumstances" might be "relevant" by looking to the Mine Act's underlying standards, such as the penalty assessment factors section forth in Section 110(i). JA153-58; *see* 30 U.S.C. § 820(i). So long as the Secretary provides some factual basis for each compromise, mitigation, or settlement, she can dispose of the contested penalties as she sees fit.

In sum, the Mine Act's Section 110(k) expressly articulates where the Secretary's unfettered prosecutorial discretion ends, and it does so in terms that this

Court can identify and supervise. As the next section explains, this case illustrates how straightforwardly the Act's limits can be applied.

### B. The Removal Of S&S Designations From Contested Penalties Falls Squarely Within Section 110(k)

Section 110(k) requires the Secretary to obtain Commission approval before removing S&S designations as part of a settlement agreement for contested penalties. That conclusion flows from the "natural meaning" of the statutory text. *Smith v. United States*, 508 U.S. 223, 228-29 (1993). Section 110(k)'s triggers are trebly satisfied here: Contested penalties are "compromised," "mitigated," *and* "settled" when a proposed settlement agreement removes S&S designations. That conclusion also reflects decades of Commission practice, which Congress has left in place even as it has amended related parts of the Act. Congress's approval is unsurprising, since the plain meaning of Section 110(k) also vindicates the Mine Act's health and safety objectives.

Start with Section 110(k)'s three triggering verbs, all three of which are tripped by the removal of an S&S designation. First, penalties are "compromised" by the S&S removal. "Compromise" means to "adjust or settle by mutual concessions." *Compromise*, *Merriam-Webster.com*, https://tinyurl.com/53fpr8cz (last visited Dec. 17, 2025). When the Secretary and a mine operator agree to a proposed settlement, they resolve the contested penalties as part of a bundle of mutual concessions. On one side of the compromise, the operator agrees to accept

a penalty; on the other, the Secretary agrees to remove an S&S designation. In the motions to approve settlement, S&S removals are expressly listed within the "basis of compromise" for each modified citation. *See, e.g.*, JA61-63, 218. The "compromis[ing]" action of S&S removal therefore requires approval.

Second, S&S removals "mitigate" contested penalties. To "mitigate" is to "make less severe or intense; to make less harmful, unpleasant, or seriously bad." *Mitigate*, *Black's Law Dictionary* (12th ed. 2024). Removing an S&S designation undeniably makes a citation "less severe" for a mine operator. S&S violations, when accumulated over time, open mine operators to the risk of Pattern of Violations notices. 30 U.S.C. § 814(e). POV notices entail heightened oversight and may allow MSHA to order workers to withdraw from affected areas—effectively shutting the mine down until safety conditions improve. *See id.* As the Commission noted, operators might happily pay a penalty "in exchange for the Secretary's removal of an S&S designation in order to avoid a [POV] notice in the future." JA156. And as the Commission recognized in *Hopedale Mining, LLC*, citations retain their "enforcement value" even when penalty dollar amounts are reduced if the operator "agree[s] to accept the S&S designations" on those citations. 42 FMSHRC 589, 598-99 (2020). Just as retaining an S&S designation maintains a penalty's sting, removing an S&S designation "mitigates" it. The remaining penalties affect the operator less severely.

Third, agreements to remove S&S designations from contested penalties "settle" those penalties. To "settle" is to "adjust differences; to come to a good understanding;" or to "resolve" a "disagreement." *Settle*, *Black's Law Dictionary*, *supra*. The proposed agreements between the Secretary and the mine operators resolve disagreements as to the contested penalties through mutual concessions. Knight Hawk's commitment to pay the full $3,616.00 penalty for Citation Number 9190830, for example, did not occur in a vacuum. JA37. To the contrary, it is contractually coupled to the Secretary's corresponding commitments, which include removing S&S designations from the other two citations at issue. *Id.* The Commission cannot protect against contested penalties being invalidly settled—*e.g.*, only to save litigation costs at the expense of miner safety—without a "holistic" understanding of the agreement settling them. JA154-55.

The Commission has applied the ordinary meaning of Section 110(k) since its inception. Until relatively recently, the Secretary did, too—regularly seeking to remove S&S designations from contested penalties for the Commission's review. *See, e.g.*, *Thunder Basin Coal Co.*, 8 FMSHRC 1364, 1364-65 (1986); *T&T Fuels Inc.*, 14 FMSHRC 113, 115 (1992); *Peabody Coal Co.*, 18 FMSHRC 1309, 1310 (1996). The Secretary's main case on this topic, *American Aggregates of Michigan, Inc.*, confirms rather than undermines this longstanding practice. There, an ALJ denied a motion to settle after applying a rigorous factfinding test. *See* 42 FMSHRC

570, 572-73, 576 (2020). The Commission reversed, but not because the Secretary's proposed S&S removal was unreviewable. Instead, the Commission held that the ALJ had simply applied the wrong standard of review and that the Secretary had actually "provided significant factual information to support the proposed settlement." *Id.* at 577-78.

In the decades since enacting the Mine Act, Congress has declined to alter this consistent construction of Section 110(k), even as it has significantly remodeled other related provisions—including in Section 110. "When Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Am. Forest Res. Council v. United States*, 77 F.4th 787, 801 n.16 (D.C. Cir. 2023*)* (quoting *CFTC v. Schor*, 478 U.S. 833, 846 (1986)), *cert. denied*, 144 S. Ct. 1110 (2024). That happened here. In 2006, Congress subjected the Mine Act to a thorough review and amendment process to raise penalties, increase enforcement, and promote compliance. S. Rep. No. 109-365, at 1-2 (2006). The amendments focused extensively on the Act's penalty system, amending Section 110 and adding provisions related to S&S designations. *Id*. at 16. They also expanded the Commission's review jurisdiction and made other extensive changes. But Congress left Section 110(k) undisturbed. *See id.* at 5. That is "persuasive evidence" Congress

agrees with the Commission's approach under that section. *Am. Forest Res. Council*, 77 F.4th at 801 n.16 (citation omitted).

Congress's approval is no surprise. The Commission's reading of Section 110(k) is consistent with the Act's broader health and safety objectives, as well as with the specific legislative intent to ensure transparency and accountability in the settlement process. JA155 (citing S. Rep. No. 95-181, at 44-45 (1977)). To pursue those goals, Congress empowered the Commission to "take a holistic approach to analyzing settlements," JA155, and to consider how proposed settlements impact the "enforcement value" of citations, *Hopedale Mining*, 42 FMSHRC at 599. As Congress intended, the Commission's review power is triggered whenever the parties compromise, mitigate, or settle a contested penalty.

## C. The Secretary's Contrary Arguments Fail

The Secretary asserts that her decisions to remove the S&S designations below are unreviewable for two overarching reasons. First, Section 110(k) requires the Commission's approval only for reductions in the dollar amount of a contested penalty, meaning the Commission cannot review any other parts of a proposed settlement. Second, the Commission's review would impermissibly impinge on her prosecutorial discretion. Neither assertion has merit.

### 1. Section 110(k) Covers More Than Just Penalty Reductions

The Secretary's central contention is that her S&S removals are unreviewable because Section 110(k) approval is required only for reductions in "the amount of money" owed by a penalty. OB49; *see id.* at 46-49. But most of the Secretary's arguments supporting that contention simply show that S&S designations are not themselves monetary penalties. *Id.* at 40-43 (distinguishing designations in Section 104 from penalties in Section 110); *see id.* at 36-47. That may be true, but it misses the point: Section 110(k) is triggered by actions affecting penalties in far more ways than mere numerical reduction. The Secretary's cramped reading would rewrite the statutory text, defeat the purposes of the Mine Act, and defy common sense.

The Secretary's interpretation of Section 110(k) runs headlong into its plain terms, which requires Commission approval whenever a contested penalty is "compromised, mitigated, or settled." 30 U.S.C. § 820(k). Her analysis of these key triggering verbs is limited to a single acknowledgement that this "language of compromise, mitigation, and settlement in section 110 may be broad, but it refers only to penalties—i.e., the amount of money." OB49. In other words, the Secretary suggests that Congress used three broad verbs—"compromised, mitigated, or settled"—to describe the potential triggering effects on penalties when it really meant one narrow verb—"reduced." That suggestion is as wrong as it sounds.

The Secretary's reduction-only reading would dilute Section 110(k) beyond recognition. Start with "the most fundamental semantic rule of interpretation": Absent technical definitions, words "are to be understood in their ordinary, everyday meanings." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). As explained above, Section 110(k)'s triggering verbs plainly encompass not just reducing penalties, but also resolving penalties by mutual concessions and softening their sting for operators. *Supra* Section III.B. The Secretary's construction would shear nearly all that meaning away. In fact, it is unclear what independent effect any of the triggering verbs would retain, violating another "basic interpretive canon[]" that statutes must be construed "so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) (citation omitted). If Congress had meant that the Secretary only needed Commission approval for reducing monetary penalty amounts, it could easily have said so. But it did not. "The statute says what it says— or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 426 (2018). The Court should reject the Secretary's attempt to rewrite it.

The Secretary's reading would also hamstring the Mine Act's purposes. The whole point of Section 110(k) is to prevent "abuses" associated with "off-the-record negotiations"—specifically, settlements that excused safety violations for reasons

48

unrelated to protecting mine workers, such as "to save litigation and collection expenses." S. Rep. No. 95-181 at 44-45. The "remedy" for that concern was requiring the Secretary to provide a public accounting of the reasons for settlement through the Commission review and approval process. *Id.* at 45. If all the Commission could review were penalty reductions, that accountability could be easily evaded.

Imagine, for example, that the Secretary wants to settle a contest before the Commission to save resources, but knows she could not justify reducing penalty amounts to an ALJ. So, she offers the mine operator something else they want instead, like the removal of S&S designations, even though the removals are not justified under the statute either. (As the Commission noted, an operator might consider that a bargain. JA156.) Under the Secretary's reading of Section 110(k), the Commission could never review that sleight of hand. Over time, this lax and unaccountable enforcement could prove "insufficient to encourage mine management to comply with the law's requirements." S. Rep. No. 95-181 at 42. And mine workers would eventually pay the price. *Id.* Congress would not have enacted Section 110(k) so toothless.

The Secretary responds that settlement agreements "are a matter of public record and are subject to release under the Freedom of Information Act," which "imbues the settlement process with the transparency that Congress intended."

OB40.  That assurance rings hollow.  Reading the finalized settlement agreement does not substitute for examining the reasons for which the agreement was reached. And what the operators agreed to do (*e.g.*, pay certain penalties) is only half the picture; what the Secretary agreed to do on her side of the bargain (*e.g.*, reduce the proposed penalties, or mitigate them by easing other sanctions) also matters. Blinkering the Commission's review to only one side would be like only allowing a financial auditor to review credits and not debits.  To be meaningful, review of a penalty's compromise, mitigation, or settlement must "accord due consideration to the *entirety* of the proposed settlement package, including *both its monetary and nonmonetary aspects*."  JA155 (quoting *AmCoal II*, 40 FMSHRC at 989). Otherwise, the reasons behind the agreements can remain shrouded.

One of the contests below drives the point home.  In *Bluestone Oil*, the Secretary's Motion to Approve Settlement proposed reducing Citation 9562449 from $4,598 to $2,500 and Citation 9562452 from $9,446 to $4,000.  JA362-63.  For this $7,544 combined penalty reduction, the Secretary's only explanation was that she had "exercised discretion to modify the significant and substantial [S&S] designation associated with" the citations.  JA366; *see* JA431.  According to the Secretary, that discretion is unreviewable.  The apparent result, in the Secretary's view, is that she does not need Commission approval *even for penalty reductions*, so long as she ties that reduction to some other unreviewable part of the settlement.  If

that is true, it is difficult to imagine what remains of Section 110(k) other than a shell game.

Finally, the Secretary's reading would produce absurd results. In her telling, the Mine Act requires Commission approval for a one dollar reduction in penalty amounts, but allows the Secretary to change everything else about the settlement with zero oversight. S&S removals are just one of many such changes. To borrow an example from the Mine Act's early history, the Secretary could keep penalties the same while inserting "exculpatory language" into the agreement, providing mine operators with "a shield in future litigation to avoid certain key enforcement provisions contained in the Act" and "jeopardiz[ing] the health and safety of miners." *Amax Lead Co. of Mo.*, 4 FMSHRC 975, 978 (1982). The Commission would be powerless to prevent that obvious penalty mitigation and its resulting dangers, even as it would be forced to count the pennies of penalty reductions. There is no reason to adopt that tortured construction.

### 2. The Commission's Review Does Not Violate The Secretary's Nonenforcement Discretion

The other main theme of the Secretary's brief is that principles of prosecutorial discretion compel insulating her S&S removal decisions from Commission review. But her arguments on that score largely attack straw men. And none of them override the clear meaning of Section 110(k).

To begin, the Secretary is right that the "the decision not to take enforcement action is generally committed to an agency's discretion." OB37. But this case does not involve a decision to not take enforcement action in the first instance. The Secretary already chose to issue citations against the mine operators here after finding health and safety violations. JA30-32; JA190-97; JA323-59. Nor, for that matter, does this this case involve the unconditional dismissal of charges. As in the criminal prosecution context, *see Carrigan*, 778 F.2d at 1465-66, that action might be the Secretary's exclusive prerogative, *see RBK*, 15 FMSHRC at 2100-01. But the S&S removals here form part of settlement agreements, not unconditional dismissals. The role of prosecutorial discretion in those contexts has no bearing here.

In any event, the Commission's orders do not question the Secretary's nonenforcement discretion as a general matter, nor its underlying rationale that a nonenforcement decision "often involves a complicated balancing of a number of factors which are peculiarly within its expertise." OB37 (quoting *Heckler*, 470 U.S. at 831). But the operative question is whether Congress has displaced that discretion with a specific command. *Heckler*, 470 U.S. at 832-34. Here, Congress has done so—prohibiting the Secretary from compromising, mitigating, or settling a contested penalty without Commission approval. *Supra* Section III.A.

Relatedly, the Secretary contends that because "the decision to designate a violation as S&S [is] an enforcement decision left entirely to the Secretary's discretion," "[s]o too must be the decision to remove an S&S designation after it was initially charged." OB38. Again, no one disputes the Secretary's initial premise. In *Mechanicsville*, the Commission held that an ALJ could not *sua sponte* add an S&S designation to a violation. 18 FMSHRC at 879-80; *see also Am. Aggregates*, 42 FMSHRC at 576 ("Whether a violation is S&S is a matter in the first instance of prosecutorial discretion."); *Morton Salt, Inc.*, 46 FMSHRC 489, 498 (2024) (Secretary has unreviewable discretion to issue a Pattern of Violations notice based on S&S designations). And in *Twentymile Coal Co.*, this Court held that the Commission could not countermand the Secretary's decision to issue a citation. 456 F.3d at 159-61.

The Secretary's conclusion does not follow from that premise, however. "It is commonplace in the law for an actor's choice to undertake a wholly discretionary course of action to give rise to a resulting non-discretionary duty that is governed by a manageable legal standard." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 756 (9th Cir. 2021). The Mine Act's Section 110(k) is one of those places. The Secretary's decision to issue an S&S designation in the first place may well be wholly discretionary. *See* 30 U.S.C. § 814(d)(1). So may be her decision to remove that S&S designation in a pre-assessment conference with mine operators, prior to the

formal proposal and contest of citations. 30 C.F.R. § 100.6; *see Dickenson Russell Coal Co.*, 35 FMSHRC 519, 522 (2013). But if she later wishes to remove that designation in a way that compromises, mitigates, or settles a contested penalty, she must seek approval from the Commission. That is the balance Congress has chosen.

Finally, the Secretary objects that requiring approval for S&S designation removals will unfairly subordinate her to the Commission's policy views. OB37-38, 44-45, 52-56. Her objection takes various forms: that "the Commission's role is not to second-guess the Secretary's enforcement choices," *id.* at 53; or "to substitute its views of enforcement policy for those of the Secretary," *id.* at 54 (citation omitted); or to "force the Secretary to maintain an S&S designation that she believes is unwarranted," *id.* at 52; and so on. But the Commission has never claimed any of those roles, and the orders below will not change that.

To the contrary, the Commission stressed that it applies the highest possible deference to the Secretary's requests for approval. It bears repeating here: "If any relevant circumstances exist to plausibly suggest" a penalty should be compromised, mitigated, or settled, "all the Secretary needs to do is provide justification . . . in her settlement motion—and her motion must be granted." JA160; JA162 (collecting cases). That is not a difficult bar to clear, as the proceedings below demonstrate. In explaining his hesitation to approve the removal of one S&S designation, the ALJ explained to the Secretary that "I am not suggesting that the citation must be S&S. I

just need facts that leave open the possibility that it might not be, and I am not seeing that in the motion." JA247. Applying that deference, the Commission approves 99.95 percent of proposed settlements. *AmCoal I*, 38 FMSHRC at 1977 n.7.

The Commission's deferential review obviates any concern about situations where it is "necessary to remove an S&S designation," but "the Commission . . . prevent[s] the Secretary" from doing so. OB55.[5] If "additional facts that necessitate a change" come to light after a penalty, *id.* the Secretary can simply provide those facts publicly in requesting Commission approval, as Congress intended. And if the Secretary believes that the Commission has strayed from its deferential standard in applying overly strict scrutiny to her justifications for settlement, she can seek relief from this Court. *See Consolidation Coal Co.*, 895 F.3d at 119 (vacating an order that failed to follow Commission precedent). The Secretary's prosecutorial discretion, as defined by Congress, remains fully intact.

---

[5] This is the primary concern behind the Secretary's references to the EAJA. OB56 n.10.

## CONCLUSION

*Amicus* submits that the Court should (1) direct the Commission to participate

in this case and (2) either dismiss or deny the petitions for review.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Soren J. Schmidt*
Soren J. Schmidt[*]
   *Counsel of Record*
Patrick D. Powers
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
soren.schmidt@lw.com

*Court-Appointed Amicus Curiae*

---

[*]   Supervised by Gregory G. Garre, Partner, Latham & Watkins LLP.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 12,791 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and Times New Roman 14-point font.

December 22, 2025

*/s/ Soren J. Schmidt*
Soren J. Schmidt

*Court-Appointed Amicus Curiae*